UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSHUA MALAVE-SYKES,

                          Plaintiff,

v.                                                                    3:23-CV-1215
                                                                      (MAD/ML)
ENDICOTT POLICE DEP'T; OFFICER
E. RIEGEL, Individual Capacity; LINDA
JACKSON, Mayor of Endicott; and
JESSICA A. HINKLE,

                          Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

JOSHUA MALAVE-SYKES
  Plaintiff, *Pro Se*
Endwell Motel
3211 East Main Street
Endwell, New York 13760


MIROSLAV LOVRIC, United States Magistrate Judge


**ORDER and REPORT-RECOMMENDATION**

        The Clerk has sent a *pro se* complaint in the above captioned action together with (1) an

application to proceed *in forma pauperis* ("IFP"), (2) a motion for an order to show cause for a

temporary restraining order and preliminary injunction, (3) motion for submission of a

supplemental affidavit, (4) a letter motion, and (5) a motion to obtain ECF login and password,

filed by Joshua Malave-Sykes ("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 2, 4, 7, 8, 9.)

For the reasons discussed below, I (1) grant Plaintiff's *in forma pauperis* application, (2) deny

Plaintiff's motion to obtain ECF login and password, (3) grant Plaintiff's motion for submission

of a supplemental affidavit (Dkt. No. 7) and letter motion (Dkt. No. 8) to the extent that the

factual allegations contained therein were considered as part of the Complaint and denied in all

other respects, (4) recommend that Plaintiff's Complaint be dismissed in its entirety with leave to

amend, and (5) recommend that Plaintiff's motion for an order to show cause for a temporary

restraining order and preliminary injunction be denied.  (Dkt. Nos. 1, 2, 4, 7, 8, 9.)

## I.      BACKGROUND

### A.      Procedural History

Plaintiff commenced this action on September 28, 2023, by the filing of a complaint and

motion for leave to proceed IFP.  (Dkt. Nos. 1, 2.)  In addition, Plaintiff filed a motion for an

order to show cause for a temporary restraining order and preliminary injunction.  (Dkt. No. 4.)

On September 29, 2023, United States District Judge Mae A. D'Agostino referred this case for

an initial review noting that the Court had "serious doubts regarding whether [a temporary

restraining order] would be available in this matter" because, *inter alia*, "the motion appears to

ask the Court to interfere with an ongoing state criminal case and perhaps a state court order that

directed him to vacate his premises.  Pursuant to *Younger v. Harris*, 401 U.S. 37 (1971),

however, a federal court may not interfere with ongoing state criminal proceedings by granting

injunctive or declaratory relief except under special circumstances. . . . Additionally, to the

extent that Plaintiff is seeking damages related to an ongoing state criminal proceeding, such

claims are potentially subject to dismissal pursuant to *Younger* and *Heck v. Humphrey*, since a

judgment in his favor would necessarily imply the invalidity of the ongoing state criminal

proceedings."  (Dkt. No. 6.)

On October 2, 2023, Plaintiff filed a motion for submission of a supplemental affidavit. (Dkt. No. 7.)

On October 3, 2023, Plaintiff filed a letter motion requesting ex parte relief pursuant to Fed. R. Civ. P. 65(d) and a motion to obtain ECF login and password. (Dkt. Nos. 8, 9.)

### B.      Complaint

Construed as liberally[1] as possible, Plaintiff's Complaint appears to allege that his civil rights were violated by Defendants Endicott Police Department ("Defendant Endicott PD"), Officer E. Riegel, Linda Jackson, and Jessica A. Hinkle (collectively "Defendants"). (*See generally* Dkt. No 1.) More specifically, Plaintiff—who is Black—alleges that he was racially discriminated against by Defendants—who are all white—based on their responses to numerous domestic disputes between Plaintiff and Defendant Hinkle. (*Id.*)

Plaintiff alleges that on September 5, 2021, he contacted Defendant Endicott PD after Defendant Hinkle vandalized his apartment in violation of New York Penal Law § 145.00. (Dkt. No. 1 at 2; Dkt. No. 7 at 4.) Plaintiff alleges that the responding officers refused to arrest Defendant Hinkle. (Dkt. No. 1 at 2.) Plaintiff alleges that he was informed by officers employed by Defendant Endicott PD that Defendant Hinkle was entitled to enter the apartment and that if (1) Plaintiff put a lock on his bedroom, and (2) officers came back to the apartment and saw the lock, then Plaintiff would be arrested for violating Endicott Housing Codes. (*Id.* at 2-3.)

Plaintiff alleges that he has explained to officers of Defendant Endicott PD "on every occasion they are summoned to his residen[ce] that he works and pays all the bills and

---

[1]     The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[Defendant Hinkle] has not contributed her share on agreed household expenses, rent, utilities, food [for] approximately one year."  (Dkt. No. 1 at 3.)

Plaintiff alleges that in or around September 2021, he contacted Defendant Jackson seeking her intervention and discipline of the involved Defendant Endicott PD officers for their discriminatory conduct.  (Dkt. No. 1 at 4.)

Plaintiff alleges that on September 22, 2023, he was charged with strangulation in the second degree pursuant to N.Y. Penal Law § 121.12, a class D felony, based on an interaction that he had with Defendant Hinkle.  (Dkt. No. 1 at 1-2.)  Plaintiff alleges that at the time of his arrest, he had "brutal scars" on his face that should have made clear to Defendant Riegel that Plaintiff was not the aggressor.  (*Id*.)

Based on these factual allegations, Plaintiff asserts the following four causes of action: (1) false arrest and unlawful detention against Defendants Hinkle and Endicott PD in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) gross negligence against Defendant Endicott PD in failing to arrest Defendant Hinkle; (3) differential treatment on the basis of race against Defendant Endicott PD in violation of 42 U.S.C. of 42 U.S.C. § 19183; and (4) "superior subordinate doctrine" against Defendant Jackson.  (*See generally* Dkt. No. 1.)  As relief, Plaintiff seeks, *inter alia*, an "injunction and declaration restraining [Defendant Endicott PD] from engaging in discriminatory conduct," a declaration that Plaintiff "is recognized and deemed the sole legal occupant of the residen[ce] at 7 Adams Avenue, Apartment No. 2R, Endicott, New York 13760," an order that Defendant "Hinkle is an unlawful occupant of the premises," a declaration that Plaintiff's arrest and criminal charges were unconstitutional and motivated in bad faith, an order of protection in favor of Plaintiff that Defendant Hinkle stay away from him,

and compensatory damages for the lodging in hotels and disruption of his life.  (Dkt. No. 1 at 10-12.)

Attached to the Complaint are the following six documents: (1) a family offense information that accuses Plaintiff of committing strangulation in the second degree on September 22, 2023, against Defendant Hinkle signed by Defendant Riegel; (2) a notice from the Broome County Public Defender's Office; (3) a form from Plaintiff's centralized arraignment dated September 22, 2023; (4) a form titled "DEFENDANT STAT SHEET" with information regarding Plaintiff; (5) pictures that appear to depict injuries to Plaintiff's body; (6) an e-mail from "Derry Sykes" to the same e-mail address with, what appears to be, an attached image discussing the lease for the apartment that Plaintiff shared (or shares) with Defendant Hinkle. (*See generally* Dkt. No. 1, Attach. 1.)

Construing Plaintiff's motion for submission of a supplemental affidavit (Dkt. No. 7) and letter motion (Dkt. No. 8) liberally, the undersigned considered the additional allegations contained therein when considering his Complaint.

Plaintiff's supplemental submission appears to allege that on June 19, 2021, Plaintiff called 911 in attempt to have Defendant Hinkle "peacefully and lawfully . . . removed from his" apartment.  (Dkt. No. 7, Attach. 1 at 2.)  Plaintiff alleges that the responding police officers concluded that because Defendant Hinkle receives mail at the apartment she is "entitle[d] to some sort of misconception of squatters rights."  (*Id.*)

Plaintiff alleges that on June 28, 2021, he submitted a lease amendment form and letter to his landlord, Michael Fata, seeking to remove Defendant Hinkle from the lease, but that Mr. Fata ignored Plaintiff's correspondence.  (Dkt. No. 7, Attach. 1 at 3.)  Plaintiff alleges that on

September 30, 2023, he again attempted to have Defendant Hinkle removed from the lease by corresponding with Mr. Fata.  (*Id.*)

Plaintiff alleges that he has "audio and video evidence to demonstrate [Defendant Hinkle's] violent and abusive behavior and criminal acts of mischief and vandalism."  (Dkt. No. 7, Attach. 1 at 4.)

Plaintiff alleges that on August 1, 2021, he "sustained hideous scratches and [bruises] on [his] face and body again illustrating a disturbing pattern for [Defendant Hinkle's] lust for blood and penchant for violen[t] conduct."  (Dkt. No. 7, Attach. 1 at 4-5.)

Plaintiff "apologize[s] to this Court for asking this Court voke [sic] relief outside the scope of this Court's authority in [ask]ing this Court [to] annul the criminal proceeding" in violation of the *Younger* doctrine and *Heck v. Humphrey*.  (Dkt. No. 7, Attach. 1 at 5-6.)  As a result, Plaintiff requests that his motion be granted and "any further relief deemed just and equitable."  (Dkt. No. 7, Attach. 1 at 6.)

Plaintiff's letter motion requesting ex parte relief pursuant to Fed. R. Civ. P. 65(d), "urge[s]" the Court to carefully weigh and examine Plaintiff's "liberty interest in potential conviction of the erroneous deprivations of the state actions in charging [P]laintiff with false domestic abuse charges."  (Dkt. No. 8 at 2.)  Plaintiff appears to assert a procedural due process claim in this filing.  (*See generally* Dkt. No. 8.)

Plaintiff seeks leave to proceed IFP.  (Dkt. No. 2.)

## II.   PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.[3]  Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[4]

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In addition, the Court shall dismiss any action where the Complaint fails to allege facts plausibly suggesting subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is a "threshold question that must be resolved . . . before proceeding to the merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court

---

[2]    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]    The Court notes that Section 1915(a)(1) does not set financial guideposts as standards for determining IFP eligibility.  Although Plaintiff's income appears to be above the federal poverty guidelines (Dkt. No. 2 at ¶ 2), based on his current additional expenses, I find that he has established—albeit barely—that he is "unable" to pay the filing fee, or that paying the filing fee would pose a "serious hardship."

[4]    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*, 15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review, action challenging state court mortgage foreclosure judgment because the court lacked jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

IV.     **ANALYSIS**

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

A.      **Defendant Hinkle**

Generally, private parties are not state actors, and are not liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties . . . .") (internal quotation marks and citations omitted).  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing *Blum v. Yartsky*, 457 U.S. 991, 1002 (1982)).  A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)).  Claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law . . . collaborated with a private person . . . to deprive the plaintiff of a constitutional right." *Fries v. Barns*, 618 F.2d 988, 990 (2d Cir. 1980) (citing *Adickes*, 398 U.S. at 144).

However, "mere use, and even misuse, of state courts does not turn private parties into state actors." *Koziol v. King*, 14-CV-0946, 2015 WL 2453481, at *11 (N.D.N.Y. May 22, 2015)

(Sharpe, C.J.) (citing *Cramer v. Englert*, 93 F. App'x 263, 264 (2d Cir. 2004) ("[T]he mere

invocation of New York legal procedures does not satisfy the state actor requirement under §

1983."); *Dahlberg v. Becker*, 748 F.2d 85, 89-90 (2d Cir. 1984) (dismissing § 1983 action

because allegations of "misuse of a state statute" did not give rise to § 1983 action)).  In addition,

"providing false information to the police does not make a private individual a state actor and

liable under § 1983." *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010).

Here, the Complaint fails to allege facts plausibly suggesting that Defendant Hinkle, who

appears to have been in a relationship with Plaintiff, was a state actor for purposes of liability

pursuant to 42 U.S.C. § 1983.  *See Miller Ex v. Primo*, 22-CV-0680, 2022 WL 16556060, at *7

(N.D.N.Y. Sept. 29, 2022) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims

against the defendant mother of his child because her alleged misuse of the state court system did

not turn her into a state actor), *report and recommendation adopted by* 2022 WL 16551700

(N.D.N.Y. Oct. 31, 2022) (Sannes, C.J.); *Koziol*, 2015 WL 2453481, at *11-12 (dismissing the

plaintiff's claims against his ex-wife based on the plaintiff's allegations that she "abuse[d] joint

custody rights" and filed "false claims" and "specious petitions").  As a result, I recommend that

Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendant Hinkle be dismissed for failure

to state a claim upon which relief may be granted.

### B.      Claims Against Defendant Endicott Police Department

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't

of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the

capacity to be sued as an entity separate from the municipality in which it is located." *White v.

Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles,

M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy,

J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.  Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).  Thus, Defendant Endicott Police Department is not a proper party which would be amenable to suit.

Moreover, even if the Complaint is construed liberally as alleging claims against the Village of Endicott, I recommend that they be dismissed for the reasons set forth below in Part IV.C. of this Order and Report-Recommendation.

### C.    Claims Against Defendants Riegel and Jackson

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."  *Cohens v. Virginia*, 19 U.S. 264, 404 (1821).  In *Younger*, the Supreme Court recognized a limited exception to this general rule, holding that federal courts should abstain from exercising jurisdiction over suits to enjoin pending state criminal proceedings, absent a showing of bad faith, harassment, or a patently invalid state statute.  *See Younger v. Harris*, 401 U.S. 37, 53-54 (1971) (citation omitted).

*Younger* is not based on an Article III requirement, but instead is a "prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity."  *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted). The rationale behind *Younger* was set forth by the Second Circuit in *Spargo*:

> Our Federalism in its ideal form, as the Supreme Court explained in *Younger*, strives towards a system in which there is sensitivity to the

legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.  In recognition of this balance of interests, *Younger* generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction.  Giving states the first opportunity . . . to correct their own mistakes when there is an ongoing state proceeding serves the vital purpose of reaffirm[ing] the competence of the state courts, and acknowledging the dignity of states as co-equal sovereigns in our federal system.

*Spargo*, 351 F.3d at 75 (internal quotations and citations omitted).

To determine whether abstention is appropriate under *Younger*, district courts must conduct a three-pronged inquiry: "[a]bstention is mandatory where: (1) 'there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff has an avenue open for review of constitutional claims in the state court.'"  *Glatzer v. Barone*, 394 F. App'x 763, 764 (2d Cir. 2010) (quoting *Liberty Mutual Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009)). The Supreme Court, however, has stressed that "[c]ircumstances fitting within the *Younger* doctrine . . . are 'exceptional'" and include only "'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68 (1989)).

### 1.    First Prong

Under *Younger*'s first prong, "[n]ot only must state proceedings be pending[,] . . . the proceedings must have been initiated 'before any proceedings of substance on the merits have taken place in the federal court.'"  *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009) (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984)).  Additionally, "a party

. . . must exhaust his state appellate remedies before seeking relief in the District Court[.]" *Glatzer v. Barone*, 394 F. App'x 763, 765 (2d Cir. 2010) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 610 (1975)).

Here, based on the allegations contained in the Complaint and the supplemental filings, there is presently an ongoing state criminal proceeding against Plaintiff.  (Dkt. No. 8 at 2 [alleging that Plaintiff is currently facing "potential conviction" after being "erroneously . . . charg[ed] . . . with false domestic abuse"].)  Thus, since Plaintiff "face[s a] pending proceeding[] before the state court, [that] proceeding[] . . . qualif[ies] as ongoing under *Younger* regardless of whether Plaintiff[] decide[s] to file an appeal." *Pervu v. City of Oneonta*, 19-CV-0861, 2020 WL 1643392, at *5 (N.D.N.Y. Apr. 2, 2020) (D'Agostino, J.).

### 2.    Second Prong

*Younger*'s second prong, requiring that "an important state interest is implicated in that proceeding[,]" has also been met in the present matter.  *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)).  "[D]etermining whether a state interest is 'important' turns not on the narrow outcome of the particular state court proceeding at hand, but rather on the importance of the generic proceedings to the state." *Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 367 (E.D.N.Y. 2018) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989); *Grieve*, 269 F.3d at 152).

"There is no question that [an] ongoing prosecution implicates important state interests." *Davis v. Lansing*, 851 F.2d 72, 76 (2d Cir. 1988).

### 3.      Third Prong

*Younger*'s third and final prong requires that "the state proceeding afford[ ] the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198 (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)).

Here, should Plaintiff be convicted, he may raise his constitutional claims on direct appeal or through collateral review of his conviction in state court.  *See Tyson v. Clifford*, 18-CV-1600, 2018 WL 6727538, at *4 (D. Conn. Dec. 21, 2018) (plaintiff "not precluded from challenging any subsequent conviction or sentence on appeal to the Connecticut Appellate and Supreme Courts, filing a habeas petition in the Connecticut Superior Court, and following that, a habeas petition in federal court"); *Robinson v. Sposato*, 11-CV-0191, 2012 WL 1965631, at *3 (E.D.N.Y. May 29, 2012) (direct appeal or collateral review provide "ample opportunity for review of petitioner's constitutional claim in state court"); *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 317 (E.D.N.Y. 2006) (plaintiff can raise arguments on appeal once state court judgment enters).

### 4.      Bad Faith Exceptions

Even when a case has met all three of *Younger*'s prongs, "federal relief is obtainable[,] . . . where [] there is a showing of bad faith or harassment in bringing the or conducting the state proceeding." *Wandyful Stadium, Inc. v. Town of Hempstead*, 959 F. Supp. 585, 591 (E.D.N.Y. 1997) (citing *Younger*, 401 U.S. at 50).  "[F]or such a showing to be made, generally 'the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome.'"  *Homere*, 322 F. Supp. 3d at 368 (quoting *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994)) (citation omitted); *see also Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975) (noting

that bad faith under *Younger* "generally means a prosecution has been brought without a reasonable expectation of obtaining a valid conviction"). Furthermore, "[a] pattern of harassment both before and after institution of the state prosecution would be probative of the animus that attended the decision to prosecute." *Colonial First Properties, LLC v. Henrico Cnty. Virginia*, 166 F. Supp. 2d 1070, 1087 n.12 (E.D. Va. 2001).

Here, Plaintiff fails to allege facts plausibly suggesting that Defendants brought the state proceedings in bath faith, *i.e.*, with "no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994).

Plaintiff appears to allege that he was not the aggressor during the domestic dispute with Defendant Hinkle on September 22, 2023, and that Defendant Riegel should have known that based on the injuries that Plaintiff sustained. (Dkt. No. 1 at 1-2.) Plaintiff also alleges that the criminal charges pending against him are based "on the false statements [o]f [D]efendant . . . Hinkle." (Dkt. No. 1 at 2.) However, these "allegations [of bad faith and harassment] are too conclusory and barebones to serve as the factual predicate for a plausible finding of bad faith." *DeMartino v. New York State Dep't of Labor*, 167 F. Supp. 3d 342, 355-56 (E.D.N.Y. 2016); *see Pervu*, 2020 WL 1643392, at *7 (finding that the plaintiff's allegations that the defendants submitted misleading photographs to establish code violations in state court and the plaintiff's allegation that the state court judgment was jurisdictionally defective, were too conclusory to plausibly suggest bad faith for purposes of *Younger* abstention).

As a result, I recommend that the Court "abstain from exercising subject matter jurisdiction" over Plaintiff's claims. *Wilson v. Emond*, 373 F. App'x 98, 100 (2d Cir. 2010).[5]

---

[5]     Moreover, Plaintiff's request for compensatory damages may be barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a Section 1983 action seeking money damages is not cognizable if a

## V.      OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

Although I have serious doubts about whether Plaintiff can amend to assert an actionable claim, given that this is Plaintiff's initial complaint and out of an abundance of caution, I recommend that Plaintiff be permitted to amend his Complaint.

---

decision in favor of the plaintiff would necessarily invalidate a criminal conviction, unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . ., or called into question by a federal court's issuance of a writ of habeas corpus[.]"  *Heck*, 512 U.S. at 487 (internal citation omitted).

[6]      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI.   MOTION FOR AN ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Based on the recommendations set forth above that Plaintiff's Complaint be dismissed in its entirety, I recommend that Plaintiff's motion for an order to show cause for a temporary restraining order and preliminary injunction (Dkt. No. 4) be denied because Plaintiff is unable to demonstrate "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious question going to the merits to make them a fair ground for litigation and a balance of the

hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." *Faiveley Transport Mahno AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009) (citation and internal quotation marks omitted).

## VII.   MOTION FOR SUBMISSION OF SUPPLEMENTAL AFFIDAVIT AND LETTER MOTION

As set forth above, the undersigned liberally construed Plaintiff's Complaint as including the factual allegations set forth in Dkt. Nos. 7 and 8.  To the extent that those submissions seek additional relief, those requests are denied for the reasons set forth herein.

## VIII.   MOTION TO OBTAIN ECF LOGIN

Although Plaintiff filed a pro se motion to obtain an ECF login and password, he failed to sign the Pro Se CM/ECF registration form.  (Dkt. No. 9 at 4.)  As a result, Plaintiff's motion is denied without prejudice.  (Dkt. No. 9.)

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to obtain an ECF login (Dkt. No. 9) is **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiff's motion for submission of a supplemental affidavit (Dkt. No. 7) and letter motion (Dkt. No. 8) are **GRANTED** to the extent that the undersigned considered the factual allegations contained therein but **DENIED** to the extent that those submissions sought any additional relief; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1); and it is further respectfully

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for an order to show cause for temporary restraining order and preliminary injunction (Dkt. No. 4); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: October  17 , 2023
       Binghamton, New York

*Miroslav Lovric*

Miroslav Lovric
U.S. Magistrate Judge

---

[7]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[8]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2018 WL 4185705
Only the Westlaw citation is currently available.
<u>For Online Publication Only</u>
United States District Court, E.D. New York.

Nicholas TALLEY, Donna Evans Talley, Plaintiffs,

v.

LOANCARE SERVICING, DIV. OF
FNF, Selene Finance, Defendants.

15-CV-5017 (JMA) (AKT)
|
Signed 08/31/2018

**Attorneys and Law Firms**

Donna Evans Talley, Nicholas Talley, pro se.

Stuart L. Kossar, Esq., Knuckles, Komosinski & Manfro, LLP, 565 Taxter Road, Suite 590, Elmsford, New York 10523, Attorney for Defendant Selene Finance, LP.

Edward Rugino, Rosicki, Rosicki and Associates, P.C., 51 East Bethpage Road, Plainview, New York 11803, Attorney for Defendant LoanCare Servicing.

**MEMORANDUM AND ORDER**

Joan M. Azrack, United States District Judge

**\*1** On August 18, 2015, Donna Evans Talley and Nicholas Talley (together "plaintiffs" or the "Talleys") filed a *pro se* complaint in this Court against Selene Financing ("Selene") and LoanCare Servicing, Division of FNF ("LoanCare") (together "defendants"). On January 21, 2016, the Court granted plaintiffs' applications to proceed *in forma pauperis*, but dismissed the complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiffs were given an opportunity to file an amended complaint. On February 16, 2016, plaintiffs filed an amended complaint, which seeks, among other things, injunctive relief to "[s]top illegal and fraudulent foreclosure." (Am. Compl. at 4.) Simultaneous with the filing of the amended complaint, plaintiffs filed an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order seeking to enjoin LoanCare from pursuing a foreclosure sale scheduled for March 3, 2016. In an Order dated February 24, 2016, this Court, *sua sponte* dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the

prayer for injunctive relief in plaintiffs' amended complaint and denied plaintiffs' request for a preliminary injunction and temporary restraining order. Before the Court are defendants' motions to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety.

**I. BACKGROUND**

The following facts are taken from plaintiffs' amended complaint, the record before the Court and fillings from the foreclosure action. In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of public records, including state court filings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The Court can also consider exhibits—such as copies of the mortgage and mortgage assignments—which are attached or integral to the amended complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

**A. The Bay Shore Mortgage**

On March 7, 2009, Nicholas Talley and Donna Evans Talley executed a mortgage in favor of non-party Lend America (the lender) in the principal sum of $311,558 concerning a property located at 22 Lakeland Street, Bay Shore, New York ("the Bay Shore property"). (Am. Compl., ECF No. 7 at 15-16.) Plaintiffs claim that there was no recording of the original title or delivery of the mortgage or deed to plaintiffs. (Id. at 5.) Plaintiffs further allege that Lend America became defunct in December of 2009 and that no assignments of the mortgage occurred prior to 2012. (Id.) By way of an endorsement to the note and two assignments of the mortgage, the loan instruments were transferred to defendant LoanCare on February 27, 2012. (Id. at 5, 8-12.) The assignment to LoanCare was recorded on April 10, 2012 in the Suffolk County Clerk's Office. (Id. at 5.) On March 31, 2015, LoanCare assigned the mortgage to defendant Selene. (Id. at 24-25.)

**B. The Foreclosure Proceeding**

**\*2** Plaintiffs defaulted on the note and mortgage by failing to make their monthly payment due in January 2011 and each month thereafter. (Kossar Decl. Ex. J, ECF No. 42-11 at 3.) As a result, LoanCare commenced an action against

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 21 of 97

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

plaintiffs in New York State Supreme Court, Suffolk County on March 19, 2012. (Id.) In the Talleys' verified joint answer, they admitted their default in payments but requested a judicially mandated loan modification. (Id. at 8.) The state court denied the Talleys' request, noting that after numerous prior attempts the parties had not been able to reach an agreement to modify the loan or settle the action. (Id.) The Talleys also asserted fifteen affirmative defenses, alleging, among other things: lack of personal jurisdiction; lack of standing and legal capacity; fraud in connection with the origination and the servicing of the loan; lack of good faith with respect to a loan modification; and LoanCare's failure to state a cause of action, mitigate damages and comply with the provisions of Real Property Actions and Proceedings Law and Banking Law. (Id. at 3.) LoanCare moved for summary judgment against the Talleys seeking to strike their answer and dismiss their affirmative defenses amongst other relief. (Id.) The Talleys opposed the motion and cross moved for summary judgment seeking dismissal of the complaint on the grounds that LoanCare lacked standing. (Id. at 4.)

In an Order dated April 11, 2014, the state court denied the Talleys' cross motion for summary judgment in its entirety. (Id.) In response to the Talleys' lack of standing defense, the court found that, "as holder of the endorsed note and as the assignee of the mortgage, [LoanCare] ha[d] standing to commence [the foreclosure] action. (Id. at 5.) The court noted that LoanCare demonstrated that it had been in "continuous possession of the note and mortgage since February 27, 2012," concluding that LoanCare "is the transferee and holder of the original note as well as the assignee of the mortgage by virtue of the written assignments." (Id. at 6.) In sum, the court held that LoanCare satisfied its *prima facie* burden as to the merits of the foreclosure action as it produced the endorsed note, the mortgage and assignments as well as evidence of plaintiffs' nonpayment. (Id. at 5.) Further, the court noted that LoanCare submitted proof of its compliance with the notice requirements of the 🚩RPAPL § 1303 and 🚩§ 1304. (Id.) Thus, the court found that LoanCare established its entitlement to summary judgement and dismissed the Talleys' remaining affirmative defenses finding that plaintiff submitted sufficient proof to establish, *prima facie*, that such defenses were unmeritorious. (Id. at 5, 7-9.) (noting that circumstances of fraud must be "stated in detail" and that a defense based upon the "doctrine of unclean hands" lacks merit where a defendant fails to come forward with admissible evidence of immoral or unconscionable behavior). The court also noted that the Talleys "failed to demonstrate that they made a reasonable attempt to discover the facts

which would give rise to a triable issue of fact or that further discovery might lead to relevant evidence." (Id. at 8.) The court further rejected the Talleys' contention that they were entitled to a judicially mandated loan modification and ordered the appointment of a referee to compute amounts due under the subject note and mortgage. (Id. at 8, 9.)

On September 29, 2014, the state court entered final judgment for foreclosure and sale of the Bay Shore property. (Kossar Decl. Ex. K, ECF No. 42-12 at 3-8.) The state court further ordered that LoanCare was entitled to judgment establishing the validity of the mortgage and to recover $390,013.50 with interest to date of the closing of time of the referee's sale of the subject property. (Id.)

## C. The Instant Action

Plaintiffs' amended complaint alleges fraud against defendants LoanCare and Selene along with other claims under: (1) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, § 2608; (2) federal regulation 24 C.F.R. § 203.350 [1] associated with the National Housing Act, 12 U.S.C. § 1701; (3) various provisions of the Uniform Commercial Code ("UCC"); (4) the Pooling and Servicing Agreement ("PSA") that governs plaintiffs' mortgage; and (5) fraud. [2] (Amend. Compl.) Though stated somewhat differently, plaintiffs' amended complaint appears to reiterate their contentions from the prior state court foreclosure action, specifically alleging that LoanCare did not have standing to foreclose on the Bay Shore property and that the mortgage and its assignment to LoanCare, and subsequently to Selene, were invalid and therefore unenforceable. [3] (See Am. Compl.)

**\*3** Specifically, plaintiffs allege that the original deed has never been delivered since the inception of the mortgage. (Id. at 3.) Plaintiffs claim that although the original lender, Lend America ceased to exist as of December 2009, the mortgage was never assigned in the years 2009 through 2012. (Id.) Plaintiffs allege that Lend America "acquired the loan without providing principal/issuer resulting in no securitization of an FHA security instrument from 2009-2012." (Id.) Plaintiffs appear to allege that "no delivery of deed and title" concerning plaintiffs' mortgage "proves deceptive practices and fraud was the intention from the origination of the mortgage." (Id.) Plaintiffs further allege that defendants have no standing under Article III of the Constitution because the original title was not recorded or delivered to plaintiffs. (Id. at 5-6.) Finally, plaintiffs allege that "even if this was a legal foreclosure, we were not given our due process because we were not

Case 3:23-cv-01215-MAD-ML Document 10 Filed 10/17/23 Page 22 of 97

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

notified by LoanCare or the Court of our Right to Appeal thereby denying us 'due process'." [4] (Id. at 6.) Specifically, plaintiffs allege that they did not receive the Notice of Entry of Final Judgment for Foreclosure and Sale from LoanCare until February 6, 2015 and that the September 29, 2014 judgment is in violation of the PSA, RESPA and the UCC because the mortgage and note were transferred to Selene on August 1, 2014. [5] (Id.)

Plaintiffs seek the following relief: "[d]efendants produce orig[inal] deed of mortgage, title with covenants"; "[r]eimburse[ment] [of] $4,336 for services not rendered (deed/title)"; "[p]rove securitization of mortgage from 2009 to present"; "[p]roduce chain of assignment"; "[e]xplain no recordation of closing documents"; "[r]eveal identity of principal/issuer"; "LoanCare cease and desist from harassing us and placing us under duress since the mortgage has been sold to Selene"; "[s]top illegal and fraudulent foreclosure by prior servicer, LoanCare without assignment." (Id. at 4.)

Defendants filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that plaintiffs' claims should be dismissed because (a) they are barred by the *Rooker-Feldman* doctrine; (b) are barred by the doctrines of *res judicata* and collateral estoppel; and (c) fail to state a claim upon which relief can be granted. [6]

## II. DISCUSSION

### A. Standard of review

The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." Bobrowsky, 777 F. Supp. 2d at 703 (internal quotation marks and citations omitted).

#### 1. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or

constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. Id. In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b) (1) ... does not convert the motion into a motion for summary judgment under Rule 56.").

#### 2. Fed. R. Civ. P. 12(b)(6)

**\*4** To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Motions to dismiss invoking *res judicata* and collateral estoppel are properly brought under Rule 12(b)(6). See Hirsch v. Desmond, No. 08–CV–2660, 2010 WL 3937303, at \*2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); Wiercinski v. Mangia 57, Inc., No. 09–CV–4413, 2010 WL 2681168, at \*1 (E.D.N.Y. July 2, 2010) (*res judicata*).

### B. *Rooker-Feldman* Doctrine

Defendants' initial argument is that this Court lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 23 of 97

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

entertain a direct appeal from a state court judgment);
District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483, n.3 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determinations). The *Rooker-Feldman* doctrine "recognizes that 'federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.' " Alston v. Sebelius, CV 13-4537, 2014 U.S. Dist. LEXIS 123613, at *23-24 (E.D.N.Y. July 31, 2014) (report and recommendation), adopted by, 2014 U.S. Dist. LEXIS 122970, 2014 WL 4374644 (E.D.N.Y. Sept. 2, 2014) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court determinations." Park v. City of N.Y., No. 99–Civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The Second Circuit has established four requirements that must be satisfied for the *Rooker–Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of the judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural and the second and third are substantive. Id.

Specifically, with respect to foreclosure proceedings, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." Ashby v. Polinsky, No. 06–CV–6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citation omitted), aff'd, 328 F. App'x 20 (2d Cir. 2009); see also Done v. Wells Fargo Bank, N.A., No. 08–CV–3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); Ward v. Bankers Trust Co. of California, N.A., No. 09–CV–1943, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011).

This even includes challenges to a judgment of foreclosure that was allegedly procured by fraud, as plaintiffs have alleged herein. See, e.g., Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 164–65 (E.D.N.Y. 2010) aff'd, 446 F. App'x 360, 361 (2d Cir. 2011) (finding *Rooker–Feldman* doctrine applied to allegations that defendants engaged in a pattern of submitting fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts and that the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); Parra v. Greenpoint Mortgage Co., No. Civ.A. 01–CV–02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker–Feldman*"); Dockery v. Cullen & Dykman, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

**\*5** In the instant case, *Rooker-Feldman* bars plaintiffs' claims. The procedural requirements of *Rooker–Feldman* are satisfied. First, plaintiffs lost in state court. (Kossar Decl. Exs. J, K.) Second, the state court granted LoanCare summary judgment and denied plaintiffs' cross-motion for summary judgment by Order dated April 9, 2014, and issued a foreclosure judgment on September 29, 2014. (See id.) Since these judgments predate the August 18, 2015 filing of the initial complaint in the instant action, (see Compl., ECF 1), all pertinent state-court decisions were issued before the proceedings in this Court commenced.

The substantive requirements of *Rooker–Feldman* are also satisfied because plaintiffs' amended complaint seeks review and rejection of those state court decisions. Plaintiffs' claims complain of injuries, including, "deceptive practices and fraud" at the origination of the mortgage due to no delivery or recording of closing documents and seeks to "[s]top illegal and fraudulent foreclosure," in contravention of the state court judgment of foreclosure and the state court's acceptance of the validity of the mortgage documents that formed the basis for that judgement. (Am. Compl. at 4-6.) See Trakansook v. Astoria Fed. Sav. & Loan Ass'n, No. 06–CV–1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), aff'd, No. 07–2224–CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008) (holding that because plaintiff's complaint asked the court "to vacate the judgment of foreclosure and sale and award her title to the property, it [was] plain that she [was] inviting [the] court to 'reject' the [state court] order."); Done v. Option One Mortgage, No. 09–civ–4770, 2011 WL 1260820,

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 24 of 97

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

at *6 (E.D.N.Y. Mar. 30, 2011) (concluding substantive requirements of *Rooker-Feldman* met where "[a]lthough plaintiff ha[d] made a cursory reference to seeking monetary damages, it [was] abundantly clear that the whole purpose of th[e] action [was] to undo the foreclosure judgment").

In their amended complaint, plaintiffs contend that LoanCare had no standing to bring the state court foreclosure action. (*See* Am. Compl.) However, as plaintiffs admit, the state court rejected this exact contention in its final judgment. (Pls.' Supplemental Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 43 at 4; Kossar Decl. Ex. J at 7 ("The assertions by the defendant mortgagors as to the plaintiff's alleged lack of standing, which rest, *inter alia*, upon alleged defects in the assignments, rife with speculation, are rejected as unmeritorious ...").) In opposition to defendants' motion to dismiss, plaintiffs specifically state that they are seeking "[r]escission of [f]inal [s]ummary [j]udgment", that this Court "[r]ender [r]ender the lien unenforceable due to fraudulent concealment", and seek "[d]ismissal of the [f]oreclosure due to lack of [s]tanding." (Pls.' Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 39-12.) Plaintiffs are requesting this Court to do exactly what *Rooker-Feldman* forbids— to overturn the New York Supreme Court judgment of foreclosure. *See* 🚩 Trakansook, 2007 WL 1160433, at *5 ("Because [plaintiff's] complaint asks this court to vacate the judgment of foreclosure and sale and award her title to the property, it is plain that she is inviting this court to 'reject' the [state court order]."). A ruling in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, ... which is precisely the result that the *Rooker–Feldman* doctrine seeks to avoid."

🚩⚠ Kropelnicki v. Siegel, 290 F.3d 118, 129 (2d Cir. 2002).

Moreover, plaintiffs' attempt to thwart application of *Rooker-Feldman* by labeling their claims as "fraud in the inducement" and "fraudulent concealment" rather than the "fraud" they alleged in the state action fails. Plaintiffs' claim of "newly discovered facts of fraud in the inducement" based on the actions of third parties at the time of the loan origination fails to preclude application of *Rooker-Feldman*. [7] (Pls.' Opp. to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Plaintiffs' claims relate not to defendants' conduct in the course of the state court foreclosure action, but, rather, to the validity of the underlying mortgage documents and defendants' standing to commence the foreclosure proceeding. Thus, "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the

mortgage[ ] w[as] valid." Webster v. Wells Fargo Bank, N.A., No. 08–civ–10145, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), aff'd sub nom. as amended (Jan. 24, 2012) Webster v. Penzetta, 458 F. App'x 23 (2d Cir. 2012) (finding the Court "plainly lack[ed] subject matter jurisdiction" over plaintiff's claims "attacking the validity of the foreclosure proceedings and the validity of the underlying mortgage loan documents" pursuant to *Rooker-Feldman* because "the injury complained of is the judgment permitting foreclosure, which implicitly held that the mortgages were valid."); see also Feliciano v. U.S. Bank Nat. Ass'n, No. 13–CV–5555, 2014 WL 2945798, at *2–4 & n. 7 (S.D.N.Y. June 27, 2014) (finding that plaintiffs' claims that "[defendant] wrongfully foreclosed upon their home because it lacked the legal capacity to accept the assignment of the underlying mortgage, and therefore lacked standing in the Foreclosure Action" failed under *Rooker-Feldman* and the fraud exception did not apply because "the complaint alleges fraudulent conduct (generally) by defendant prior to the institution of the Foreclosure Action rather than on the state court itself." (internal citations and quotations omitted) ). Therefore, plaintiffs attempt to invoke a fraudulent procurement exception to the *Rooker–Feldman* doctrine fails.

**\*6** Accordingly, the Court lacks subject matter jurisdiction over plaintiffs' claims and the amended complaint should be dismissed in its entirety.

## C. *Res judicata*

Alternatively, to the extent the *Rooker-Feldman* doctrine does not deprive the Court of subject matter jurisdiction, all of plaintiffs' claims are barred by the doctrine of *res judicata*. Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." 🚩 Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (quotation omitted). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). Further, federal courts must apply the doctrine of *res judicata* according to the rules of the state from which the judgment is taken. *See* 🚩 Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Giardina v. Nassau Cnty., No. 08–CV–2007, 2010 WL 1850793, at *3 (E.D.N.Y. May 7, 2010). New York State courts apply a transactional analysis, "barring a later claim arising out of the same factual grouping as an earlier litigated

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 25 of 97

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burka, 32 F.3d at 657 (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ); see Done, 2009 WL 2959619, at *3 (same).

*Res judicata* applies when there was: (1) a previous action that resulted in a final adjudication on the merits, (2) the party against whom *res judicata* is to be invoked was party to the previous action or in privity with a party to that action, and (3) the claims involved in the current case were, or could have been, raised in the previous action. Swiatkowski, 745 F. Supp. 2d at 171 (quoting Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 155 (2d Cir. 2005) ). *Res judicata* applies to defenses that could have been raised in the prior action as well. Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (*res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided") (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) ); Robbins v. Growney, 229 A.D.2d 356, 645 N.Y.S.2d 791, 792 (N.Y. App. Div. [1st] Dep't 1996) ("The doctrine of *res judicata* is applicable ... to defenses raised in the prior action or which, though not raised, could have been.") (internal citation omitted). "All litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata.* Done, 2009 WL 2959619, at *3.

Here, plaintiffs' claims are barred from further adjudication by *res judicata.* First, the judgment of foreclosure entered against plaintiffs is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and which would disturb LoanCare's (or Selene's) ability to enforce rights provided pursuant to the mortgage and the note securing the Bay Shore property. See id. at *4. Second, the facts pled by plaintiffs in their amended complaint—that LoanCare brought the foreclosure suit in the Suffolk County Supreme Court and was not the holder of a valid mortgage note at the time of assignment, (see Am. Compl.)—would have been central to deciding any entitlement to a judgment of foreclosure, and thus demonstrates that their claims in the current suit arise from the same transaction as LoanCare's claim in the previous foreclosure action. Done, 2009 WL 2959619, at *4. Plaintiffs' claims arising from the origination of the mortgage and attacking the ability of defendants to enforce it in the foreclosure proceedings, (see Am. Compl.), not only could have been raised as a defense to foreclosure in the state court, but were actually raised, (see Kossar Decl.

Exs. I, J) and therefore cannot be relitigated in this Court. See, e.g., Hinds v. Option One Mortg. Corp., No. 11–CV–6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (report & recommendation), adopted by 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim ... [since the plaintiff's claims] arise from the same factual grouping—namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a state court foreclosure proceeding"); Solomon v. Ocwen Loan Servicing, LLC, No. 12-CV-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); Swiatkowski, 745 F. Supp. 2d at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings."); Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL 1787710, at *6 n. 2 (S.D.N.Y. June 23, 2009) ("Plaintiff's allegations of fraud regarding the underlying loan transaction do not appear to be of the type recognized by certain courts as immune from *res judicata.*"); Yeiser v. GMAC Mortg. Corp., 535 F.Supp.2d 413, 421 (S.D.N.Y. 2008) ("According to New York law, ... *res judicata* ... applies to defenses that could have been litigated, including defenses to a foreclosure.").

**\*7** Whether cast as violations of RESPA, or regulations governing the National Housing Act, plaintiffs effectively allege that defendants improperly obtained the foreclosure judgment due to lack of standing based on fraud or "fraud in the inducement". (See Am. Compl.) However, plaintiffs asserted these claims, *albeit* in different form, in the state foreclosure action as affirmative defenses in their verified answer, in their opposition to LoanCare's summary judgment motion, and in support of their own cross motion for summary judgment. (Kossar Decl. Exs. I, J.) Specifically, in the state action, plaintiffs alleged that LoanCare had no standing to bring a foreclosure action, had "unclean hands," and misled, overcharged and defrauded plaintiffs in the mortgage application, closing and servicing process. (Id., Ex. I at ¶ ¶ 3,

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 26 of 97

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

8, 14, 18) The state court considered and ultimately dismissed plaintiffs' affirmative defenses and denied plaintiffs' summary judgment; instead, granting summary judgment in LoanCare's favor. (Kossar Decl. Ex. J.) "If plaintiffs were unhappy with the result of that proceeding, the proper recourse was a state court appeal. Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for foreclosure, the doctrine of *res judicata* bars this litigation." Yeiser, 535 F. Supp. 2d at 422 (citing 12 U.S.C. § 2614, which authorizes an action, pursuant to the provisions of RESPA, to be brought in the federal district court or in any other court of competent jurisdiction in which the property involved is located, or where the violation is alleged to have occurred); Mercado v. Playa Realty Corp., No. CV 03-3427, 2005 WL 1594306, at *7 (E.D.N.Y. July 7, 2005) (determining that because plaintiff could have asserted the new claims she was raising in her federal action during the foreclosure action as counterclaims and the relief sought by plaintiff was inconsistent with the ruling in the foreclosure action, the new claims were barred by the doctrine of *res judicata*).[8]

Lastly, the present action satisfies the privity requirement for claim preclusion since LoanCare commenced the foreclosure proceeding and is a named party to the current action. Further, Selene, a non-party to the earlier state court action may still invoke claim preclusion if it can demonstrate that it was in privity with a party to the earlier action. See Houdet v. U.S. Tennis Ass'n, No. 13-CV-5131, 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application" (internal quotation marks omitted) ). "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formally parties to it, [and] those whose interests are represented by a party to the action.' " Modular Devices, Inc. v. Alcatel Alenia Space Espana, No. 08-CV-1441, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) ). Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*. Yeiser, 535 F. Supp. 2d at 423.

The facts alleged in the amended complaint establish privity between Selene and LoanCare, as LoanCare assigned the mortgage to Selene on March 31, 2015—after final judgment in the state foreclosure action. See Yeiser, 535 F. Supp. 2d at 423 ("[s]ince the loan was transferred to GRP in May 2005," almost one year after the state foreclosure action, "GRP is a successor to that interest and is also in privity with [the original note holder]," which was the plaintiff in the foreclosure litigation); Hinds, 2012 WL 6827477, at *4 n.8 (finding the privity requirement satisfied where Wells Fargo was not a party in the state court proceeding, but bought the subject property at a foreclosure sale, rendering it a successor in interest). Thus, the requirements of *res judicata* are satisfied here.

Therefore, to the extent *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over plaintiffs' claims, the claims are barred by the doctrine of *res judicata* and must be dismissed.

### D. Collateral Estoppel

Plaintiffs' claims are also precluded under the narrower doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same.' " Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Whether relitigation of an issue is precluded is determined by the rules of the court that rendered the prior judgment. Id. "Under New York law, the doctrine of collateral estoppel requires that 'the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action.' " Hines v. HSBC Bank USA, No. 15-CV-3082, 2016 WL 5716749, at *9 (E.D.N.Y. Sept. 30, 2016) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) ). Thus, "[b]efore collateral estoppel can be invoked, the court must find that an identical issue was necessarily decided in the prior action and is decisive of the present action, and that there was a full and fair opportunity to contest the decision now said to be controlling." Yeiser, 535 F. Supp. 2d at 424 (internal citation omitted).

 *8 "To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories

underlying the complaint." Id. at 424-25 (citing Coveal v. Consumer Home Mortgage, Inc., 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005)) "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id. (finding collateral estoppel to be applicable where all the facts giving rise to the amended complaint were presented in the foreclosure proceeding even though plaintiffs did not allege all of the same causes of action).

Here, plaintiffs had a full and fair opportunity to litigate the factual issues raised in the amended complaint in the state foreclosure action. And, those issues were decided in LoanCare's favor. As discussed *supra*, plaintiffs already challenged the validity of the assignment of the mortgage to LoanCare and its standing to foreclose on the Bay Shore property in state court, and the state court necessarily rejected those arguments when it found LoanCare had a valid claim to the Bay Shore property and entered judgment of foreclosure on that property. No appeal was filed in that action. Accordingly, plaintiffs cannot relitigate these issues against defendant LoanCare in federal court. See Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 505–06 (S.D.N.Y. 2016).

Plaintiffs are also precluded from litigating these same issues against Selene, despite the fact that Selene was not a party to the initial suit in state court. See Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary."); see also Fequiere v. Tribeca Lending, No. 14-CV-812, 2016 WL 1057000, at *9–10 (E.D.N.Y. Mar. 11, 2016) (applying defensive non-mutual collateral estoppel to FDCPA claim).

Accordingly, the Court grants defendants' motions to dismiss plaintiffs' claims because they are precluded pursuant to the doctrine of collateral estoppel.[9]

## E. Sanctions

Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), defendant LoanCare seeks to impose sanctions on plaintiffs in the form of attorneys' fees incurred in defendant's defense of the instant action. (Def. LoanCare's Mot. to Dismiss, ECF No. 39-7 at 19-20.) For the reasons discussed below, defendant's motion is denied.

As an initial matter, the Court notes that LoanCare has not satisfied the procedural requirements for filing a sanctions motion. Rule 11 requires that a motion for sanctions "be made separately from any other motion and ... describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). In any event, the Court denies LoanCare's motion for sanctions. Plaintiffs' claims against defendants are plainly without merit. Nevertheless, this alone does not warrant sanctions, particularly as plaintiff is proceeding *pro se*. Although Rule 11 does apply to *pro se* litigants, the court may take into account the "special circumstances of litigants who are untutored in the law," Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989), as well as whether such a litigant has been warned of the possible imposition of sanctions. See Kuntz v. Pardo, 160 B.R. 35, 40 (S.D.N.Y. 1993); see also Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendments (stating that the court should consider, *inter alia*, whether the motion was made in bad faith). There are no facts indicating that plaintiff instituted or maintained this lawsuit in bad faith or that they were warned of the imposition of sanctions. For all of the above reasons, LoanCare's request for sanctions is denied.

## F. Leave to Amend

**\*9** *Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation omitted). Nevertheless, "a district court may deny a *pro se* plaintiff leave to amend when amendment would be futile." Boddie v. N.Y. State Div. of Parole, No. 08-CV-911, 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009).

Here, the Court has carefully considered whether plaintiffs should be granted leave to amend the complaint. Having decided plaintiffs' claims are barred by *Rooker-Feldman, res judicata* and collateral estoppel, the Court finds that any amendment of these claims would be futile. For these reasons, the Court declines to grant plaintiffs leave to amend.

## III. CONCLUSION

For the reasons stated above, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety. The Clerk of Court is directed to close this case and send a copy of this Order to *pro se* plaintiffs.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4185705

## Footnotes

1    Plaintiffs also allege a violation of 24 C.F.R. § 203.35 in their amended complaint, (Am. Compl. at 5), but note in their opposition to defendant LoanCare's motion to dismiss that this was an error. (Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 3.)

2    Though the amended complaint seeks relief from "LoanCare harassing us and placing us under duress" (Am. Compl. at 5-6), the only allegation of such harassment appears in plaintiffs' opposition to defendant LoanCare's motion to dismiss. (See Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 5-6.) A plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss", K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013). In any event, plaintiff's conclusory assertions of harassment are insufficient to state any plausible claims.

3    The Court notes that plaintiffs appear to use the terms "fraud", "fraudulent concealment" and "fraud in the inducement" interchangeably.

4    To the extent that plaintiffs attempt to allege a due process violation under 42 U.S.C. § 1983, such claim is unwarranted as the defendants are private parties, not state actors.

5    According to the loan transfer documents attached to plaintiffs' amended complaint, the mortgage and note were transferred to Selene on March 31, 2015. (See Am. Compl. at 23-24.) However, Selene first became involved with plaintiffs' loan when it became a servicer of the loan on August 1, 2014. (Pls.' Opp. to Def. LoanCare's Mot. to Dismiss, ECF No. 35-1, Ex. H at 17.)

6    Plaintiffs filed for Chapter 13 bankruptcy on June 5, 2017. (Pls.' Opp. to Mot. to Dismiss, Ex. J, ECF No. 35 at 37.)

7    Plaintiffs appear to allege newly discovered facts in relation to the alleged fraudulent closing of the mortgage in 2009. (Pls.' Opp to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Specifically, plaintiffs now argue, in conclusory fashion, that at the time of the closing of their mortgage in 2009, the Title Company was a "shell company" and the attorney at the closing table was fraudulent. (Id.)

8    "Although New York's permissive counterclaim rule means that res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action, this exception for counterclaims does not permit an attack on a judgment" previously issued by the state court. Beckford v. Citibank N.A., No. 00 Civ. 205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (internal quotation omitted).

9    Because plaintiffs' claims fail under *Rooker-Feldman, res judicata* and collateral estoppel, the Court need not reach the defendants' alternative arguments in support of dismissal.

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 29 of 97

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2453481
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Leon R. KOZIOL, individually and as natural
parent of Child A and Child B, Plaintiff,

v.

Daniel KING et al., Defendants.

No. 6:14–cv–946 (GLS/TWD).
|
Signed May 22, 2015.

**Attorneys and Law Firms**

Leon R. Koziol, New Hartford, NY, pro se.

Daniel King; James Gorman; James Tormey; Robert Rose; John Lahtinen; Edward Spain; Leslie Stein; Monica Duffy; Steven Zayas; John Centra, Hon. Eric T. Schneiderman, New York State Attorney General, The Capitol, Justin L. Engel, Assistant Attorney General, of Counsel, Albany, NY, Nicole Christensen, Schmitt & Lascurettes, LLC, Kelly Hawse–Koziol, William P. Schmitt, Esq., of Counsel, New Hartford, NY, William Koslosky, Costello, Cooney Law Firm, Paul G. Ferrara, Esq., of Counsel, for the Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff *pro se* Leon R. Koziol commenced this action against defendants Daniel King, James Gorman, James Tormey, Robert Rose, John Lahtinen, Edward Spain, Leslie Stein, Monica Duffy, Steven Zayas, John Centra, (collectively, "State Defendants"), Nicole Christensen, defendant *pro se* Kelly Hawse–Koziol, and William Koslosky, pursuant to 42 U.S.C. § 1983, alleging violations of his First, Fourth, Ninth, and Fourteenth Amendment rights, and also asserting a claim of *prima facie* tort under New York common law.[1] (Compl., Dkt. No. 1.) Pending are State Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), (Dkt. No. 23), Koslosky's motions for summary judgment, (Dkt. No. 25),

and for sanctions pursuant to Fed.R.Civ.P. 11, (Dkt. No. 27), Christensen's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), (Dkt. No. 36), Hawse–Koziol's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), (Dkt. No. 39), and Koziol's cross motion for disqualification of the court and a preliminary injunction, (Dkt. No. 41). For the reasons that follow, each of defendants' motions are granted, Koziol's cross motion is denied, and his complaint is dismissed.

### II. *Background* [2]

Koziol is a suspended attorney and "parental advocate ... seeking to reform th [e] child rearing system." (Compl.¶¶ 6, 58, 60, 66.) Endeavoring to comprehend his verbose, disjointed, and vitriolic complaint has been, to use Koziol's own words, "a chaotic ordeal." (Dkt. No. 45, Attach. 1 ¶ 14.) Nonetheless, the court has waded through all 179 paragraphs, and, after a painstaking review, has gleaned that Koziol's gripes derive from two general sources: (1) divorce, child custody, and chid support proceedings in New York Family Court, throughout which various judges have continuously and systematically violated myriad constitutional rights; and (2) state court decisions suspending him from the practice of law in New York, and the various investigations prior and subsequent to those decisions. (*See generally* Compl.)

Thus, in this case—his fourth filed in the Northern District of New York[3]—Koziol names as defendants eight New York state judges, two former members of New York's Committee on Professional Standards (COPS), a court-appointed Attorney for the Child, a supervisor for the Oneida County Support Collection Unit, and his ex-wife. (*Id.*) Against each of these defendants, he asserts a veritable potpourri of constitutional and state law infractions: violations of his Fourteenth Amendment substantive and procedural due process and equal protection rights, Fourth, Ninth, and Tenth Amendment "parental privacy" rights, First Amendment "free speech, free press, free religion, free association and judicial access" rights, and state tort law. (*Id.* ¶¶ 154–68, 174–75 .) He also seeks declaratory and injunctive relief in the form of the following: (1) "[a] permanent inunction ... upon interacting processes challenged by this action and on custody/support orders and license suspensions issued"; (2) "[a] judgment declaring unconstitutional Section 240(1) of the New York Domestic Relations Law, the parental classifications enforced in New

York, and a practice of censoring out-of-court criticisms"; (3) "[a] judgment declaring unconstitutional Section 8.4(d) and (h) of the New York Attorney Rules of Conduct and the terms of suspension upon [him] which prohibit opinions and employment related to the law in undefined and wide ranging contexts"; and (4) "[o]rders restoring [his] law license in this [c]ourt, [4] sealing the records and parenting time sufficient to overcome child alienations." (*Id.* at 30.)

**\*2** Below, to the extent possible, the court attempts to set forth the relevant facts pertaining to each defendant.

### A. *State Defendants*

#### 1. *Judge King*
Judge King is a County Court judge in Lewis County, New York, and, beginning in 2013, presided over Koziol's Family Court matters. (*Id.* ¶¶ 19, 108.) Specifically, Koziol alleges that, in July 2013, his ex-wife, Hawse–Koziol, filed "specious petitions," and, subsequently, Judge King issued several "bad faith orders," that, among other things, restricted Koziol's alcohol consumption during visits with his children and limited the geographic area in which he could travel with them. (*Id.* ¶¶ 108–12, 115.)

Koziol further alleges that Judge King imposed additional restrictions on him when he sought to take his children to an out-of-town wedding. (*Id.* ¶¶ 119–20.) These restrictions included requiring separate lodging for Koziol's children and fiancée and prohibiting alcohol consumption. (*Id.*) After the wedding, Judge King "ordered [Koziol] to answer violation charges," apparently because Hawse–Koziol alleged that Koziol had violated the visitation conditions established by Judge King. (*Id.* ¶¶ 12126.) Thereafter, Koziol claims that Judge King suspended his parenting time, but that decision was later reversed by the Appellate Division. (*Id.* ¶¶ 126–28.) Later, "in a decision received on Christmas Eve," Judge King "defied the higher court order" and issued "more punitive orders ... solely to discredit [Koziol]'s public criticisms monitored outside of court," presumably on his website. (*Id.* ¶¶ 127–28.) Finally, Koziol alleges that, in January 2014, Judge King conducted a hearing in "contempt of a higher court order," during which he "falsely accus[ed Koziol] of objecting to entire testimony," "directed [Koziol] to 'be quiet' or be 'removed' from the court," "facilitated false testimony," and generally converted the proceedings "to a father-bashing session infected by rumor and innuendo." (*Id.* ¶¶ 130–37.)

#### 2. *Magistrate Gorman*
Magistrate Gorman is a Support Magistrate for Onondaga County, and, in 2012, was assigned to Koziol's "child rearing matters." (*Id.* ¶¶ 20, 95–96.) Koziol alleges that, after he "secured a position projected to satisfy accumulating support arrears," Hawse–Koziol "refused [to] cooperat[e]," which "forc[ed Koziol] to file for [a] downward adjustment." (*Id.* ¶ 95.) Thereafter, Magistrate Gorman "issued a later conceded unlawful order with minor temporary relief that failed to advance [Koziol]'s long term goals." (*Id.* ¶ 96.) Magistrate Gorman also appointed Koslosky to represent Koziol's children in support proceedings. (*Id.* ¶¶ 101, 105.) Additionally, in April 2013, Koziol published a twenty-five page complaint on his website, which was critical of the "inordinate delays and employment injury caused by Magistrate Gorman," and, ten days later, Magistrate Gorman "issued a four month late decision which reversed his unlawful order, imposed lawyer fees contrary to record commitments, imputed income based on a fabricated PhD, and hiked support obligations to unmanageable levels." (*Id.* ¶¶ 103–04.)

#### 2. *Judge Tormey*
**\*3** Judge Tormey is the Administrative Judge for the Fifth Judicial District. (*Id.* ¶ 21.) In this role, Judge Tormey assigned certain judges to Koziol's various family law matters, who then often issued decisions and orders unfavorable to Koziol. (*Id.* ¶¶ 82, 138.)

#### 3. *Justices Rose, Lahtinen, Spain, and Stein*
At the time Koziol filed his complaint, Justices Rose, Lahtinen, Spain, and Stein [5] were Justices of the Supreme Court, Appellate Division, Third Judicial Department. (*Id.* ¶ 22.) These defendants are each named only once in Koziol's complaint. (*Id.*) Koziol has completely failed to provide any factual background elucidating why he has named these individuals as defendants. [6]

#### 4. *Justice Centra*
Justice Centra is a Justice of the Supreme Court, Appellate Division, Fourth Judicial Department. (*Id.* ¶ 26.) Koziol alleges that, in January 2008, Justice Centra presided over his application for a stay of his divorce and child custody and support proceedings. (*Id.* ¶¶ 1–5, 31–38.) Koziol further alleges that, around the same time, an "ethics prosecution" was commenced against him, and Justice Centra "directed"

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works. 2

the prosecution "using means outside of established channels and judicial scope." (*Id.* ¶¶ 40–41.) According to Koziol, Justice Centra "was offended by [Koziol]'s criticisms," and the purpose of the prosecution "was not designed to further any legitimate ethics objective but to make an example of [Koziol] by suppressing his accurate criticisms of Family Court and discouraging long overdue reform." (*Id.* ¶¶ 41–44.)

### 5. Zayas and Duffy

Zayas is a former member of COPS, and Duffy is the former chairperson and current chief counsel. (*Id.* ¶¶ 23–24.) Koziol claims that Zayas and Duffy authorized and led "inquiries" of him and submitted a " 'secret' report" opposing his reinstatement to the bar. (*Id.* ¶¶ 69, 143–44, 146, 150.)

### B. Christensen

Christensen is a supervisor for the Oneida County Support Collection Unit and is assigned to Koziol's income and asset executions. (*Id.* ¶ 25.) Although far from clear, Koziol appears to allege that Christensen aided Hawse–Koziol in "impair[ing] driving and employment liberties," "pursuant to an unlawful [support] intercept to enforce private debts." (*Id.* ¶¶ 98, 100.)

### C. Koslosky

Koslosky was appointed Attorney for the Child for Koziol's two children, and, in that role, he "harmed the long term interests of [the children]." (*Id.* ¶ 28.) Koziol further claims that Koslosky fabricated and submitted a sworn statement "claiming that [Koziol] had sought reinstatement of his law license in Onondaga Family Court in a scam to fabricate lawyer incompetence" and, together with Hawse–Koziol, "lodged false claims ... that [Koziol] had arranged a kidnapping plot in Rio de Janeiro." (*Id.* ¶¶ 71–72, 76–77.) Koziol also alleges that, in July 2013, Koslosky, again with Hawse–Koziol, filed a "round of specious petitions." (*Id.* ¶ 108.)

### D. Hawse–Koziol

**\*4** Hawse–Koziol is Koziol's ex-wife and the mother of his two children. (*Id.* ¶¶ 27, 32, 37.) Koziol claims that Hawse–Koziol "issued an ultimatum which called for a surrender of parenting rights in exchange for an end to child support so that a wealthy, childless substitute could father [Koziol]'s daughters," "abuse[d] joint custody rights by orchestrating a series of career damaging petitions," filed "false claims,"

"motions for contempt," and "specious petitions" against Koziol in Family Court—which resulted in added visitation restrictions, "injury to [Koziol]'s livelihood," and a general loss of parenting rights—and "impair[ed Koziol's] driving and employment liberties" with the aid of Christensen. (*Id.* ¶¶ 35–36, 76, 82, 89, 91–92, 9495, 98, 100, 108–13, 115–16, 137.)

### III. *Standard of Review*

The standards of review under Rules 12(b)(1) and 12(b)(6), which are "substantively identical," *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2003), are well settled and will not be repeated. For a full discussion of those standards, the parties are referred to the court's decisions in *Unangst v. Evans Law Associates, P.C.,* 798 F.Supp.2d 409, 410 (N.D.N.Y.2011), and *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D .N.Y.2010), respectively. Likewise, the standard of review pursuant to Fed.R.Civ.P. 56 is also well established and need not be repeated here. *See Wagner v. Swarts,* 827 F.Supp.2d 85, 92 (N.D.N.Y.2011), *aff'd sub nom. Wagner v. Sprague,* 489 F. App'x 500 (2d Cir.2012).

Furthermore, in general, *pro se* plaintiffs are "entitled to special solicitude," and the court has a duty to read and interpret a *pro se* party's submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (internal quotation marks and citations omitted). However, where "a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience such that it is appropriate to charge [him] with knowledge of ... particular requirements, it falls well within a district court's discretion to lessen the solicitude that would normally be afforded." *Tracy v. Freshwater,* 623 F.3d 90, 102 (2d Cir.2010) (internal quotation marks and citation omitted).

### IV. *Discussion*

As an initial matter, because Koziol graduated from law school and, as he points out, spent "more than two decades" practicing law, (Compl.¶ 40), he is undeserving of "the leeway afforded to legal neophytes," *NMD Interactive, Inc. v. Chertok,* No. 11 Civ. 6011, 2013 WL 1385213, at \*12 (S.D.N.Y. Mar. 18, 2013), *vacated on other grounds by*

*Streeteasy, Inc. v. Chertok*, 752 F.3d 298 (2d Cir.2014). *See Parent v. New York*, 485 F. App'x 500, 502–03 (2d Cir.2012) (declining to afford Koziol the "special solicitude" afforded to *pro se* plaintiffs).

## A. *Koziol's Motion For Disqualification of the Court*

**\*5** Invoking due process principles, Koziol seeks the court's recusal . [7] (Dkt. No. 45, Attach. 1 at 2–6; Dkt. No. 45, Attach. 2 at 15, 25–30.) Koziol's motion is denied.

"Consistent with a defendant's due process right to a fair trial, a district judge must recuse himself 'in any proceeding in which his impartiality might reasonably be questioned.' " *United States v. Basciano*, 384 F. App'x 28, 32 (2d Cir.2010) (quoting 28 U.S.C. § 455(a)). A recusal decision rests within the sound discretion of the judge whose recusal is sought. *See United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir.1992). The standard for recusal is whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality [might] reasonably be questioned." *Id.* (citation omitted). "Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *Id* . (citation omitted). Notably, recusal is not required where a case "involves remote, contingent, indirect or speculative interests." *Id.* To permit otherwise would be to "bestow upon litigants the power to force the disqualification of judges who are not to their liking." *United States v. Ahmed,* 788 F.Supp. 196, 202 (S.D.N.Y.1992), *aff'd,* 980 F.2d 161 (2d Cir.1992).

First, Koziol contends that recusal is mandated by the court's prior adverse rulings, including the court's denial of his application for a temporary restraining order by order to show cause, (Dkt.Nos.6, 7), and its denial of his motion seeking either reconsideration of that decision or certification to file an interlocutory appeal, (Dkt.Nos.19, 44). (Dkt. No. 45, Attach. 2 at 15, 27–30.) Prior adverse rulings, however, are generally not a basis for disqualification. *See Gallop v. Cheney*, 645 F.3d 519, 52021 (2d Cir.2011) (noting that an adverse ruling alone was insufficient to establish the sort of extreme antagonism required for disqualification); *see also Liteky v. United States,* 510 U.S. 540, 555 (1994) (noting that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a

bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible"). Equally unpersuasive is Koziol's insistence that recusal is necessary because the court has been critical of his consistently nonsensical and abusive submissions. (Dkt. No. 45, Attach. 1 at 3, 5; Dkt. No. 45, Attach. 2 at 25.) Indeed, "a judge's comments during a proceeding that are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' " *United States v. Carlton,* 534 F.3d 97, 100 (2d Cir.2008) (quoting *Liteky*, 510 U.S. at 555). [8]

**\*6** Second, Koziol argues that the Second Circuit's decision in *United States v. Cossey,* 632 F.3d 82 (2d Cir.2011), compels recusal. (Dkt. No. 45, Attach. 1 at 2–4; Dkt. No. 45, Attach. 2 at 25–27.) In Cossey, the Second Circuit vacated a sentence imposed by this court on a defendant who pled guilty to one count of possession of child pornography, and held that this court improperly based the sentence on an unsupported theory that the defendant was genetically predisposed to recidivism. *See* 632 F.3d 82. In a Hail Mary attempt to explain how Cossey engenders bias here, Koziol claims that, "[t]his case focuses upon traits of a father and mother which refute disparate treatment under current law," and, as *Cossey* demonstrates, the court is "presumptively infected by an undisclosed bias which ... leads [it] to the discredited sexist conclusion that mothers are genetically programmed to be superior nurturers and fathers accordingly resist their subservient roles as money givers." (Dkt. No. 45, Attach. 1 at 3; Dkt. No. 45, Attach. 2 at 26.) Simply put, Koziol's argument is rejected because Cossey and the matter now before the court could not be any more different, and to say that Koziol's assertions rely upon "remote, contingent, indirect or speculative" theories is an understatement. *Lovaglia,* 954 F.2d at 815. [9]

As the Second Circuit has observed, "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda,* 241 F.3d 194, 201 (2d Cir.2001). Koziol's cross motion for recusal or disqualification of the court, (Dkt. No. 41), is therefore denied. Below, the court addresses the relevant arguments advanced by defendants in support of their motions, Koziol's responses in opposition, and, finally, Koziol's remaining cross motion.

## B. *Personal Involvement*

State Defendants contend that all claims against Judge Tormey and Justices Rose, Lahtinen, Spain, and Stein must be dismissed because Koziol has failed to assert any facts supporting their personal involvement. (Dkt. No. 23, Attach. 1 at 18–19.) Christensen also advances this argument in her submissions, and seeks dismissal on the same grounds. (Dkt. No. 36, Attach. 1 at 5–8.) The court agrees.

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Dyno v. Vill. of Johnson City,* 240 F. App'x 432, 434 (2d Cir.2007) (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Personal involvement "can occur by direct participation in the alleged violation, a supervisory official's failure to remedy a wrong, a supervisory official's creation of a policy or custom under which unconstitutional acts occurred, or through a supervisory official's gross negligence in managing his subordinates." *Id.; see Ashcroft v. Iqbal,* 556 U.S. 662, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.,* No. 91 CIV. 8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994), *aff'd,* 40 F.3d 1236 (2d Cir.1994).

**\*7** Here, Koziol has failed to allege personal involvement with respect to Justices Rose, Lahtinen, Spain, and Stein, who are each mentioned only once in the complaint. (Compl.¶ 22.) Thus, because the court is left totally in the dark with respect to their wrongdoing, they are dismissed from this action. Next, with respect to Judge Tormey, all Koziol has alleged is that Judge Tormey assigned certain judges to his family law matters, (*id.* ¶¶ 82, 138), but he has failed to explain how those actions give rise to any cognizable constitutional or state law claim. Judge Tormey, therefore, is also dismissed as a defendant. Finally, with respect to Christensen, a supervisor for the Oneida County Support Collection Unit, all Koziol has alleged is that she aided Hawse–Koziol in "impair[ing] driving and employment liberties," "pursuant to

an unlawful [support] intercept." (*Id.* ¶¶ 25, 98, 100.) These are entirely vague allegations, which leave the court with no understanding of the factual basis for the claims asserted against Christensen, and she is also dismissed from this action. Accordingly, Christensen, Judge Tormey, and Justices Rose, Lahtinen, Spain, and Stein are dismissed for lack of personal involvement.

## C. *Judicial Immunity*

Next, State Defendants argue that the claims asserted against Judge King and Magistrate Gorman in their individual capacities must be dismissed because they are entitled to absolute judicial immunity .[10] (Dkt. No. 23, Attach. 1 at 6–12.) Koziol counters that judicial immunity does not apply. (Dkt. No. 42, Attach. 3 at 13–14.) The court agrees with State Defendants.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11 (1991) (citation omitted). A judge is not entitled to this immunity, however, if he has acted either beyond his judicial capacity, or "in the complete absence of all jurisdiction." *Id.* at 12. In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is "to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter." *Ceparano v. Southampton Justice Court,* 404 F. App'x 537, 539 (2d Cir.2011) (internal quotation marks and citation omitted). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, *i.e.,* whether it is a function normally performed by a judge, and [on] the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity ." *Id.* (internal quotation marks and citation omitted). Moreover, if the judge is performing in his judicial capacity, immunity does not give way even if "the action he took was in error, was done maliciously, or was in excess of his authority." *Id.* (internal quotation marks and citation omitted).

**\*8** Here, Koziol's allegations against Judge King relate primarily to various custody and visitation orders that he issued in matters pending before him. (Compl.¶¶ 108–12, 119–20, 127–28.) Koziol also complains of the way that

Judge King managed his courtroom during a hearing. (*Id.* ¶¶ 130–37.) This conduct is precisely the type that is protected by judicial immunity. *See Davis v. Kushner,* No. 1:14–cv–00511, 2014 WL 5308142, at *5 (N.D.N .Y. Oct. 16, 2014) (holding that family court judge was protected by judicial immunity where the plaintiff alleged that the judge "denied him custodial and visitation rights [with his children] because he is a Muslim"); *Ezeh v. VA Med. Ctr., Canandaigua, N.Y.,* No. 13–CV–06563, 2014 WL 4897905, at *13 (W.D.N.Y. Sept. 29, 2014) (holding that "the conduct of a hearing, the consideration of evidence, and the rendering of a decision are all quintessentially judicial acts"); *Sargent v. Emons,* No. 3:13cv863, 2013 WL 6407718, at *7 (D.Conn. Dec. 9, 2013) (holding that judge was immune from suit where allegations in complaint stemmed "from orders issued by [her] during the pendency of the child custody dispute before her"), *aff'd,* 582 F. App'x 51 (2d Cir.2014). Although Koziol insists that these actions were taken in the absence of Judge King's jurisdiction, (Compl.¶¶ 29–30, 124, 128), that is a legal conclusion, and simply reciting it does not make it so. *See Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir.2014) (noting that, in considering a motion to dismiss, courts "are not required to credit conclusory allegations or legal conclusions couched as factual ... allegations" asserted in a plaintiff's complaint). Simply put, Koziol has not alleged any facts that would indicate that Judge King acted outside of his judicial capacity or in the absence of jurisdiction, and Judge King is therefore entitled to absolute judicial immunity.

Similarly, Magistrate Gorman is entitled to judicial immunity. Koziol's claims against Magistrate Gorman are largely predicated on various orders and decisions—seemingly related to Koziol's child support obligations—which Koziol describes as "unlawful." (Compl .¶¶ 95–96, 10304.) Koziol also appears to take issue with the fact that it was Magistrate Gorman who appointed Koslosky as Attorney for the Child for Koziol's children. (*Id.* ¶¶ 101, 105.) But these actions were taken directly in connection with matters that were before and assigned to Magistrate Gorman, and these are the types of acts that are inherently judicial. *See Bliven,* 579 F.3d at 210 (noting that "acts arising out of, or related to, individual cases before the judge are considered judicial in nature"); *Chestnut v. Gabler,* No. 06–CV–534E(F), 2007 WL 529556, at *2 (W.D.N.Y. Feb. 13, 2007) (holding that judge defendant was protected from suit by judicial immunity where the plaintiff challenged support orders). Further, Koziol does not even allege that Magistrate Gorman acted in the absence of jurisdiction. Magistrate Gorman, therefore, is also entitled to absolute judicial immunity.

**\*9** Finally, Justice Centra is also entitled to judicial immunity. Koziol alleges that Justice Centra "directed" an "ethics prosecution" against him "using means outside of established channels and judicial scope," because Justice Centra "was offended by [Koziol]'s criticisms." (*Id.* ¶¶ 4044.) However, courts in this District have held that a justice's decisions regarding disciplinary action "falls squarely within the judicial roles of the [Appellate Division] justices." *Koziol,* 2012 WL 4854589, at *6 (citing 22 N.Y.C.R.R. 100.3(D)(3) ("Acts of a judge in the discharge of disciplinary responsibilities are part of a judge's judicial duties.")); *see Bliven,* 579 F.3d at 210 (noting that "disbarring an attorney as a sanction for the attorney's contumacious conduct in connection with a particular case" would be considered an act "judicial in nature). Accordingly, assuming that Koziol's allegations against Justice Centra meet the basic pleading requirements, Justice Centra is immune from suit. [11]

### D. *Quasi–Judicial Immunity*

State Defendants similarly contend that Zayas and Duffy are immune from suit under the doctrine of quasi-judicial immunity. (Dkt. No. 23, Attach. 1 at 12–13.) Koziol does not appear to address this argument. The court again agrees with State Defendants.

"The doctrine of quasi-judicial immunity extends absolute immunity to 'certain others who perform functions closely associated with the judicial process.' " *Feng Li v. Rabner,* No. 15–cv–2484, 2015 WL 1822795, at *4 (S.D.N.Y. Apr. 22, 2015) (quoting *Cleavinger v. Saxner,* 474 U.S. 193, 200 (1985)). Quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." *Butz v. Economou,* 438 U.S. 478, 513 (1978); *see Cleavinger,* 474 U.S. at 201 ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell,* 585 F.3d 72, 81 (2d Cir.2009) ("Judicial and quasi-judicial immunity are both absolute immunities ." (citations omitted)). Much like judicial immunity, "[a] defendant entitled to quasi-judicial immunity loses that privilege only if [he or] she acts in the clear absence of all jurisdiction." *Finn v. Anderson,* 592

F. App'x 16, 19 (2d Cir.2014) (internal quotation marks and citation omitted). The scope of a judicial officer's jurisdiction, however,

> must be construed broadly in order to allow [him or] her to exercise [his or her] functions with independence and without fear of consequences[; m]ere evidence that an official's action was in error, was done maliciously, or was in excess of [his or her] authority does not undermine [a] claim to absolute immunity so long as it did not fall clearly outside all official authority.

*Id.* (internal quotation marks and citations omitted).

Here, Koziol's claims against Zayas and Duffy—that they authorized and led "inquiries" of him and submitted a " 'secret' report" opposing his reinstatement to the bar, (Compl.¶¶ 69, 143–44, 146, 150)—are entirely related to their investigative roles as members of COPS, and the Second Circuit has "consistently extended quasi-judicial immunity to attorney disciplinary committees ." *Neroni v. Coccoma,* 591 F. App'x 28, 30 (2d Cir.2015) (citing *Anonymous v. Ass'n of the Bar of City of N.Y.,* 515 F.2d 427, 433 (2d Cir.1975)); *see Finn,* 592 F. App'x at 19 (affirming the district court's holding that a member of a grievance committee was entitled to quasi-judicial immunity for her investigation of a misconduct complaint lodged against the plaintiff). Zayas and Duffy, therefore, are entitled to quasi-judicial immunity.

### E. *Eleventh Amendment Immunity*

**\*10** State Defendants next argue that Koziol's claims against them in their official capacities must be dismissed because they are entitled to immunity under the Eleventh Amendment. (Dkt. No. 23, Attach. 1 at 1518.) The court agrees.

The Eleventh Amendment provides a state with sovereign immunity from suit. *See V.A. Office for Prot. & Advocacy v. Stewart,* 131 S.Ct. 1632, 1638 (2011) (citation omitted). "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* Generally, New York, its agencies, and its agents enjoy sovereign immunity from suit in federal court under the Eleventh Amendment. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006). Under the doctrine established in *Ex Parte Young,* however, a "plaintiff may avoid the Eleventh Amendment bar to suit

and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint[:] (a) alleges an ongoing violation of federal law[;] and (b) seeks relief properly characterized as prospective." *Clark v. DiNapoli,* 510 F. App'x 49, 51 (2d Cir.2013) (internal quotation marks and citation omitted).

Here, while Koziol seeks a judgment declaring unconstitutional § 240(1) of the New York Domestic Relations Law and §§ 8.4(d) and (h) of the New York Attorney Rules of Conduct—and this injunctive relief would be appropriately classified as prospective—the 1996 Congressional amendments to § 1983 bar injunctive relief against a judicial actor "*unless* a declaratory decree was violated or declaratory relief was unavailable or *unless* the judge's conduct was clearly in excess of the judge's jurisdiction." *Hodges v. Mangano,* 28 F. App'x 75, 77 (2d Cir.2002) (internal quotation marks and citation omitted); *see McKeown v. N.Y. State Comm'n on Judicial Conduct,* 377 F. App'x 121, 124 (2d Cir.2010). Koziol neither alleges that a declaratory order was violated nor that declaratory relief was unavailable; and, as discussed above, State Defendants did not act in excess of their jurisdiction. *See McKnight,* 699 F.Supp.2d at 523. Thus, State Defendants are also immune from suit to the extent that they are sued in their official capacities. [12] Accordingly, given that all State Defendants have been dismissed in both their official and individual capacities, either based on lack of personal involvement or immunity, no further discussion of Koziol's claims against them is warranted. [13]

### E. *State Action*

Next, Hawse–Koziol and Koslosky seek dismissal of Koziol's claims asserted against them on the theory that they are not state actors, and on the grounds that, to the extent that Koziol has attempted to allege that they conspired with state actors, those claims also fail. (Dkt. No. 25, Attach. 57 at 5–9; Dkt. No. 39 at 3–4.) In response, Koziol simply reasserts the same conslusory statements made in his complaint—that Hawse–Koziol and Koslosky conspired with each other and state actors to violate his constitutional rights. (Dkt. No. 45, Attach. 1 at 7–8.) The court agrees with Hawse–Koziol and Koslosky that they are neither state actors nor co-conspirators with state actors.

**\*11**  "In order to state a claim under 📑 § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323 (2d Cir.2002) (citation omitted). In order to prove a 📑 § 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324–25. However, "[a] merely conclusory allegation that a private [individual] acted in concert with a state actor does not suffice to state a 📑 § 1983 claim against the private [individual]." *Id.* at 324 (citation omitted). Instead, a plaintiff must show "a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974).

Here, despite his vehement contentions to the contrary, Koziol has failed to establish that Kosolsky and Hawse–Koziol were state actors for 📑 § 1983 purposes. With respect to Koslosky, the court-appointed attorney for Koziol's children, it is black letter law that "[p]rivate law firms and attorneys ... are not state actors for 📑 section 1983 purposes." *Jaffer v. Patterson,* No. 93 Civ. 3452, 1994 WL 471459, at \*2 (S.D.N.Y. Sept. 1, 1994) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 318 (1981)); *see O'Bradovich v. Vill. of Tuckahoe,* 325 F.Supp.2d 413, 419 (S.D.N.Y.2004) ("[P]rivate attorneys and law firms ... do not act under color of state authority." (citation omitted)). More to the point, it is equally well-settled that, "although appointed by the state, an attorney for the child[ ] or law guardian is not a state actor because he ... must exercise independent professional judgment on behalf of the clients [he] represent[s]." *Parent v. New York,* 786 F.Supp.2d 516, 538 (N.D.N.Y.2011), *aff'd* 485 F. App'x 500 (2d Cir.2012); *see Elmasri v. England,* 111 F.Supp.2d 212, 221 (E.D.N.Y.2000) (finding that court appointed legal guardian in custody proceedings was not a state actor, despite her appointment by a New York state court and the fact that she was paid by state funds). Thus, Koslosky is not a state actor for 📑 § 1983 purposes.

Further, with respect to Hawse–Koziol, Koziol's allegations that she "abuse[d] joint custody rights" and filed "false

claims" and "specious petitions," at most, amount to a misuse of the family court system. (Compl.¶¶ 36, 76, 108, 111.) However, mere use, and even misuse, of the state courts does not turn private parties into state actors. *See Cramer v. Englert,* 93 F. App'x 263, 264 (2d Cir.2004) ("[T]he mere invocation of New York legal procedures does not satisfy the state actor requirement under 📑 § 1983." (internal quotation marks and citation omitted)); 📑 *Dahlberg v. Becker,* 748 F.2d 85, 89–90 (2d Cir.1984) (dismissing 📑 § 1983 action because allegations of "misuse of a state statute" did not give rise to a 📑 § 1983 action). Hawse–Koziol, therefore, is not a state actor for 📑 § 1983 purposes.

**\*12**  Finally, Koziol also has failed to allege facts giving rise to a conspiracy claim. First, Koziol seemingly attempts to allege that Koslosky and Hawse–Koziol conspired against him to deprive him of parenting rights by "lodg [ing] false claims" and filing "specious petitions," (Compl.¶¶ 7677, 108), but it is beyond cavil that two private citizens, acting together, do not give rise to a conspiracy. *See* 📑 *Ciambriello,* 292 F.3d at 324–25 (noting that, to prove a conspiracy claim, a plaintiff must allege "an agreement between a state actor and a private party"). Further, any allegations that Hawse–Koziol conspired with state actors by providing information to Judge King regarding Koziol's website and "monitoring [Koziol's] protected activities," are equally meritless. (Compl. ¶¶ 113, 115; Dkt. No. 45, Attach. 1 at 7–8.) "[F]urnishing information to [state actors] does not by itself make someone a joint participant in state action under 📑 Section 1983." 📑 *Drayton v. Toys 'R' Us Inc.,* 645 F.Supp.2d 149, 163 (S.D.N.Y.2009). Simply put, Koziol's complaint is riddled with "conclusory, vague, [and] general allegations of a conspiracy," and such allegations "cannot withstand a motion to dismiss." *Martinez v. Queens Cnty. Dist. Attorney,* 596 F. App'x 10, 13 (2d Cir.2015) (internal quotation marks and citations omitted). Accordingly, Koziol's 📑 § 1983 claims against Koslosky [14] and Hawse–Koziol are dismissed. [15]

### F. *State Law Claims*

Koziol's sixth cause of action asserts a *prima facie* tort claim under New York common law. (Compl.¶¶ 174–75.) Having dismissed all of his federal claims, the court declines to exercise supplemental jurisdiction of Koziol's remaining state law claim.

"In the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion." *Butler v. LaBarge,* No. 9:09–cv–1106, 2010 WL 3907258, at *3 (N.D.N.Y. Sept. 30, 2010) (citing *Kolari v. N.Y. Presbyterian Hosp.,* 455 F.3d 118, 121–22 (2d Cir.2006)). Where, as here, all federal claims have been eliminated before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal. *See Kolari,* 455 F.3d at 122. Accordingly, the court declines to exercise jurisdiction over Koziol's state law claim and it is dismissed from this action.

### G. *Leave to Amend*

Although a *pro se* plaintiff's complaint "should not [be] dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of N.Y.,* 579 F.3d 176, 183 (2d Cir.2009) (internal quotation marks and citation omitted), "leave to amend is not necessary when it would be futile," *Ashmore v. Prus,* 510 F. App'x 47, 49 (2d Cir.2013). As an initial matter, as discussed above, *supra* Part IV, given his legal education and experience, the court, in its discretion, declines to afford Koziol any special solicitude. Moreover, Koziol has not requested leave to amend in any of his submissions. And, in any event, considering the analysis above, any amended complaint would be just as frivolous, baseless, and vexatious as his original, and amendment, therefore, would be futile. Accordingly, Koziol's complaint is dismissed with prejudice.

### H. *Koziol's Cross Motion*

 **\*13**  Given that the court has granted defendants' dispositive motions, (Dkt.Nos.23, 25, 36, 39), and dismissed Koziol's complaint, his cross motion for a preliminary injunction, (Dkt. No. 41), which seeks essentially the same relief as that requested in his complaint, is denied as moot.

### I. *Sanctions*

Finally, separate from his summary judgment motion, Koslosky has moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, arguing that the court should impose sanctions upon Koziol and issue an order enjoining him from commencing any further litigation without prior leave of the court, in order to deter Koziol from continuing to file harassing and frivolous lawsuits

against him. (Dkt. No. 27; Dkt. No. 27, Attach. 56 at 2–13.) In response, Koziol reargues the merits of his claims, reproduces, verbatim, several paragraphs of previous submissions, and argues that, if anyone should be sanctioned, it is Koslosky's attorney. (Dkt. No. 45, Attach. 1 at 8–19.) The court agrees with Koslosky that sanctions are warranted.

Under Fed.R.Civ.P. 11(b)(2),

> By presenting to the court a pleading, written motion, or other paper ... an ... unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims ... and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

A court has authority to sanction a party under Rule 11(c) if it determines that the party has made false, misleading, improper, or frivolous representations to the court in violation of Rule 11(b). *See Williamson v. Recovery Ltd. P'ship,* 542 F.3d 43, 51 (2d Cir.2008). "A claim is legally frivolous for Rule 11 purposes if, under a standard of objective reasonableness, it is clear that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." *Friedman v. Self Help Cmty. Servs.,* No. 11–CV–3210, 2015 WL 1246538, at *23 (E.D.N.Y. Mar. 17, 2015) (citing *Caisse Nationale de Credit Agricole– CNCA, N .Y. Branch v. Valcorp, Inc.,* 28 F.3d 259, 264 (2d Cir.1994)). Procedurally, "[a] motion for sanctions must be made separately from any other motion," Fed.R.Civ.P. 11(c) (2), and "the motion must first be served upon the offending party, who is then given [twenty-one] days to remedy the sanctionable conduct before the motion may be made to the court," *Finnan v. Ryan,* No. 8:08–CV–259, 2008 WL 4891162, at *7 (N.D.N.Y. Nov. 7, 2008).

Here, as an initial matter, Koslosky complied with the procedural requirements of Rule 11(c)(2). Indeed, Koslosky served his motion for sanctions upon Koziol more than twenty-one days prior to filing it, and requested that Koziol

withdraw his complaint. (Dkt. No. 27, Attachs.54, 55.) After Koziol refused to withdraw his complaint, Koslosky filed his motion for sanctions separate from his motion for summary judgment. (Dkt. No. 27.) Substantively, Koslosky has also presented compelling arguments that support a finding of frivolousness and the imposition of sanctions. First, as noted above, this is the fourth federal complaint that Koziol has filed. *See supra* note 3. In each of these cases, Koziol has raised similar constitutional challenges to New York's Domestic Relations Law and New York's Rules of Professional Conduct, and named many of the same defendants. *See supra* note 3. Moreover, Koziol's claims against the defendants in those prior cases were dismissed on many of the same grounds as his claims were dismissed here —sovereign and absolute immunity, *Younger* abstention, lack of personal involvement, and failure to allege state action. *See supra* note 3. In one of his prior cases, the court granted one defendant's motion for attorneys' fees, and, in so doing, found that Koziol's complaint was "without legal foundation, and ... baseless." *Koziol v. Peters*, No. 6:12–CV–823, 2012 WL 5986574, at *2–3 (N.D .N.Y. Nov. 29, 2012). In addition, Koslosky has cited several other actions and petitions filed in state court in which Koziol has raised the same constitutional claims, also without success. (*See, e.g.,* Dkt. No. 27, Attachs. 4–5; Dkt. No. 27, Attach. 12; Dkt. No. 27, Attach. 28 at 10–11 (stating that Koziol's "bare assertions that the Family Court proceedings have been biased against men is not sufficient to merit constitutional analysis; indeed, such analysis is impossible because of the vague and conclusory nature of the allegations"); Dkt. No. 27, Attach. 42 at 4 (noting that Koziol "has utterly failed to articulate how his constitutional rights have been violated and the [r]ecord ... contains a complete dearth of information from which one could begin to make a thoughtful decision as to the constitutionality of the statutes asserted to be at issue, or as to any of [Koziol's] other asserted constitutional infirmities").)

**\*14** Nevertheless, Koziol has relentlessly pressed on, and continues to file lawsuits in this District, asserting claims that he should know, by now, are without merit, and naming defendants who he should know, by now, are immune from suit. This case is no different, and by signing the complaint, Koziol made "false, misleading, improper, [and] frivolous representations to the court" in violation of Rule 11(b), thus warranting sanctions pursuant to Rule 11(c). Williamson, 542 F.3d at 51. Therefore, pursuant to both Fed.R.Civ.P. 11(c), and the court's inherent power to impose sanctions, *see Marx v. Gen. Revenue Corp.*, 133 S.Ct. 1166, 1175

2013), Koziol is sanctioned in the amount of $1,000, and ordered to pay this penalty to Koslosky as part of his attorneys' fees. *See* Fed.R.Civ.P. 11(c)(4); (Dkt. No. 27, Attach. 56 at 12 (noting that Koslosky has "thus far expended over $60,000 in unwarranted legal fees defending against [Koziol]'s baseless ... [l]awsuits").) Although the court notes that a full award of reasonable costs and attorneys' fees would also constitute an appropriate sanction here, see Fed.R.Civ.P. 11(c)(4); 42 U.S.C. § 1988(b), it is reluctant to impose those sanctions without documentation upon which the court may quantify those fees. Of course, Koslosky—and all other represented defendants, as the prevailing parties—are free to seek attorneys' fees by subsequent motions.

Finally, the court notes that Koslosky, as part of his motion for sanctions, has sought what is essentially an anti-filing injunction. (Dkt. No. 27, Attach. 56 at 8–13.) While the court finds Koslosky's arguments persuasive, the court has a separate process for issuing orders of this sort. Thus, Koslosky's request is taken under consideration and the court will separately decide whether an anti-filing injunction is warranted.

## V. Conclusion

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that State Defendant's motion to dismiss (Dkt. No. 23) is **GRANTED;** and it is further

**ORDERED** that Christensen's motion for judgment on the pleadings (Dkt. No. 36) is **GRANTED;** and it is further

**ORDERED** that Hawse–Koziol's motion for judgment on the pleadings (Dkt. No. 39) is **GRANTED;** and it is further

**ORDERED** that Koslosky's motion for summary judgment (Dkt. No. 25) is **GRANTED;** and it is further

**ORDERED** that Koziol's cross motion for recusal and/or disqualification of the court and for a preliminary injunction (Dkt. No. 41) is **DENIED;** and it is further

**ORDERED** that Koslosky's motion for sanctions pursuant to Fed.R.Civ.P. 11 (Dkt. No. 27) is **GRANTED** and Koziol is directed to pay a penalty of $1,000 to Koslosky as part of Koslosky's attorneys' fees; and it is further

**ORDERED** that Koziol's complaint is **DISMISSED;** and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**\*15  IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2453481

---

### Footnotes

1       Soon after filing his complaint, Koziol sought a temporary restraining order by order to show cause, (Dkt. No. 6), which the court denied, (Dkt. No. 7).

2       Although the court appreciates that different standards are used in presenting facts on motions to dismiss and motions for summary judgment, because all of Koziol's claims can be dismissed based on pleading deficiencies, the facts recited are drawn from Koziol's complaint, and presented in the light most favorable to him.

3       Notably, Koziol has filed three prior lawsuits in this District, and in each, he alleged similar claims against many of the same defendants named here. Each of those cases were dismissed, and attorneys' fees were awarded in one. *See* ⚑ *Koziol v. Peters,* No. 12–CV–823, 2012 WL 4854589, at \*1, \*10–11 (N.D.N.Y. Oct. 11, 2012) (dismissing complaint in which claims arose "from his custody and child support proceedings in New York state court, his subsequent suspension from the practice of law, and his current inability to cure his suspension," and were asserted against, among other defendants, Rose, Lahtinen, Spain, Stein, Koslosky, Duffy, and Zayas, and characterizing Koziol's complaint as "rambling, disjointed, and nearly incomprehensible"); *Koziol v. Peters,* No. 6:12–CV–823, 2012 WL 5986574, at \*2–3 (N.D.N.Y. Nov. 29, 2012) (granting the defendant City of Utica's motion for attorneys' fees and describing the claims asserted in the complaint as "without legal foundation, and ... baseless"); *Parent v. New York,* 786 F.Supp.2d 516, 544–45 (N.D.N.Y.2011) (dismissing lead case, along with member case—Koziol's third case filed in this District, No. 6:10–CV–1361—in which Koziol sued, among other defendants, all of the Justices of the Appellate Division, Fourth Department, the entire Fifth Judicial District Grievance Committee, Hawse—*Koziol, and Koslosky), aff'd* 485 F. App'x 500 (2d Cir.2012).

4       With respect to Koziol's request to restore his law license in the Northern District, the court, at the outset, denies this relief. This District's Local Rule 83.4(d) sets forth the appropriate procedure by which an attorney may seek to modify an order of discipline. Koziol has not complied with that procedure.

5       Justice Stein has since been appointed to the New York Court of Appeals. For the sake of consistency, the court will refer to her as "Justice" Stein throughout this opinion.

6       While the court can surmise that these Justices are named as defendants because they issued decisions unfavorable to Koziol in his disciplinary proceedings, *see In re Koziol,* 107 A.D.3d 1137 (3d Dep't 2013); *In re Koziol,* 76 A.D.3d 1136 (3d Dep't 2010), it is not the court's duty to unearth facts outside of the pleadings, nor is it even appropriate for the court to do so.

7       Contemporaneous with the filing of his motion, Koziol filed a Petition for Mandamus with the Second Circuit, seeking substantially the same relief as he seeks here: the court's disqualification and various forms of declaratory and injunctive relief. (*See generally* Dkt. No. 45, Attach. 2.) He also sought a venue change to

the Southern District of New York. (*Id.*) The Second Circuit denied the mandamus petition "because [Koziol did] not demonstrate[ ] that exceptional circumstances warrant the requested relief." (Dkt. No. 46.)

8 Koziol also takes issue with two aspects of the court's September 3, 2014 order denying his request to supplement his application for a temporary restraining order. (Dkt. No. 17; Dkt. No. 45, Attach. 2 at 27.) First, Koziol argues that the court "utterly ignored" his claims of mail tampering, which he describes, incredibly, as "ongoing crimes ... at the core of [his] case." (Dkt. No. 45, Attach. 2 at 27.) In fact, in his thirty-page complaint, Koziol uses the phrase "mail tampering" exactly once, and in reference to "crimes committed by an ex-secretary," who is neither identified nor named as a defendant in this action. (Compl.¶ 67.) Thus, his claims of "mail tampering" are tangential at best. Further, aside from the court's order denying his application for a temporary restraining order, which he claims he never received, (Dkt. No. 45, Attach. 2 at 27), Koziol appears to have received every other communication from this court. Second, Koziol seems to argue that the court improvidently denied his requests to seal the record and permit him to proceed under a fictional party name, in contrast to a previous decision from this District granting those requests. (*Id.*) Again, Koziol's accusations ignore reality. The court denied his request to seal documents because he failed to comply with this District's Local Rules, and the court also ordered him to comply with Local Rule 8.1 with respect to certain of his exhibits that contained personal identifiers. (Dkt.Nos.7, 17.)

9 Without any explanation, Koziol also claims that, because "Judge Sharpe's ... son is employed for a federal prosecutor who testified at the subject Moreland Commission[,] ... additional bias issues" are triggered. (Dkt. No. 45, Attach. 1 at 4; Dkt. No. 45, Attach. 2 at 27.) This argument is also rejected. Under 28 U.S.C. § 455(b)(5)(ii), recusal is appropriate when "a person within the third degree of relationship to [the judge] ... [i]s acting as a lawyer in the proceeding." That is not the case here, as the court has no relation to any of the lawyers in this proceeding.

10 Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Ying Jing Gan v.. City of N.Y.,* 996 F.2d 522, 529 (2d Cir.1993); *Martinez v. Queens Cnty. Dist. Attorney,* No. 12–CV–06262, 2014 WL 1011054, at *8 n. 8 (E.D.N.Y. Mar. 17, 2014), *aff'd,* 596 F. App'x 10 (2d Cir.2015); *McKnight v. Middleton,* 699 F.Supp.2d 507, 521–25 (E.D.N.Y.2010), *aff'd,* 434 F. App'x 32 (2d Cir.2011). As further discussed below, the Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *See Ying Jing Gan,* 996 F.2d at 529.

11 Although Judge Tormey has already been dismissed for lack of personal involvement, *supra* Part IV.B., the court notes that he would also properly be entitled to judicial immunity for allegedly assigning Koziol's family law matters to certain judges who then rendered decisions unfavorable to Koziol. "[C]ourts have held that the assignment of cases is a judicial function and is therefore a protected act under judicial immunity." *Neroni v. Coccoma,* No. 3:13–cv–1340, 2014 WL 2532482, at *7 (N.D.N.Y. June 5, 2014), *aff'd,* 591 F. App'x 28 (2d Cir.2015); *see Zahl v. Kosovsky,* No. 08 Civ. 8308, 2011 WL 779784, at *9 (S.D.N.Y. Mar. 3, 2011) (holding that the alleged manipulation of the case assignment system is protected by judicial immunity), *aff'd,* 471 F. App'x 34 (2d Cir.2012).

12 The court also notes that declaratory relief, while equitable in nature, is barred by the Eleventh Amendment "when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." *Kent v. New York,* No. 1:11–CV–1533, 2012 WL 6024998, at *7 (N.D.N.Y. Dec. 4, 2012). Here, much of the equitable relief that Koziol seeks is retrospective, and does not fall within the *Ex Parte Young* exception. (*See generally* Compl. at 30 (requesting "[a] permanent injunction ...

on custody/support orders and license suspensions" and "[a] judgment declaring unconstitutional ... the terms of suspension upon [his] law license").

13   The court does note, however, that Koziol takes great issue with previous courts dismissing his claims based on the abstention doctrine articulated by the Supreme Court in *Younger v. Harris,* 401 U.S. 37 (1971), and argues that the Supreme Court's recent decision in *Sprint Communications, Inc. v. Jacobs,* 134 S.Ct. 584, 588 (2013) proves that abstention was inappropriate. (Dkt. No. 42, Attach. 3 at 1, 14–20.) At least with respect to Koziol's claims regarding his ongoing disciplinary proceedings, the court disagrees, and those claims may still properly be dismissed based on *Younger.* In *Younger,* the Supreme Court held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See* 401 U.S. at 54. That rule was later extended to claims for declaratory relief and underlying state civil actions. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n.,* 457 U.S. 423, 432 (1982); *Hansel v. Town Court for the Town of Springfield, N.Y.,* 56 F.3d 391, 393 (2d Cir.1995). In *Sprint,* however, the Supreme Court reaffirmed that abstention is appropriate only in three categories of state proceedings: (1) where federal jurisdiction would intrude on pending state criminal proceedings; (2) in civil enforcement proceedings that are "akin to criminal prosecutions"; or (3) in "civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." 134 S.Ct. at 588, 591 (internal quotation marks and citations omitted). *Sprint* did not, however, as Koziol suggests, disrupt the notion that abstention from ongoing state disciplinary proceedings is proper, as pending attorney disciplinary proceedings are among those " 'civil enforcement' " proceedings expressly authorized by *Sprint. Id* . at 592 (citing *Middlesex,* 457 U.S. at 433–34); *Neroni,* 595 F. App'x at 94–95. "As the Supreme Court explained in *Sprint,* [a] state-initiated disciplinary proceeding[ ] against a lawyer for violation of state ethics rules, substantiated by a state investigation and the issuance of a formal complaint, was a noncriminal proceeding[ ] bear[ing] a close relationship to proceedings criminal in nature, such that it merited deference under Younger." *Torres v. DeMatteo Salvage Co., Inc.,* 34 F.Supp.3d 286, 291 (E.D.N.Y.2014) (internal quotation marks and citations omitted); *see Frelix v. New York,* No. 15cv0465, 2015 WL 585857, at *2 (S.D.N.Y. Feb. 4, 2015). Because Koziol's disciplinary proceeding is the type of proceeding in which the *Younger* abstention rule still applies, and he has not adequately alleged why this court should intervene, the court declines to do so. Therefore, the court also dismisses Koziol's federal claims for injunctive and declaratory relief related to his disciplinary proceedings under the *Younger* abstention doctrine.

14   Even if the court were to find that Koslosky was a state actor, he would be immune from suit under the theory of quasi-judicial immunity. *See McKnight v. Middleton,* 699 F.Supp.2d 507, 528 (E.D.N.Y.2010), *aff'd,* 434 F. App'x 32 (2d Cir.2011); *see also Yapi v. Kondratyeva,* 340 F. App'x 683, 684–85 (2d Cir.2009); *Gardner by Gardner v. Parson,* 874 F.2d 131, 146 (3d Cir.1989) (holding that guardian ad litem received absolute immunity in acting as an "actual functionary or arm of the court"); *Lewittes v. Lobis,* No. 04 Civ. 0155, 2004 WL 1854082, at *11–12 (S.D.N.Y. Aug. 19, 2004) (applying New York's quasi-judicial immunity to law guardians in a § 1983 action).

15   The court also notes that, citing *Parent v. New York,* Koslosky and Hawse–Koziol also contend that Koziol's claims are barred by res judicata. (Dkt. No. 25, Attach. 57 at 3–5; Dkt. No. 39 at 3–4.) As noted above, Koziol's complaint is difficult to comprehend, but to the extent that he seeks to reassert the same claims that were raised and decided in *Parent,* the court agrees that dismissal on res judicata grounds-and more specifically, claim preclusion-is also appropriate. "Res judicata embraces two concepts: issue preclusion (also known as collateral estoppel) and claim preclusion." *Rivera v. City of N.Y.,* 594 F. App'x 2, 5 (2d Cir.2014). In order for

claim preclusion to apply, three requirements must be met: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff[ ] or those in privity with [him]; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000). Notably, "[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L–Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 88 (2d Cir.1999). In *Parent,* the court dismissed Koziol's claims against Koslosky and Hawse–Koziol because they are not state actors and because Koziol failed to state a claim that they conspired with state actors to deprive him of a constitutional right. 786 F.Supp.2d at 538–40, 543. As noted above, this decision was affirmed by the Second Circuit. *See Parent v. New York,* 485 F. App'x 500 (2d Cir.2012). Thus, to the extent that Koziol asserts the same claims against Hawse–Koziol and Koslosky as he did in *Parent,* those claims are also barred by res judicata.

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16556060
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daishawn-Lavon MILLER EX, Plaintiff,

v.

David PRIMO, Chief Clerk; Karen J Stanislaus-
Fung, Court Attorney Referee; Tylyn L Bozeman,
Attorney for mother; Robert Temple, Attorney for
the child; Salvatore Pavone, Court Attorney Referee;
and Tanerra CC Newton, mother, Defendants.

5:22-CV-0680 (BKS/ML)
|
Signed September 29, 2022

**Attorneys and Law Firms**

DAISHAWN-LAVON MILLER EX, Plaintiff, Pro Se, 2363
James Street, Number 547, Syracuse, New York 13206.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1)
together with an application to proceed *in forma pauperis*
(Dkt. No. 3) filed by Daishawn-lavon Miller Ex ("Plaintiff")
to the Court for review. For the reasons discussed below, I
grant Plaintiff's *in forma pauperis* application (Dkt. No. 3),
and I recommend that Plaintiff's Complaint (Dkt. No. 1) be
dismissed in its entirety without prejudice (a) in part with
leave to amend, and (b) in part without leave to amend.

## I. BACKGROUND

Liberally construed, [1] Plaintiff's Complaint asserts that
his rights were violated by Defendants David Primo,
Karen Stanislaus, Tylyn Bozeman, Robert Temple, Salvatore
Pavone, Tanerra CC Newton (collectively "Defendants"),
who were all involved in Plaintiff's state court child custody
dispute. (*See generally* Dkt. No. 1.)

In total Plaintiff's Complaint and the ten attachments are 79-
pages long. (*Id.*) The vast majority of Plaintiff's Complaint
and attachments are nonsensical, rambling sentences, that
strongly suggest Plaintiff is proceeding in the present case
on the basis of his purported status as a sovereign citizen.

More specifically, Plaintiff alleges that his due process rights
were violated by Defendants when they failed to take notice
of his attempts to serve them with notice of his "status as the
executor, american national, age of [majority], secured party
creditor" and that Defendants enforced and applied a foreign
and unconstitutional form of law. (*Id.*) In addition, Plaintiff
alleges that Defendants violated his constitutional rights by
determining the custody of his child pursuant to the Family
Court Act, which is "derrived [sic] from the Social Security
Act which was never enacted into positive law." (Dkt. No. 1
at 4.)

Plaintiff alleges that Defendant Primo, the Chief Court Clerk
of Onondaga County Family Court, was present during
Plaintiff's custody trial where he "watched" (1) Plaintiff
question the court's jurisdiction, and (2) Plaintiff's requests
to have his name correctly formatted be ignored. [2] (*Id.* at
6.) Plaintiff alleges that the court failed to take notice of
"NYS authenticated Power of Attorney and Birth Certificates
[Birth Certification is now Authenticated at Federal Level,
Bill of Complaint in Equity, Declaration of Nationality,
Notice of Restricted Special Appearance, invoices/injunction
[cease and desist order], Uniform Commercial Code Financial
Statements." (*Id.*)

Plaintiff alleges that Defendant Temple, the attorney for the
child in Plaintiff's custody action, did not act in Plaintiff's
child's best interest, failed to "honor [Plaintiff's] injunction
(cease and desist order), failed to take notice of [Plaintiff's]
Bill of Complaint in Equity, NYS authenticated Power of
Attorney and Birth Certificate, Declaration of Nationality,
[and Defendant Temple wa]s also responsible for drafting the
order with the NAMES in all caps." (*Id.*)

**\*2** Plaintiff alleges that Defendant Stanislaus-Fung, who
was the court attorney referee in his custody dispute, "failed
to take notice of [Plaintiff's] status," "took joint legal custody
away from [Plaintiff] via the FAMILY COURT ACT," failed
to recuse herself despite Plaintiff's requests, and did not act as
an impartial decision maker in the custody dispute. (*Id.*)

Plaintiff alleges that Defendant Bozeman, who represented
the mother of Plaintiff's child in the custody dispute, failed
to take notice of Plaintiff's "status." (*Id.*) In addition, Plaintiff
alleges that Defendant Bozeman was served with invoices,
a private parenting agreement, and an injunction to cease
and desist but that she failed to properly respond to those
documents. (*Id.*)

Although Plaintiff's Complaint contains virtually no factual detail, it appears to assert one claim that Defendants violated his due process rights. [3] (*See generally* Dkt. No. 1.) Plaintiff does not appear to be seeking any relief. (*See generally* Dkt. No. 1.)

Plaintiff also filed an application to proceed *in forma pauperis.* (Dkt. No. 3.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [4] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 3), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [5]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. 28 U.S.C. § 1915(e); *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (per curiam); *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983); *see, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States,* 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams,* 490 U.S. 319, 325 (1989) ("[D]ismissal is proper

only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. More specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown– that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citation and punctuation omitted). "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

"Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but

also recognized as frivolous and a waste of court resources." *Muhammad v. Smith*, 13-CV-0760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) (D'Agostino, J.); *accord, Charlotte v. Hansen*, 433 F. App'x 660, 661 (10th Cir. 2011) (summary order) (noting that "an individual's belief that her status as a 'sovereign citizen' puts her beyond the jurisdiction of the courts has no conceivable validity in American law") (internal quotation marks omitted); *see also United States v. Ulloa*, 511 F. '105, 106 n.1 (2d Cir. 2013) (summary order) ("The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior. The FBI has labeled the sovereign citizens a domestic terrorist group."); *Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3rd Cir. 2008) ("[T]he 'Redemptionist' theory ... propounds that a person has a split personality: a real person and a fictional person called the 'strawman.' The 'strawman' purportedly came into being when the United States went off the gold standard ... and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman.... Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers."); *Branton v. Columbia Cnty.*, 15-CV-0005, 2015 WL 3397949, at *2-4 (N.D.N.Y. May 26, 2015) (Hurd, J., adopting Report-Recommendation of Dancks, M.J., dismissing plaintiff's complaint, which was "a classic example of [the] 'redemptionist' or 'sovereign citizen' theory," and denying leave to amend); *Green v. Pryce*, 15-CV-3527, 2015 WL 4987893, at *3-4 (E.D.N.Y. Aug. 18, 2015) (dismissing plaintiff's complaint on initial review and denying leave to amend, where the complaint was based "on the 'redemptionist' theory," included claims "pursuant to federal criminal statutes that do not provide a private right of action," and "failed to set forth any facts to support" his § 1983 claim).

 **\*4**  Here, Plaintiff's Complaint (1) is comprised of repeated references to his status as an "american national ... secured party creditor," (2) is virtually devoid of factual allegations about the incident or incidents at issue (or any other event based in fact), and (3) contains citations to statutes and references to legal concepts that do not provide a private cause of action. (Dkt. No. 1.) Accordingly, I conclude that Plaintiff's Complaint–predicated as it is on a "sovereign citizen" theory

that is routinely held to have no basis in law–does not allege facts plausibly suggesting any entitlement to relief.

In addition and in the alternative, I recommend that Plaintiff's Complaint be dismissed because it seeks relief from individuals who are immune from suit and for failure to state a claim upon which relief may be granted. [6]

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Thus, § 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

### A. Immunity

#### 1. Defendant Primo

Courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties." *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at *2 (S.D.N.Y. Aug. 22, 2022) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see Ali v. Pollak*, 182 F.3d 898 (2d Cir. 1999) (unpublished opinion) (extending judicial immunity to a pro se law clerk); *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988) (extending judicial immunity to a judge's law clerk); *Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at *2 (E.D.N.Y. Sept. 10, 2012) (same); *Gibson v. Brown*, 12-CV-0622, 2012 WL 1744845, at *4-5 (E.D.N.Y. May 16, 2012) (extending judicial immunity to a pro se writ clerk)).

 **\*5**  It appears as though Plaintiff's claim against Defendant Primo arises from actions he took with respect to a case before Defendant Stanislaus-Fung in the Onondaga County

Family Court. Plaintiff fails to allege any facts showing that Defendant Primo acted beyond the scope of his judicial responsibilities or outside of his jurisdiction. Because Plaintiff sues Defendant Primo for "acts arising out of, or related to, individual cases before" Defendant Stanislaus-Fung, he is immune from suit for such claims. *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).

### 2. Defendants Stanislaus-Fung and Pavone

"The law is clear that court referees are entitled to absolute judicial immunity from liability with respect to acts taken in the scope of their duties." *Khrapko v. Splain*, 389 F. Supp. 3d 199, 205 (W.D.N.Y. 2019) (citing *Green v. Kadilac Mortg. Bankers, Ltd.*, 936 F. Supp. 108, 115 (S.D.N.Y. 1996); *Weiss v. Feigenbaum*, 558 F. Supp. 265, 272 (E.D.N.Y. 1982)); *accord Witcher v. Moriber*, 21-CV-6168, 2022 WL 1085297, at *2 (E.D.N.Y. Apr. 11, 2022) (citing *Wilson v. Wilson-Polson*, 446 F. App'x 330, 331 (2d Cir. 2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit); *Topolski v. Wrobleski*, 13-CV-0872, 2014 WL 2215761, at *3 (N.D.N.Y. May 29, 2014) ("Judicial immunity is so broad that judges and referees 'are not liable to civil actions for their judicial acts, even when such acts ... are alleged to have been done maliciously or corruptly.' "); *Renner v. Stanton*, 13-CV-1676, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (dismissing claims against Family Court Referee based on judicial immunity)).

As a result, I recommend that Plaintiff's claim against Defendants Stanislaus-Fung and Pavone be dismissed based on the doctrine of absolute judicial immunity.

### 3. Defendant Temple

"Absolute immunity may attach to a non-judicial officer where that individual serves as an 'arm of the court,' or acts as an 'integral part[ ] of the judicial process.' " *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). "In New York, courts have regularly found that attorneys for children in custody proceedings (called 'law

guardians' until 2010, N.Y. Fam. Ct. Act § 242) enjoy quasi-judicial immunity." *Thomas v. Martin-Gibbons*, 19-CV-7695, 2020 WL 5026884, at *7 (S.D.N.Y. Aug. 25, 2020) (citing *Bey v. New York*, 11-CV-3296, 2012 WL 4370272, at *9 (E.D.N.Y. Sept. 21, 2012)).

Plaintiff's allegations against Defendant Temple arise out of his court-appointed representation of Plaintiff's child during family court proceedings. As a result, I recommend that Plaintiff's claim against Defendant Temple be dismissed pursuant to the doctrine of quasi-judicial immunity. *Thomas v. Martin-Gibbs*, 2020 WL 5026884, at *7 (citing *Yapi v. Kondratyeva*, 340 F. App'x 683, 685 (2d Cir. 2009) (finding that the Children's Law Center and its employees are entitled to quasi-judicial immunity)) (dismissing the plaintiff's claims against the Children's Law Center, which arose out of their court-appointed representation of "J.O." during family court proceedings).

Based on the doctrine of judicial immunity, I recommend that Plaintiff's claim against Defendants Primo, Stanislaus-Fung, Pavone, and Temple be dismissed because the Court lacks subject matter jurisdiction.

### B. Failure to State a Claim Upon Which Relief May Be Granted

### 1. Defendant Primo

**\*6**  In the alternative, I recommend that Plaintiff's claim against Defendant Primo be dismissed for failure to state a claim upon which relief may be granted.

"To state a claim for liability under [S]ection 1983 against a government official sued in his or her individual capacity, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, at *3 (2d Cir. June 7, 2022) (summary order) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020)). Failing to allege that a defendant was personally involved in, or responsible for, the alleged constitutional violation renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted); *see Dubois v. Beaury*, No. 21-2096, 2022 WL 1701497, at *4 (2d Cir. May 27, 2022) (stating that "personal involvement of defendants

in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983" (internal quotation marks omitted)).

Here, Plaintiff alleges that Defendant Primo "allowed" Plaintiff's rights to be violated "as he sat in on [Plaintiff's custody] Trial and watched [Plaintiff] qu[ ]estion the court['s] jurisdiction, the format of the names in the custodial order." (Dkt. No. 1 at 6.) Plaintiff's allegation that Defendant Primo was present while others allegedly violated his rights, fails to plausibly suggest Defendant Primo's personal involvement in the constitutional violation. *See Roman v. City of Mount Vernan*, 21-CV-2214, 2022 WL 2819459, at *16 (S.D.N.Y. July 19, 2022) (quoting *Arbuckle v. City of New York*, 14-CV-10248, 2016 WL 5793741, at *13 (S.D.N.Y. Sept. 30, 2016)) (" 'Simply being present at the scene of an arrest does not suffice for personal involvement.' ").

### 2. Defendant Pavone

In the alternative, I recommend that Plaintiff's claim against Defendant Pavone be dismissed for failure to allege Defendant Pavone's personal involvement in any violation of Plaintiff's rights. The Complaint lists Defendant Pavone as a defendant but fails to allege any action taken by Defendant Pavone.

### 3. Defendants Bozeman and Temple

Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendants Bozeman and Temple is inadequately pled because he failed to allege that they acted under color of state law. 42 U.S.C. § 1983; *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).

"Although appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent." *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011) (Hurd, J.). Thus, I recommend that Plaintiff's claim against Defendant Temple be dismissed for failure to state a claim upon which relief may be granted.

Moreover, although it is not clear from the face of the complaint whether Defendant Bozeman was appointed by the court to represent Defendant Newton, or whether

Defendant Newton privately retained Defendant Bozeman, the difference is inconsequential. "It is well-settled that attorneys engaged in private practice do not act under color of state law within the meaning of § 1983." *Parent*, 786 F. Supp. 2d at 538 (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981)); *accord Agron v. Douglas W. Dunham Esq. & Assocs.*, 02-CV-10071, 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004); *see Walker v. Rivera*, 22-CV-0560, 2022 WL 2341544, at *3 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (recommending dismissal of the plaintiff's Section 1983 claims against the defendant private attorney and defendant attorney for the child because the plaintiff failed to allege facts plausibly suggesting that they acted under color of state law); *DeRouseau v. Fam. Ct., Westchester Cnty.*, 21-CV-8716, 2022 WL 1747859, at *3 (S.D.N.Y. May 31, 2022) (dismissing the plaintiff's § 1983 claims against "attorneys who were appointed to represent him and his child in the Family Court."); *Cleveland v. Schenectady Cnty. Dep't of Children and Families*, 16-CV-1235, 2016 WL 8193590, at *6 (N.D.N.Y. Dec. 30, 2016) (Stewart, M.J.) ("It is well settled that conduct of private attorneys practicing in family court proceedings, even where they are paid by the State, do not rise to the level of State action.").

*7 As a result, I recommend that Plaintiff's claim against Defendants Temple and Bozeman be dismissed.

### 4. Defendant Newton

Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendant Newton—the mother of his child—was a state actor. "[M]ere use, and even misuse, of state courts does not turn private parties into state actors." *Koziol v. King*, 14-CV-0946, 2015 WL 2453481, at *11 (N.D.N.Y. May 22, 2015) (Sharpe, C.J.) (citing *Cramer v. Englert*, 93 F. App'x 263, 264 (2d Cir. 2004) ("[T]he mere invocation of New York legal procedures does not satisfy the state actor requirement under § 1983.")); *Dahlberg v. Becker*, 748 F.2d 85, 89-90 (2d Cir. 1984) (dismissing § 1983 action because allegations of "misuse of a state statute" did not give rise to § 1983 action)). Thus, Plaintiff has failed to allege facts plausibly suggesting Defendant Newton was a state actor for purposes of liability pursuant to 42 U.S.C. § 1983. *Koziol*, 2015 WL 2453481, at *11-12 (dismissing the plaintiff's claims against his ex-wife based on the plaintiff's

allegations that she "abuse[d] joint custody rights" and filed "false claims" and "specious petitions").

As a result, I recommend that Plaintiff's claim against Defendant Newton be dismissed for failure to state a claim upon which relief may be granted. [7]

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."

*Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

 **\*8** Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except those against Defendants Bozeman and Newton.

However, in light of Plaintiff's *pro se* status and out of an abundance of caution, a better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's claim against Defendant Bozeman and Newton from being *sua sponte* dismissed on initial review. As a result, I recommend that Plaintiff's claim against Defendant Bozeman and Newton be dismissed without prejudice and with leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any named defendant in the constitutional deprivations alleged in sufficient detail to establish that it was tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 3) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) against Defendants Bozeman and Newton, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) against Defendants Primo, Stanislaus-Fung, Temple, and Pavone, because it seeks relief from defendants who are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in 🚩 *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

**\*9  NOTICE:** Pursuant to 🚩 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 🚩 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; 🚩 *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing 🚩 *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2022 WL 16556060

---

## Footnotes

1      The court must interpret *pro se* complaints to raise the strongest arguments they suggest. 🚩 *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995) (quoting 🚩 *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)).

2      Although unclear from the content of the Complaint, it appears that Plaintiff prefers his name be written in entirely lowercase letters but that the caption in the state court proceedings listed the parties' names in all capital letters.

3      Plaintiff's Complaint also contains an extensive list with several legal terms that do not appear to have any meaning in context. (Dkt. No. 1 at 7.) More specifically, under the paragraph in the form complaint asking what relief Plaintiff seeks, states:

see invoices attached, Abuse of Power, Abuse of Process, Appearance in Court, Breach of Contract/ Oath/ Charter, Breach of Duty, Capitis Diminutio Maxima, Check and Balance Violation, Conspiracy/ Collusion, Deceit*, Discrimination/ Vexatious Litigation, Duty of Care Violation, Embezzlement/ Extortion, Entrapment*, Factual Causation*, Fair Hearing Request/ Violation, Fraud Upon the Court, Fraudulent Conveyance/Conversion, Fruit of The Poisonous Tree, Gross Negligence, Malicious Wrongdoing, Mental Anguish, Mis-Application of Statute, Mis-Information/False Evidence, Misappropriation of Funds, Misrepresentation, Mistrial, Natural Law Violation, Obstruction of Justice, Psychological Warfare, R.I.C.O. (Illegal Activities Per Person), Serving in Multiple Capacities, Speedy Trial Violation, Tax Fraud, The Use of Policies to Override The Law, Treason, Trespassing, Undisclosed Policies/Usury, Unholy Alliance, United States Bill of Rights Violation, Unjust Enrichment, Unlawful Taking, Use of injurious or Damaging Laws, Using Public Funds For Private Interests

(Dkt. No. 1 at 7.)

4      The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 🚩 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.,* 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

5    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

6    Due to the nature of Plaintiff's Complaint, it is difficult to precisely determine exactly which doctrine applies, but his claims are also likely barred. "The Second Circuit has recently stated that the *Rooker-Feldman* doctrine bars a district court from reviewing a family court's determinations regarding custody, neglect and visitation where those issues have been decided after providing the plaintiff a full and fair opportunity to litigate those issues." *Arena v. Dep't of Soc. Servs. of Nassau Cnty.*, 216 F. Supp. 2d 146, 152 (E.D.N.Y. 2002) (citing *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002)). "Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction." *Amato v. McGinty*, 21-CV-0860, 2022 WL 226798, at *10 (N.D.N.Y. Jan. 26, 2022) (Dancks, M.J.) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)). In the event that Plaintiff's underlying custody state court proceeding remains pending, his request for this Court's involvement may also implicate the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

7    In the alternative, I recommend that Plaintiff's claim against Defendant Newton be dismissed for failure to allege Defendant Newton's personal involvement in any violation of Plaintiff's rights. Again, Plaintiff listed Defendant Newton as a defendant in this case but failed to allege any action taken by Defendant Newton in the body of the Complaint.

8    *See also* *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

9    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16551700
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

daishawn-lavon: MILLER EX, Plaintiff,
v.
David PRIMO, et al., Defendants.

5:22-cv-680 (BKS/ML)
|
Signed October 31, 2022

**Attorneys and Law Firms**

Plaintiff Pro Se: daishawn-lavon: miller ex, [1] Syracuse, New York 13206.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

**\*1** Plaintiff pro se daishawn-lavon: miller ex brought this action on June 27, 2022, alleging, inter alia, that Defendants violated his federal rights. (Dkt. No. 1). This case was referred to United States Magistrate Judge Miroslav Lovric who, on September 29, 2022, issued a Report-Recommendation recommending that Plaintiff's complaint be dismissed in its entirety with leave to amend against Defendants Bozeman and Newton. (Dkt. No. 6, at 17). Further, Judge Lovric recommended that Plaintiff's claims against Defendants Primo, Stanislaus-Fung, Temple, and Pavone be dismissed without prejudice and without leave to amend because Plaintiff seeks relief from Defendants who are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B). (*Id.*). Magistrate Judge Lovric advised Plaintiff that under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections to the Report, and that the failure to object to the Report within fourteen days would preclude appellate review. (Dkt. No. 6, at 18).

Plaintiff has not filed objections to the Report-Recommendation. For the reasons set forth below, the Report-Recommendation is adopted, and the Complaint is dismissed with leave to amend against Defendants Bozeman and Newton.

This Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [report-recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (internal quotation marks omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920 at \*2, 2011 U.S. Dist. LEXIS 95351 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

Having reviewed the Report-Recommendation for clear error and found none, the Court adopts it for the reasons stated therein.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation, (Dkt. No. 6), is **ADOPTED** in all respects; and it is further

**ORDERED** that that Plaintiff's Complaint, (Dkt. No. 1), is dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further respectfully

**ORDERED** that Plaintiff's Complaint, (Dkt. No. 1), is **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** against Defendants Bozeman and Newton for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**\*2 ORDERED** that Plaintiff's Complaint, (Dkt. No. 1), is **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** against Defendants Primo, Stanislaus-Fung, Temple, and Pavone because it seeks relief from

defendants who are immune from suit pursuant to ⚑28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order; and any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiff files a timely amended complaint, it shall be referred to Magistrate Judge Lovric for review; and

if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 16551700

## Footnotes

1      Plaintiff writes his name in lowercase letters.

End of Document                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 54 of 97

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 981850
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE
DEPARTMENT, et al., Defendants.

Civil Action No. 5:18-CV-1471 (GTS/DEP)
|
Signed 01/07/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: Jeramie White, Pro se, 18-B-0311, Cayuga Correctional Facility, P.O. Box 1186, Moravia, NY 13118.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** This is a civil rights action brought by *pro se* plaintiff Jeramie White, a New York State prison inmate, pursuant to 42 U.S.C. § 1983, against the Syracuse Police Department ("SPD") and five of its officers. In his complaint, plaintiff alleges that defendants violated his constitutional rights during the course of his arrest on February 13, 2017. Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for review. Based upon my consideration of those materials, I will (1) grant plaintiff's amended IFP application, (2) recommend dismissal of his claim against the SPD with leave to replead, and (3) recommend that his complaint otherwise be accepted for filing.

I. BACKGROUND
Plaintiff commenced this action on or about December 20, 2018. Dkt. No. 1. According to plaintiff, he and two friends were on their way to play indoor basketball when their vehicle was pulled over for a traffic infraction. *Id.* at 4; Dkt. No. 1-1 at 4. Plaintiff alleges that after the stop, defendant William Kittle forcibly removed White from the vehicle and that Kittle, in addition to defendants Abraham Mamoun and Shawn Hauck, proceeded to use excessive force against him during the course of his arrest. Dkt. No. 1 at 4-5, 6-7; *see also* Dkt. No. 1-1 at 4, 8. Plaintiff further alleges that defendants Altimonda

and Fiorini were present and had an obligation to intervene and prevent the unlawful use of force, but failed to do so. *Id.* at 5, 7.

Plaintiff was ultimately arrested and charged with resisting arrest, in violation of N.Y. Penal Law § 205.30, and second-degree obstruction of governmental administration, in violation of N.Y. Penal Law § 195.05. Dkt. No. 1-1 at 4. As relief, plaintiff seeks compensatory and punitive damages in the amount of $1,000,000. Dkt. No. 1 at 8.

A. Plaintiff's Amended IFP Application [1]
When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [2] Because I conclude that plaintiff meets the requirements for IFP status, his amended application for leave to proceed without prepayment of fees is granted. [3]

B. Sufficiency of Plaintiff's Complaint

1. Governing Legal Standard

**\*2** Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 55 of 97

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' "

*Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

### 2. Analysis of Plaintiff's Claims

**\*3** Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F. Supp. 148 (S.D.N.Y. 1995) ); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *see also Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department."). Although I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the City of Syracuse in place of the SPD, plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the City of Syracuse. Accordingly, I recommend dismissal of plaintiff's claims asserted against the SPD.

With respect to his remaining claims, although plaintiff makes passing reference to his rights arising under the Eighth and

Fourth Amendments, *see* Dkt. No. 1 at 6, it is clear from the factual allegations that he is asserting claims for excessive force and the failure to intervene arising under the Fourth Amendment. *See generally* Dkt. No. 1; *see also Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures."). In light of the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and the individual officer defendants should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure. [4]

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branman v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, while I recommend dismissal of plaintiff's claim against the SPD, plaintiff could potentially amend his complaint to assert a cognizable cause of action against a defendant, such as the City of Syracuse, which is amenable to suit. Accordingly, I recommend that plaintiff be granted leave to amend his complaint. If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts

that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

### II. SUMMARY, ORDER, AND RECOMMENDATION

**\*4** Having reviewed plaintiff's amended application for leave to proceed in this action IFP, I conclude that he has met the applicable requirements for leave to proceed without prepayment of fees, and will therefore grant his application. Turning to the merits of his complaint, to the extent that it names five police officers and alleges a violation of 42 U.S.C. § 1983, I conclude that those claims are not subject to dismissal at this procedural juncture. I recommend a finding, however, that plaintiff's claim against the SPD is legally deficient and subject to dismissal, but that plaintiff should be afforded an opportunity to amend with respect to that claim. Accordingly, it is hereby

ORDERED that plaintiff's amended application for leave to proceed in this action without prepayment of fees (Dkt. No. 6) is GRANTED; and it is further

ORDERED that plaintiff's original application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is DENIED as moot; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be accepted for filing with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini; and it is further

RECOMMENDED that plaintiff's remaining cause of action against the Syracuse Police Department be otherwise DISMISSED with leave to replead within thirty days of the issuance of an order adopting this recommendation; and it is further

RECOMMENDED that, in the event plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 57 of 97

to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini.

NOTICE: Pursuant to ⚑ 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. ⚑ 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; ⚑ *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 981850

---

## Footnotes

1    Plaintiff filed both an original and amended motion to proceed in this action IFP. Dkt. Nos. 2, 6. While the two motions contain slightly different information concerning plaintiff's financial status, only the amended motion contains the required certification from an official at the correctional facility in which plaintiff is confined. *Compare* Dkt. No. 3 *with* Dkt. No. 7. Accordingly, plaintiff's original IFP application is denied as incomplete.

2    The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* ⚑ 28 U.S.C. § 1915(b)(3).

3    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

4    The court expresses no opinion concerning whether plaintiff's claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.

5    If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

End of Document                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 58 of 97

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kylie Ann TURCZYN, Deceased, by and through
Barbara McGREGOR, as Administratrix of
the Estate of Kylie Ann Turczyn, Plaintiff,
v.
CITY OF UTICA et al., Defendants.

No. 6:13–cv–1357 (GLS/ATB).
|
Signed Nov. 26, 2014.

**Attorneys and Law Firms**

Office of Frank Policelli, Frank Policelli, Esq., of Counsel, Utica, NY, for the Plaintiff.

City of Utica—Corporation Counsel, Mark C. Curley, Esq., Merima Smajic, Esq., Zachary C. Oren, Esq., of Counsel, Utica, NY, for the Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff Kylie Ann Turczyn, deceased, by and through Barbara McGregor, as administratrix of the estate of Kylie Ann Turczyn, commenced this action against defendants City of Utica, City of Utica Police Dept., and Elizabeth Shanley alleging substantive due process claims pursuant to 42 U.S.C. § 1983 and separate state law causes of action. (Am.Compl., Dkt. No. 12.) Pending is defendants' motion to dismiss for failure to state a claim. (Dkt. No. 19.) For the reasons that follow, the motion is granted in part and denied in part.

### II. *Background*

#### A. *Facts* [1]

Shanley, an Oneida County domestic violence investigator, was at all relevant times assigned by the Police Department to

accomplish the goals of reducing "occurrence[s] of domestic violence by increasing reporting and by identifying and tracking repeat victims and/or offenders," and "increas[ing] victims' access to supportive services by encouraging [them] to report their abuse, thereby increasing arrest rates for domestic offenders." (Am.Compl.¶ 10.) On June 22, 2012, Thomas Anderson, Turczyn's former boyfriend and the father of her daughter, broke into Turczyn's home armed with a 9 mm rifle. (*Id.* ¶ 11) Anderson repeatedly shot Turczyn, taking her life in view of their four-year-old daughter, G.T. (*Id.*) Anderson then dispatched himself. (*Id.*)

In the twelve months preceding this horrific event, Turczyn made between five and ten complaints to Utica police officers, "including informing them of a specific threat by Anderson to kill her." (*Id.* ¶ 12.) Turczyn specifically told Shanley "that Anderson was armed and had threatened to kill her." (*Id.* ¶ 12(d).) Despite their knowledge of domestic violence between Turczyn and Anderson, neither Shanley, New York State Police, nor Utica Police took any steps to arrest Anderson, investigate Turczyn's complaints, or follow-up with Anderson "as is the policy and protocol of the domestic violence unit." (*Id.* ¶ 14.)

On June 18, 2012, Shanley told Turczyn to seek an order of protection, which she attempted to do, but was told by an unknown person at the Oneida County Family Court to return the following day because the court was " 'too busy.' " (*Id.* ¶¶ 15–16.) The following day, Turczyn left a voice message for Shanley, explaining that she was unable to obtain an order of protection and that Anderson had a gun and planned to kill her that week. (*Id.* ¶¶ 16–18.) Despite her knowledge, "Shanley took no action." (*Id.* ¶ 17.) Shanley also mistakenly believed that Turczyn's issues with Anderson were outside of the purview of Utica Police and should, instead, be dealt with by New York State Police; however, "she did not inform any other police agency or take any action herself." (*Id.* ¶¶ 18, 19, 20.)

#### B. *Procedural History*

Turczyn commenced this action by filing a complaint on October 31, 2013. (Dkt. No. 1.) Defendants thereafter moved to dismiss, (Dkt. No. 10.) In response, Turczyn filed an amended complaint as of right, which is now the operative pleading. (*See generally* Am. Compl.) In her amended complaint, Turczyn alleges the following causes of action: (1) a denial of substantive due process rights under the Fifth and Fourteenth Amendments due to deliberate indifference;

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 59 of 97

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

(2) a *Monell*[2] claim against the City; (3) negligence; (4) a "derivative abandonment" on behalf of G.T.; and (5) negligent infliction of emotional distress. (*Id.* ¶¶ 37–74.) Defendants now move to dismiss the amended pleading pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 19.)

### III. *Standard of Review*

**\*2** The standard of review under Fed.R.Civ.P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in ⚐ *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D.N.Y.2010).

### IV. *Discussion*

#### A. *Preliminary Matters*
At the outset, it is noted that some of Turczyn's claims are deemed abandoned by her failure to oppose their dismissal. *See Barmore v. Aidala,* 419 F.Supp.2d 193, 201–02 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause [the] plaintiff did not address [the] defendant's motion to dismiss with regard to [a particular] claim, it [wa]s deemed abandoned and ... dismissed."). In particular, Turczyn squarely opposed dismissal of her substantive due process claim as against Shanley, (Dkt. No. 20 at 8–12), and scarcely, but sufficiently to save the claim from dismissal for abandonment, offered reasons why her substantive due process claim as against the City should survive defendants' motion, (*id.* at 5–7). Aside from the substantive due process claim, Turczyn failed to offer any opposition to defendants' motion, which also sought dismissal of her pendent causes of action. (Dkt. No. 19, Attach. 6 at 31–40 & n. 15.) Accordingly, Turczyn's pendent state law claims, (Am.Compl.¶¶ 59–74), are dismissed.

Additionally, it is clear that the Police Department must be dismissed as urged by defendants, (Dkt. No. 19, Attach. 6 at 2 n. 2), because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy,* No. 1:10–cv–1390, 2014 WL 2176148, at \*6 (N.D.N.Y. May 22, 2014) (internal quotation marks omitted). As such, all claims as against the Police Department are dismissed.

The court also notes that both parties have submitted certain evidence that is outside of the pleadings (Dkt. No. 19, Attachs. 3, 4; Dkt. No. 20, Attachs. 1, 2.) Beginning with defendants, they submitted a January 2, 2013 stipulation of discontinuance, which, on its face, purports to memorialize McGregor's agreement to withdraw the notice of claim filed on behalf of Turczyn and to discontinue with prejudice, (Dkt. No. 19, Attach.3), and a December 28, 2012 letter, which appears to memorialize a conversation regarding the discontinuation of legal action and execution of a stipulation, (Dkt. No. 19, Attach.4). Relying on a single out-of-Circuit decision, *see Raines v. Haverford Coll.,* 849 F.Supp. 1009, 1010 (E.D.Pa.1994), which does not appear directly to support their position nor does it give this court confidence that the kinds of documents at issue here were contemplated by that decision, defendants assert that the documents may be considered on their motion to dismiss as "part of the record of this case." (Dkt. No. 19, Attach. 6 at 25 n. 11.) Turczyn argues that defendants' reliance on the stipulation is inappropriate at this juncture, yet she offers the affidavit of McGregor, submitted to dispute the validity of the stipulation, (Dkt. No. 20, Attach.1), without any explanation as to why the court should or may consider it. (Dkt. No. 20 at 12–13.)

**\*3** The court has excluded from its consideration of this motion to dismiss the exhibits offered by defendants as well as the McGregor affidavit. *See* Fed.R.Civ.P. 12(d). The existence of some document or documents that may extinguish a plaintiff's claims, such as a release or stipulation of discontinuance, is an affirmative defense, *see Beede v. Stiefel Labs., Inc.,* No. 1:13–cv–120, 2014 WL 896725, at \*3 (N.D.N.Y. Mar.6, 2014), and " '[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) ... if the defense appears on the face of the complaint,' " *Iowa Pub. Emps.' ⚐ Ret. Sys. v. MF Global, Ltd.,* 620 F.3d 137, 145 (2d Cir.2010) (quoting ⚐ *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)).

Here, the stipulation defense is not apparent from the face of the amended complaint. Moreover, the court refuses to consider the documents in question as part of the record of this case, a proposition for which no in-Circuit authority has been offered nor has any been discovered by this court. As such, the documents offered by defendants, (Dkt. No. 19,

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 60 of 97

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Attachs.3, 4), are not properly before the court, and their argument that Turczyn's claims must be dismissed because of those documents is rejected. McGregor's affidavit, (Dkt. No. 20, Attach.1), which was also improvidently submitted for consideration, is likewise excluded. The court now turns to the merits of defendants' arguments regarding the substantive due process and *Monell* claims.

### B. *Rule 8*

First, defendants argue that Turczyn's § 1983 due process claim is subject to dismissal under the Rule 8 plausibility analysis—specifically because of Turczyn's failure to allege facts supportive of a sufficient nexus between Shanley's omissions and Turczyn's death. (Dkt. No. 19, Attach. 6 at 23–24.) The court disagrees. The amended complaint plausibly alleges a causal connection between the conduct of defendants—their alleged conscience-shocking failure to protect Turczyn, (Am.Compl.¶ 49)—and her injuries, *i.e.*, the allegations plausibly suggest that defendants' acts were a substantial factor in bringing about Turczyn's injuries. *See* Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir.1998) ("[I]n all § 1983 cases[ ] the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). Accordingly, this argument is rejected.

### C. *Rule 12(b)(6)*

Defendants argue that Turczyn has failed to state a substantive due process claim as against Shanley or the City. (Dkt. No. 19, Attach. 6 at 220, 26–31.) Defendants contend that Turczyn alleges only passive conduct on the part of Shanley that does not give rise to a substantive due process violation. (*Id.* at 10–12.) More generally, defendants assert that Turczyn has failed to plead facts to show "implicit prior assurances through repeated sustained inaction," and that, even if she did, the state action alleged does not rise to the level of conscience-shocking behavior. (*Id.* at 15–20.) Alternatively, defendants argue that Shanley is entitled to qualified immunity. (*Id.* at 20–23.) With respect to the City, defendants contend that Turczyn has failed to allege facts that support a claim of municipal liability. (*Id.* at 26–31.) For reasons explained below, defendants' motion is denied with respect to Turczyn's substantive due process claim against Shanley, but granted with respect to her *Monell* claim against the City.

**\*4** Only one relevant exception to the general rule that no substantive due process claim lies for a state's failure to protect an individual from private violence, *see* DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), potentially applies in this case. That exception imposes liability for failure to protect where state actors in some way affirmatively assist "in creating or increasing the danger to the victim." Okin v. Vill. of Cornwall–On–Hudson Police Dep't, 577 F.3d 415, 428 (2d Cir.2009) (internal quotation marks and citation omitted); *see* Pena v. DePrisco, 432 F.3d 98, 110 (2d Cir.2005). "[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." Okin, 577 F.3d at 428 (quoting Dwares v. City of N.Y., 985 F.2d 94, 99 (2d Cir.1993)). Moreover, when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." *Id.* at 428–29 (quoting Pena, 432 F.3d at 111)). In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Id.* at 429.

A successful substantive due process claim also requires that the plaintiff show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* at 431 (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). A hierarchy of intent provides guidance on the likelihood that a particular harm rises to the necessary level. Intentionally inflicted harms are most likely to meet the standard, while reckless and negligent inflictions of harm are each less likely, in graduated downward steps, to show conscience-shocking state action. *Id.* As for recklessly inflicted injuries, " '[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.' " *Id.* (quoting Lewis, 523 U.S. at 850). Accordingly, the inquiry is highly fact specific.

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 61 of 97

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Unlike *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), or *Neal v. Lee County,* Civil Action No. 1:08CV262, 2010 WL 582437 (N.D.Miss. Feb.12, 2010)—cases in which police had limited interaction with either the victim or killer prior to the victim's demise, and upon which defendants rely for dismissal of the claim against Shanley, (Dkt. No. 19, Attach. 6 at 3–5, 7–8)—the allegations here go substantially farther. Turczyn alleges several occasions [3] when Shanley knew of Anderson's threatening acts and did nothing, which arguably communicated to him prior assurances that there would be no penalty to pay for his conduct. (Am.Compl.¶¶ 12–13.) "This is so even though none of the defendants are alleged to have communicated the approval explicitly." *Pena,* 432 F.3d at 111. *Okin* has specifically recognized the liability that may arise under these circumstances. *See* 577 F.3d at 428–29 (explaining that liability under *§ 1983* attaches when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others" (quoting *Pena,* 432 F.3d at 111)).

 **\*5** The amended complaint also pleads facts that demonstrate, at this juncture, egregious behavior that shocks the contemporary conscience. As in *Okin,* the allegations here tend to show that Shanley, who was tasked with accomplishing certain goals related to curbing domestic violence, was deliberately indifferent as to whether or not Anderson would make good on his multiple threats against Turczyn's life over a twelve-month-period. (Am.Compl.¶ ¶ 10, 12.) These allegations sufficiently support that Shanley's affirmative conduct was the product of deliberate indifference that shocks the conscience, and would provide a reasonable jury with a valid basis to so find. *See* *Conradt v. NBC Universal, Inc.,* 536 F.Supp.2d 380, 394–95 (S.D.N.Y.2008).

Finally, Shanley is not entitled to qualified immunity at this juncture. Her argument on this issue is two-fold. First, Shanley asserts that no constitutional violation occurred, and, second, she claims that, even if a constitutional violation occurred, the right was not clearly established. (Dkt. No. 19, Attach. 6 at 20–23.) The first prong of the argument is easily swept aside by reference to the preceding paragraphs that explain that the amended complaint alleges a cognizable substantive due process violation. As for whether or not the right was clearly established, which is a prerequisite to qualified immunity, *see* *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this question has been resolved by the Second Circuit. On the issue, the court has explained that it is "clearly established," under the state-created danger theory, "that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply." *Okin,* 577 F.3d at 434. Accordingly, Shanley is not entitled to qualified immunity at this time.

As for the City, defendants assert that Turczyn has failed to plead a *Monell* claim because the amended complaint merely alleges legal conclusions. (Dkt. No. 19, Attach. 6 at 26–31.) With respect to Turczyn's allegation that the City failed to properly train or supervise its employees, defendants contend that the amended complaint is too conclusory, but that, even if adequately pleaded, Turczyn's municipal liability claim must nonetheless fail because she has not alleged deliberate indifference. (*Id.* at 29–31.)

It is well settled that "the inadequacy of police training may serve as the basis for *§ 1983* liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Oh. v. Harris,* 489 U.S. 378, 380, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is "stringent" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* —U.S. ——, ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.,* 974 F.2d 293, 297–98 (2d Cir.1992) (quoting *City of Canton,* 489 U.S. at 390 n. 10).

Case 3:23-cv-01215-MAD-ML Document 10 Filed 10/17/23 Page 62 of 97

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

**\*6** Here, because Turczyn has failed to adequately plead that the City's failure to train and supervise amounted to deliberate indifference, she has failed to state a claim of municipal liability. The amended complaint uses the label "deliberate indifference" in reference to Turczyn's municipal liability claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion. (Am.Compl.¶¶ 45, 52.) Turczyn's pleading failure mandates dismissal of her *Monell* claim against the City. *See* ⚠️*Gauthier v. Kirkpatrick,* Civil Action No. 2:13–cv–187, 2013 WL 6407716, at \*10 (D.Vt. Dec.9, 2013) (dismissing failure to train *Monell* claim because the plaintiff failed to plead facts that supported the deliberate difference elements); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y.2012); *see also Worrell v. City of N.Y.,* No. 12–CV–6151, 2014 WL 1224257, at \*13 (E.D.N.Y. Mar. 24, 2014).

## V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims alleged as against the City of Utica Police Dept. and the Clerk is directed to terminate the City of Utica Police Dept. from this action; and

**GRANTED** with respect to Turczyn's *Monell* claim against the City (Am.Compl.¶ ¶ 51–58), which is hereby **DISMISSED WITHOUT PREJUDICE,** and the Clerk is directed to terminate the City of Utica from this action; and

**GRANTED** with respect to all of Turczyn's pendant state law claims, (Am.Compl.¶ ¶ 59–74), which are hereby **DISMISSED;** and **DENIED** in all other respects; and it is further

**ORDERED** that the sole remaining defendant, Shanley, shall file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter in order to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6685476

## Footnotes

1    The facts are presented in the light most favorable to plaintiff.

2    *See* 🚩*Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3    In fact, Turczyn claims that she lodged five to ten complaints—of which Shanley was aware—with the Utica Police within the twelve months preceding the murder. (Am.Compl.¶¶ 12, 13.) So many occurrences may amount to "repeated [and] sustained inaction ... in the face of potential acts of violence." 🚩*Okin,* 577 F.3d at 428.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.                                5

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 63 of 97

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 974824
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE DEPARTMENT; Abraham
Mamoun, Syracuse Police Dept.; William Kittle,
Syracuse Police Dept.; Shawn Hauck, Syracuse
Police Dept.; Altimonda, Syracuse Police Dept.;
and Fiorini, Syracuse Police Dept., Defendants.

5:18-CV-1471 (GTS/DEP)
|
Signed 02/28/2019

**Attorneys and Law Firms**

JERAMIE WHITE, 18-B-0311, Plaintiff, Pro Se, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, New York
13118.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jeramie White ("Plaintiff") against the
Syracuse Police Department and five of its employees
("Defendants"), is United States Magistrate Judge David
E. Peebles' Report-Recommendation recommending that (1)
Plaintiff's Complaint be accepted for filing by the Court
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini, and (2) Plaintiff's remaining cause of action against
the Syracuse Police Department be dismissed with leave to
replead within thirty days of the issuance of an Order adopting
the Report-Recommendation. (Dkt. No. 9.) Plaintiff did not
submit an objection to the Report-Recommendation, and the
deadline by which to do so has expired. (*See generally* Docket
Sheet.) [1]

Based upon a review of this matter, the Court can find
no clear error in the Report-Recommendation: [2] Magistrate
Judge Peebles employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. As a result, the Court accepts and adopts the Report-
Recommendation for the reasons stated therein; Plaintiff's
Complaint is accepted for filing with respect to his Fourth
Amendment cause of action against Defendants Mamoun,
Kittle, Hauck, Altimonda and Fiorini; and Plaintiff's
remaining cause of action against the Syracuse Police
Department is dismissed with leave to replead within thirty
days of the issuance of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Peebles' Report-
Recommendation (Dkt. No. 9) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint is accepted for filing
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini; and it is further

**\*2 ORDERED** that Plaintiff's remaining cause of action
against the Syracuse Police Department is **DISMISSED with
leave to replead within THIRTY (30) DAYS** of the issuance
of this Decision and Order.

**ORDERED** that, in the event Plaintiff files an Amended
Complaint within the above-referenced thirty-day period, it
shall be referred to Magistrate Judge Peebles for review; and
it is further

**ORDERED** that, in the event Plaintiff does not file an
Amended Complaint within the above-referenced thirty-
day period, this action shall move forward with respect to
his Fourth Amendment cause of action against Defendants
Mamoun, Kittle, Hauck, Altimonda and Fiorini, and the Clerk
of the Court is directed to issue summonses and USM-285
forms at that time for service by the U.S. Marshal Service.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 974824

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 64 of 97

## Footnotes

1    The Court notes that, on January 11, 2019, Plaintiff filed a letter from the City of Syracuse Citizen Review Board dated December 31, 2018, outlining its findings with respect to this matter. (Dkt. No. 10.) In its letter, the Citizen Review Board upheld Plaintiff's claim for excessive force against "Det. One," recommended a written reprimand against that individual, and absolved "Det. Two," "Sgt. One," and "Lt. One" from wrongdoing regarding the use of excessive force. (*Id.*) The Court does not liberally construe this letter as any sort of Objection to the Report-Recommendation.

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 65 of 97

Pervu v. City of Oneonta, Not Reported in Fed. Supp. (2020)

2020 WL 1643392
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Melania PERVU and Nicolae Pervu, Plaintiffs,
v.
CITY OF ONEONTA, David Merzig, Defendants.

6:19-CV-00861 (MAD/TWD)
|
Signed 04/02/2020

**Attorneys and Law Firms**

MELANIA PERVU, NICOLAE PERVU, 26 Maple Street,
Oneonta, New York 13820, Plaintiff pro se.

OF COUNSEL: APRIL J. LAWS, ESQ., COREY A.
RUGGIERO, ESQ., JOHNSON & JOHNSON, LLC, 648
Plank Road, Suite 204, Clifton Park, New York 12020,
Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge:

**I. INTRODUCTION**

 **\*1** On June 17, 2019, *pro se* plaintiffs Melania and
Nicolae Pervu ("Plaintiffs") commenced this action against
Defendants David Merzig and the City of Oneonta
("Defendants"). *See* Dkt. No. 1 at 1. In their complaint,
Plaintiffs' only remotely cognizable allegation claimed
that Defendants had falsely classified Plaintiffs' apartment
building, located at 195 Main Street, Oneonta, New York
13820, as uninhabitable. *See* Dkt. No. 1 at 3. However, in
their response to Defendants' motion to dismiss, Plaintiffs
asserted a litany of additional claims, despite not seeking to
amend their complaint. These claims include a 42 U.S.C.
§ 1983 violation for discrimination, defamation, perjury, false
statements, witness tampering, and "a very clear case of
judicial misconduct" during state court proceedings initiated
by Defendants. *See* Dkt. No. 18 at 1-2.

Currently before the Court is Defendants' motion to dismiss
pursuant to Federal Rules of Procedure 8(a) and 12(b)(6). *See
generally* Dkt. No. 16-1.

**II. BACKGROUND**

Plaintiffs have owned the property formerly known as the
Oneonta Hotel since May 22, 2015 (the "Property"), and,
until February 2019, ran it as an apartment building for low-
income [1] residents. *See* Dkt. No. 1 at 3; Dkt. No 16-1 at
11. The building did not have a Certificate of Compliance, a
prerequisite for rental occupancy, when Plaintiffs purchased
it, as it was in some state of disrepair. *See* Dkt. No. 16-1
at 7. Plaintiffs failed to remedy the violations preventing
them from obtaining this certificate, and on January 5, 2017,
the City of Oneonta's Board of Public Service (the "Board")
deemed the building to be "unsafe" and "order[ed] immediate
repair." Dkt. No. 16-1 at 8. The Board also resolved that
if Plaintiffs failed to make the repairs within thirty days, it
would issue an order to vacate the Property. Dkt. No. 16-1 at 8.

On September 14, 2017, more than nine months after the
Board's resolutions, the City's Code Enforcement Officer
found multiple violations, including the following: "extensive
water damage (including active water leaks), inoperable
carbon monoxide detectors, inoperable and/or missing smoke
detectors, incorrectly located smoke and/or carbon dioxide
detectors and inoperable lights and/or emergency signage."
Dkt. No. 16-1 at 9. The Code Enforcement Officer notified
the Board, and on November 2, 2017, the Board moved to
order that the building be vacated, but agreed not to take
further action until after April 30, 2018, "so as to allow the
low-income tenants to find substitute housing" and to give
Plaintiffs one last chance to remedy the violations. Dkt. No.
16-1 at 9. On March 8, 2018, the City of Oneonta circulated a
notice to tenants and funding agencies declaring the building
"to be unsafe for occupancy, due to significant violations of
the New York State Housing and Building Code" and advising
tenants to vacate the building "[u]nless the landlord brings
the property into full building code compliance by April 30,
2018[.]" Dkt. No. 1 at 5.

 **\*2** On June 26, 2018, after Plaintiffs had continued to
rent out the Property in violation of the Board's May 15,
2018 order to vacate, Defendants filed a petition in Otsego
County Supreme Court pursuant to Sections 302, 303, and
309 of the New York State Multiple Dwelling Law. *See* Dkt.
No. 16-1 at 10. On August 14, 2018, Plaintiffs answered
the petition and brought a counterclaim against the City of
Oneonta for violation of their due process rights under the
Fifth and Fourteenth Amendments. *See* Dkt. No. 16-1 at 10.

On September 7, 2018, the Otsego County Supreme Court held an evidentiary hearing, and three days later issued an order requiring Plaintiffs to remedy all code violations by January 11, 2019, or "immediately be in Contempt of the Court." Dkt. No. 16-1 at 10.

However, after another inspection on January 15, 2019, the City of Oneonta found "numerous remaining Code violations such as extensive water damage and active leaks and inoperable or missing smoke detectors, as well as numerous other health and safety violations." Dkt. No. 16-1 at 11. Accordingly, in a February 5, 2019 hearing, the state court ordered all tenants to vacate the building by February 7, 2019. *See* Dkt. No. 16-1 at 11.

According to Plaintiffs, "the city Oneonta attorney David Merzig and his wife Margie Merzig, Chair of the City Board, decided to act against me, my family, and my tenants." Dkt. No. 1 at 3. Indeed, Plaintiffs allege that "[t]he city administration represented by David Merzig us[ed] false statements, weaponized the code enforcement office and using false pretenses, asked the court to evict by force my tenants[.]" Dkt. No. 1 at 3. Plaintiffs further allege that these acts, among others mentioned in the complaint, constitute "discrimination against [their] [immigrant] status, selective enforcement, defamation, and slander" and thus violate 🚩 Section 1983. Dkt. No. 18 at 1. Specifically, Plaintiffs claim that Defendants used misleading photographs as evidence to obtain the warrant of eviction, and that their purpose "has been nothing but discriminatory, as their real interest was not [t]o work with us but to do everything in order to shut our property down." *Id.* at 4.

In their motion to dismiss, Defendants argue that, even under the more liberal pleading standard granted to *pro se* plaintiffs, the complaint fails to allege any cognizable injury under 🚩 Section 1983. *See* Dkt. No. 16-1 at 12-13. Further, Defendants assert that Plaintiffs' complaint fails to include any factual statements or claims that would satisfy Rule 8's pleading standard. *See id.* at 14 (quoting Fed. R. Civ. P. 8(a) (2)). Regardless of the complaint's sufficiency, Defendants also argue that Plaintiffs claims are barred by collateral estoppel because "Plaintiffs have a full and fair opportunity to litigate their counterclaims in the state court proceeding." Dkt. No. 19 at 11. In short, Defendants claim that "Plaintiffs are merely unhappy with the rulings by the state court judge [who] direct[ed] Plaintiffs to either repair the building or vacate the tenants." Dkt. No. 16-1 at 15.

Currently before the Court is Defendants' motion to dismiss.

## III. DISCUSSION

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See* 🚩 *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See* 🚩 *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See* 🚩 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

**\*3** Furthermore, "[w]hen deciding a motion to dismiss, the [c]ourt's review is ordinarily limited to 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.' " 🚩 *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 379 (S.D.N.Y. 2013) (quoting 🚩 *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) and citing *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). Accordingly, "[w]hen matters outside the pleadings are presented [in support of or] in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment ... and afford all parties the opportunity to present supporting material." 🚩 *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (alteration and internal quotation marks omitted). A court may, under appropriate circumstances, "consider material outside of the pleadings on a motion to dismiss." 🚩 *Chamberlain*, 986 F. Supp. 2d at 379 (citing 🚩 *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)). If, for example, the record clearly demonstrates "that no dispute exists regarding the authenticity or accuracy of the document[s]," *Faulkner*, 463 F.3d at 134, then "a court may consider documents upon the terms and effect of which the complaint relies heavily—that is, 'integral' documents —without converting a motion to dismiss into a summary

Pervu v. City of Oneonta, Not Reported in Fed. Supp. (2020)

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 67 of 97

judgment motion," 🚩 *Chamberlain*, 986 F. Supp. 2d at 379 (citing 🚩 *Chambers*, 282 F.3d at 153).

**B. Abstention Under** 🔲 *Younger v. Harris*, **401 U.S. 37 (1971)**

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." 🚩 *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). In *Younger*, the Supreme Court recognized a limited exception to this general rule, holding that federal courts should abstain from exercising jurisdiction over suits to enjoin pending state criminal proceedings, absent a showing of bad faith, harassment, or a patently invalid state statute. *See* 🚩 *Younger v. Harris*, 401 U.S. 37, 53-54 (1971) (citation omitted).

*Younger* is not based on an Article III requirement, but instead is a "prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." 🚩 *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted). The rationale behind *Younger* was set forth by the Second Circuit in *Spargo*:

> "Our Federalism" in its ideal form, as the Supreme Court explained in *Younger*, strives towards "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." In recognition of this balance of interests, *Younger* generally prohibits courts from "taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings" so as to avoid unnecessary friction. Giving states "the first opportunity ... to correct their own mistakes" when there is an ongoing state proceeding serves the vital purpose of "reaffirm[ing] the competence of the state courts," and acknowledging the dignity of states as co-equal sovereigns in our federal system.

🚩 *Spargo*, 351 F.3d at 75 (internal quotations and citations omitted).

Although *Younger* itself dealt only with a pending criminal proceeding, the "*Younger* abstention has been extended to civil proceedings, ... and state administrative proceedings[.]" 🚩 *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir. 1990) (internal citations omitted). As noted by the Sixth Circuit, "*Younger* cases generally have a common procedural posture." 🚩 *Devlin v. Kalm*, 594 F.3d 893, 894 (6th Cir. 2010). "In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings." 🚩 *Id.* at 894-95 (quoting 🚩 *Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28, 30 (6th Cir. 1984)); *see e.g.*, 🚩 *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10-11 (1987) (federal plaintiff seeking to enjoin state plaintiff from enforcing a judgment against him); 🚩 *Moore v. Sims*, 442 U.S. 415, 423 (1979) (federal plaintiffs seeking to enjoin state proceedings against them for child abuse).

**\*4** To determine whether abstention is appropriate under *Younger*, district courts must conduct a three-pronged inquiry: "[a]bstention is mandatory where: (1) 'there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff has an avenue open for review of constitutional claims in the state court.' " 🚩 *Glatzer v. Barone*, 394 Fed. Appx. 763, 764 (2d Cir. 2010) (quoting *Liberty Mutual Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009)). The Supreme Court, however, has stressed that "[c]ircumstances fitting within the *Younger* doctrine ... are 'exceptional' " and include only " 'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.' " 🚩 *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quoting 🚩 *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68 (1989)).

Furthermore, Second Circuit has recently emphasized that "[c]ivil contempt orders and orders requiring the posting of bonds on appeal fall into" *Younger*'s third category, *i.e.*, "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." 🚩 *Disability Rights New York v. New York*, 916 F.3d 129,

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 68 of 97

Pervu v. City of Oneonta, Not Reported in Fed. Supp. (2020)

133 (2d Cir. 2019) (citing *NOPSI v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). Indeed, the Supreme Court has found that "[t]he contempt power lies at the core of the administration of a State's judicial system," and "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory[,]" and, accordingly, that *Younger* requires abstention where federal adjudication would interfere with such authority.

*Juidice v. Vail*, 430 U.S. 327, 335, 336 n.12 (1977);

*see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (finding that *Younger* abstention is appropriate when pending state court proceedings involve enforcing orders and judgments, as federal courts must exercise proper "respect for the ability of state courts to resolve federal questions presented in state-court litigation"); *Dudla v. P.M. Veglio LLC*, No. 1:13-CV-0333, 2016 WL 1068120, *7 (N.D.N.Y. Mar. 15, 2016) (quoting *Moore v. Sims*, 442 U.S. 415, 423 (1979)) (noting that "the 'presence of such other vital concerns as enforcement of contempt proceedings' " may justify abstention under *Younger)*.

Similarly, "the 'vindication of important state policies such as safeguarding the fiscal integrity of [public assistance] programs' " may also put a state court proceeding into Younger's third category. *Dudla v. P.M. Veglio LLC*, No. 1:13-CV-0333, 2016 WL 1068120, *7 (N.D.N.Y. Mar. 15, 2016) (quoting *Moore v. Sims*, 442 U.S. 415, 423 (1979)). Furthermore, "[i]n the context of applying the *Younger* abstention doctrine, courts have found that 'the State has an important interest in regulating zoning and land use.' " *Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 558 (E.D.N.Y. 2014) (quoting *Thomas v. Venditto*, 925 F. Supp. 2d 352, 357 (E.D.N.Y. 2013)) (other citation omitted).

### 1. First Prong

Under *Younger*'s first prong, "[n]ot only must state proceedings be pending[,] ... the proceedings must have been initiated 'before any proceedings of substance on the merits have taken place in the federal court.' " *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009) (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984)). Additionally, "a party ... must exhaust his state appellate remedies before seeking relief in the District Court[.]" *Glatzer v. Barone*, 394 Fed. Appx. 763, 765 (2d Cir. 2010) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 610 (1975)).

**\*5** In the present matter, Plaintiffs appealed Judge Lambert's October 22, 2019, decision on November 18, 2019, and their case before the Otsego County Supreme Court remains pending. As "[a] state action is considered 'pending' for *Younger* purposes through the completion of the state appeals process," to the extent that the proceedings in the present matter remain pending before the state supreme court, they easily qualify as "ongoing" under *Younger. See Choi v. Kim*, 96-cv-2086, 1997 WL 722708, *5 (E.D.N.Y. Sept. 25, 1997) *aff'd*, 166 F.3d 1201 (2d Cir. 1998) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 594 (1975)); *see also Glatzer v. Barone*, 394 Fed. Appx. 763, 765 (2d Cir. 2010) (finding that *Younger* abstention was warranted when the plaintiff's "state appellate proceedings were still pending").

Both parties' submissions indicate that their dispute continues before the state court. While the state court issued a decision on the order to show cause on March 12, 2020, granting the application and finding Plaintiffs in contempt, Plaintiff still has an appeal pending regarding the state court's earlier decision and the supreme court matter remains open. Thus, as Plaintiffs face pending proceedings before the state court, those proceedings would qualify as ongoing under *Younger* regardless of whether Plaintiffs decide to file an appeal of the March 12, 2020 decision. *See Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 367 (E.D.N.Y. 2018) (holding that "to the extent there is a pending action against [p]laintiffs in the Village Court, *Younger*'s first requirement is satisfied").

### 2. Second Prong

*Younger*'s second prong, requiring that "an important state interest is implicated in that proceeding[,]" has also been met in the present matter. *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). "[D]etermining whether a state interest is 'important' turns not on the narrow outcome of the particular state court proceeding at hand, but rather on the importance of the generic proceedings to the state." *Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 367 (E.D.N.Y. 2018) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989); *Grieve*, 269 F.3d at 152).

Pervu v. City of Oneonta, Not Reported in Fed. Supp. (2020)

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 69 of 97

"It has long been held that issues involving public welfare and safety fall squarely within a state's plenary police powers and therefore implicate important state interests." *Homere*, 322 F. Supp. 3d at 367 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). "In the context of applying the *Younger* abstention doctrine, courts have found that 'the State has an important interest in regulating zoning and land use.' " *Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 558 (E.D.N.Y. 2014) (quoting *Thomas v. Venditto*, 925 F. Supp. 2d 352, 357 (E.D.N.Y. 2013)) (citation omitted); *see also Novie v. Vill. of Montebello*, No. 10-CV-9436 CS, 2012 WL 3542222, *12 (S.D.N.Y. Aug. 16, 2012) (collecting cases) (finding that a "state proceeding implicates an important state interest insofar as it concerns a town land use regulation akin to a zoning requirement"). "[A] local building code is a policy manifestation of that uniquely local interest in public health, wellness, safety, and comfort[;] ... any enforcement proceedings against [p]laintiffs initiated for violations of the [v]illage building code satisfy *Younger*'s second requirement." *Homere*, 322 F. Supp. 3d at 368.

The genesis of the present matter lies in Plaintiffs' alleged failure to comply with the City of Oneonta's housing and building codes, as well as the New York State Multiple Dwelling Law. *See* Dkt. No. 16-1 at 10. In its October 22, 2019, decision and order, the Supreme Court found that Plaintiffs' "proof failed to sufficiently rebut the evidence" of "significant outstanding violations" of those codes. In fact, that court specifically found that "[t]hese violations were serious and involve the health and safety of the public." Thus, "[i]t is clear the state interests implicated in the State action, to wit, the ability of the Town and the State to regulate zoning and land use, as well as the interest in protecting the health of its citizens and the environment, are important enough to warrant abstention." *Donangelo, Inc. v. Town of Northumberland*, No. 03 CV 934, 2005 WL 681494, *2 (N.D.N.Y. Mar. 24, 2005) (collecting cases).

**\*6** Lastly, the state court action, in addition to enforcing the important state interests discussed above, "seeks to sanction the Plaintiff for an allegedly wrongful act of violating a court order" and thus "involves an order uniquely in furtherance of the state court's ability to perform its judicial functions." *Jureli*, 53 F. Supp. 3d at 560. Accordingly, the state court's order to show cause "clearly constitutes a civil enforcement proceeding" that falls under *Younger*'s second category. *Id.*; *see also Juidice v. Vail*, 430 U.S. 327, 335 (1977) (finding that enforcing a state court's contempt process "is surely an

important interest" under *Younger* because that process is how the state "vindicates the regular operation of its judicial system"); *Dosiak v. Town of Brookhaven*, No. CV 16-6658, 2017 WL 7048912, *7 (E.D.N.Y. Nov. 27, 2017) ("Plaintiffs' claim [challenging a state court's order to show cause] here clearly implicate both civil enforcement proceedings and New York State's interest in enforcing the orders and judgments of its courts....*Younger* abstention is therefore appropriate").

Accordingly, the Court finds that *Younger*'s second prong has been satisfied.

### 3. Third Prong

*Younger*'s third and final prong requires that "the state proceeding afford[ ] the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198 (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). In the present matter, nothing in the record suggests that the state supreme court or appellate division is unable to adequately adjudicate Plaintiffs' federal constitutional claims. *See Homere*, 322 F. Supp. 3d at 368. In fact, Plaintiffs asserted their federal claims during the state court proceeding. Specifically, in their answer in the state court proceeding, Plaintiffs brought counter claims alleging violations of their due process rights under the Fifth and Fourteenth Amendments.

Accordingly, the Court finds that the third prong under *Younger* has been satisfied. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (finding that "respect for the ability of state courts to resolve federal questions presented in state-court litigation" mandates *Younger* abstention where pending State proceedings involve enforcing orders and judgments); *Spargo*, 351 F.3d at 77 ("[I]n conducting the Younger inquiry, considerations of comity 'preclude[ ] any presumption that the state courts will not safeguard federal constitutional rights' ") (quoting *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)).

### 4. Bad Faith Exceptions

Even when a case has met all three of *Younger*'s prongs, "federal relief is obtainable[,] ... where the there is a showing of bad faith or harassment in bringing the or conducting the state proceeding." *Wandyful Stadium, Inc. v. Town of*

Pervu v. City of Oneonta, Not Reported in Fed. Supp. (2020)

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 70 of 97

*Hempstead*, 959 F. Supp. 585, 591 (E.D.N.Y. 1997) (citing *Younger*, 401 U.S. at 50). "[F]or such a showing to be made, generally 'the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome.' " *Homere*, 322 F. Supp. 3d at 368 (quoting *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994)) (citation omitted); *see also* *Kugler*, 421 U.S. at 126 n. 6 (noting that bad faith under *Younger* "generally means a prosecution has been brought without a reasonable expectation of obtaining a valid conviction"). Furthermore, "[a] pattern of harassment both before and after institution of the state prosecution would be probative of the animus that attended the decision to prosecute." *Colonial First Properties, LLC v. Henrico Cty. Virginia*, 166 F. Supp. 2d 1070, 1087 n.12 (E.D. Va. 2001).

In the present matter, Plaintiffs have failed to show that Defendants brought the state proceedings in bad faith, *i.e.*, with "no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994)). Plaintiffs assert that Defendants acted in bad faith prior to and throughout the state court proceedings. *See* Dkt. No. 1 at 3 (stating that Defendants "never recognized [Plaintiffs'] arduous work" to improve the Property and used "false statements, weaponized the code enforcement office and us[ed] false pretenses" to evict their tenants). However, no facts in the record suggest that Defendants had "no reasonable expectation of obtaining a favorable outcome" in the state proceedings. *Cullen*, 18 F.3d at 103. Nor does the record contain sufficient evidence to find that Defendants harassed Plaintiffs in bringing the proceedings. *See* *Colonial First Properties*, 166 F. Supp. 2d at 1089 (finding that the plaintiffs failed to establish harassment in a police investigation showing no signs of "malice, use of illegal arrest methods, high numbers of repeated arrests and raids[,] or evidence of a concerted effort to put [the plaintiffs] out of business").

**\*7** Plaintiffs appear to deny all code violations brought by Defendants. *See* Dkt. No. 18 at 4 (stating that a January, 2019, inspection had found a "[s]mall number of violations — cosmetic ones, no hazardous [ones] were found, and corrections were done with pictures sent to my lawyers ... [who] checked everything"). Plaintiffs further allege that Defendants offered misleading photographs to establish the code violations in the state court. *See id.* ("the code enforcement officer ... [was] looking only in storage areas, places that are not for living, taking pictures to use against

us"). Lastly, Plaintiffs also attack the state court judgment for being "jurisdictionally defective — thus ... not just void-able [sic], but Void, as in [ ]never existed, as in [ ]zero" and for being "a pure punishment order ... meant from the beginning as a punishment order." However, these "allegations [of bad faith and harassment] are too conclusory and barebones to serve as the factual predicate for a plausible finding of bad faith." *DeMartino*, 167 F. Supp. 3d at 355-56. Furthermore, Plaintiffs brought a number of the same claims during the state court proceedings, which the state court rejected.

Accordingly, the Court finds that Plaintiffs have failed to demonstrate that the bad faith exception to *Younger* abstention should apply. Therefore, the Court "must abstain from exercising subject matter jurisdiction over" these claims. *See* *Wilson v. Emond*, 373 Fed. Appx. 98, 100 (2d Cir. 2010).

## C. Rule 12(b)(6)

Even assuming that this action was not barred by *Younger*, the complaint is nevertheless subject to dismissal.

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' ' " *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570. However, a complaint filed by *a pro se* litigant should not be dismissed without granting leave to amend at least once when "a liberal reading of the complaint gives any indication that a valid claim might be

stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991) (citation omitted).

Additionally, "in *a pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (citations omitted). The Second Circuit has directed that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

In the present matter, even affording Plaintiffs the special solicitude due to *pro se* litigants, the complaint fails to plausibly state any cause of action. In the "complaint," Plaintiffs complain that they are being charges fees by the City of Oneonta that they believe they have already paid and that David Merzig and Margie Merzig "continue to destroy [their] business by removing tenants." Dkt. No. 1 at 2. Further, they claim that federal agencies were instructed "by David Merzig to stop payment and remove tenants from [their] property." *Id.* Plaintiffs then mention the fact that they still have a case pending in Otsego County Supreme Court and that the lawyers that they had previously retained in the state court litigation have since withdrawn. *See id.* Nothing in the complaint even hints at what federal causes of action Plaintiffs are attempting to assert.

**\*8** Attached to the complaint are various exhibits that are likewise unhelpful. For example, the first exhibit is a letter Plaintiff Melania Pervu sent to the Attorney General of the United States asking for assistance with the issues underlying the state court litigation. *See* Dkt. No. 1 at 3. Also attached is a scheduling order from the Otsego County Supreme Court and the various March 8, 2018 eviction notices sent by the City of Oneonta Department of Law to both tenants and social services agencies. *See id.* at 4-9.

As Defendants correctly contend, Plaintiffs have failed to plead any plausible cause of action. Accordingly, the Court grants Defendants' motion to dismiss on this alternative ground.

## D. Leave to Amend

"While *pro se* plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile." *Hassan v. U.S. Dep't of Veteran Affairs*, 137 Fed. Appx. 418, 420 (2d Cir. 2005) (citing *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69–70 (2d Cir. 1998)). "Amendment of a complaint is futile where the proposed amended complaint would be unable to withstand a subsequent motion to dismiss." *Tatum v. Oberg*, No. 08 Civ. 1251, 2009 WL 5066812, \*2 (D. Conn. Dec. 18, 2009) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

In the present matter, there is no question that granting Plaintiffs leave to amend would be an exercise in futility. Any amended complaint, even if it were to plausibly allege claims under 42 U.S.C. § 1983, it would nevertheless be subject to dismissal under *Younger*. Accordingly, Plaintiffs' complaint is dismissed with prejudice.

## IV. CONCLUSION

After carefully the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' complaint is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

## IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1643392

## Footnotes

1    Information contained in the "Background" section of this Memorandum-Decision and Order that is not otherwise taken from Plaintiffs' complaint, is taken from the publicly available information from the ongoing litigation between the parties in Otsego County Supreme Court. *See* Index No. EF2018-503.

---

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 73 of 97

2018 WL 6727538
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Deshawn TYSON, Plaintiff,

v.

Patrick J. CLIFFORD, et al., Defendants.

CIVIL CASE NO. 3:18cv1600(JCH)
|
Signed 12/21/2018

**Attorneys and Law Firms**

Deshawn Tyson, Suffield, CT, pro se

**INITIAL REVIEW ORDER**

Janet C. Hall, United States District Judge

\*1 The plaintiff, Deshawn Tyson ("Tyson"), is confined at MacDougall-Walker Correctional Institution. He has filed a pro se civil rights action pursuant to section 1983 of title 42 of the United States Code against New Haven Superior Court Judge Patrick J. Clifford ("Judge Clifford") and Connecticut State's Attorney John P. Doyle, Jr. ("Attorney Doyle"). For the reasons set forth below, the Complaint is dismissed.

**I. STANDARD OF REVIEW**

Pursuant to section 1915A(b) of title 28 of the United States Code, the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Id. This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only " 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007) ). Although courts still have an obligation to interpret "a pro se complaint liberally," the Complaint must still include sufficient factual allegations to meet the standard of facial plausibility. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**II. FACTS**

Tyson states that he has been "wrong[ly] incarcerated" in a facility within the State of Connecticut Department of Correction since March 10, 2016. [1] See Compl. (Doc. No. 1) at 22. The State of Connecticut Judicial Branch website reflects that New Haven police officers arrested Tyson on March 10, 2016, and that the State of Connecticut has charged him in a criminal case filed in the Connecticut Superior Court for the Judicial District of New Haven with one count of sexual assault in the first degree, in violation of Conn. Gen. Stat. § 53a-70(a)(1), and one count of unlawful restraint in the first degree, in violation of Conn. Gen. Stat. § 53a-95. See State v. Tyson, Case No. NNH-CR16-0165313-T (Conn. Super. Ct. Mar. 10, 2016). [2] The case detail indicates that Tyson is represented by counsel and that a jury trial is scheduled for December 16, 2020. See id.

\*2 Tyson alleges that, on or about July 26, 2018, in the Connecticut Superior Court for the Judicial District of New Haven, Judge Clifford stated on the record that he had instructed Attorney Doyle to ignore or disregard any motions, memoranda, or affidavits filed by Tyson. See Compl. at 5 ¶ 1, 22. Judge Clifford has ruled against Tyson even when Attorney Doyle refused to oppose Tyson's motions. See id. at 17.

On or about August 22, 2018, Judge Clifford stated on the record that he had instructed Attorney Doyle to remain silent during a pretrial hearing and that Attorney Doyle agreed to do so. See id. at 5 ¶ 2. On or about September

12, 2018, Judge Clifford stated on the record that he had instructed Attorney Doyle to ignore or disregard Tyson's "Conditional Acceptance/Negotiable instrument/grievance" document. See id. at 5 ¶ 3. On that same date, Judge Clifford informed Tyson that he would not consider any motions that Tyson might file. See id. at 5 ¶ 4. Tyson generally asserts that Judge Clifford and Attorney Doyle have misapplied statutes and laws and have failed to provide him with "Discovery/Brady material." Id. at 6 ¶ 6, 17–18.

At one point during the criminal proceeding, Judge Clifford issued an order that Tyson could represent himself. See id. at 22. Judge Clifford subsequently attempted to appoint an attorney to represent Tyson even though the attorney had made threats against Tyson in the past. See id.

### III. DISCUSSION

Tyson alleges that the defendants violated his rights under the First, Fifth, Eighth, Ninth and Fourteenth Amendments as well as under ⚑ sections 241 and ⚑ 242 of title 18 of the United States Code. See id. at 17–18. Tyson seeks punitive, compensatory, nominal, and exemplary damages, as well as injunctive and declaratory relief. See id. at 6–7.

As a preliminary matter, the court notes that Tyson includes the following additional allegations in the Complaint. The "State of CT has declared me/plaintiff sovereign [f]rom itself, as establish[ed] by law, because I/plaintiff had/has no residency with the state and therefore plaintiff is not only a private man as opposed to a corporate fiction." See id. at 6 ¶ 7. Tyson asserts that he cannot be "named in any statutes" and has "a Reservation of Rights which was made known to all defendants." See id. at 6 ¶¶ 8–10. Tyson contends that, throughout his criminal case, "defendants [have] refuse[d] to adhere to the Supremacy Clause of the United States Supreme Court rulings." See id. at 6 ¶ 5. Tyson signs the Complaint as: "Secured Party, Sui Juris, one of the sovereign people, a private man on the land, non-combatant, an American by birth, and child of the living God, Grantor, Secured Party/Creditor and principal of which 'Rights' existed long antecedent to the Organization of the State and Trustee." Id. at 33. Attached to the Complaint is a document titled "Memorandum of Law with points and Authorities on 'sovereignty' of the people In Relationship to 'Government' of the several Compact De-facto State and the Federal Government." Id. at 25–32.

This language and the title of the attachment to the Complaint suggest that Tyson considers himself a "sovereign citizen." In United States v. Ulloa, 511 F. App'x. 105 (2d Cir. 2013), the Second Circuit described, "sovereign citizens," as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." Id. at 107 n.1.

**\*3** Adherents of such claims or defenses "believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." ⚑ Gravatt v. United States, 100 Fed. Cl. 279, 282 (2011) (citations omitted). Federal courts across the country, however, have routinely refused to credit arguments based on a redemption, sovereign citizen, or other similar theory because the arguments are often frivolous, irrational and unintelligible. See ⚑ United States v. Sterling, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting that courts have summarily rejected sovereign citizens' legal theories as frivolous); ⚑ United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a sovereign citizen, a secured-party creditor, or a flesh-and-blood human being, that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented.") (internal quotation marks omitted); Charlotte v. Hanson, 433 F. App'x. 660, 661 (10th Cir. 2011) (rejecting the sovereign citizen theory as having no conceivable validity in American law) (citation omitted); ⚑ United States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992) (holding that "sovereign citizen" argument was "completely without merit" and "patently frivolous"); Akbar v. Clarke, No. 1:15-CV-338(AJT/TCB), 2016 WL 4150456, at \*7 (E.D. Va. Aug. 1, 2016) (noting that sovereign citizen claims are "wholly frivolous"); Berman v. Stephens, No. 4:14-CV-860-A, 2015 WL 3622694, at \*2 (N.D. Tex. June 10, 2015) (finding that a prisoner's "reliance on the UCC or a so-called 'sovereign citizen' theory that he is exempt from prosecution and beyond the jurisdiction of the state or federal courts is frivolous") (collecting cases); Gaskins v. South Carolina, C/A No. 2:15-cv-2589 DCN, 2015 WL 6464440, at \*4 (D.S.C. Oct. 26, 2015) (affirming recommended ruling dismissing as baseless prisoner's claim, premised upon "sovereign citizen" theory, that the state court lacked jurisdiction over her and that her state conviction was therefore void); Paul v. New York, No. 13-CV-5047 (SJF)(AKT), 2013 WL 5973138, at \*3 (E.D.N.Y. Nov. 5, 2013) (dismissing complaint as factually and legally frivolous

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 75 of 97

because "[t]he conspiracy and legal revisionist theories of sovereign citizens are not established law in this court or anywhere in this country's valid legal system") (internal quotation marks and citation omitted).

It is apparent that Tyson is claiming that, as a "sovereign citizen," he is not subject to the jurisdiction of the State of Connecticut or the Connecticut Superior Court and that any criminal charges against him must be dismissed. To the extent that he challenges the jurisdiction of the State of Connecticut, its courts, or Judge Clifford, or the authority of the State, through Attorney Doyle, to prosecute him for a criminal offense, based on a "sovereign citizen" theory, the court concludes that the claim lacks an arguable legal basis. Thus, that claim is dismissed. See 28 U.S.C. § 1915A(b)(1). To the extent that Tyson is challenging the conduct of the defendants on other grounds, the court addresses those claims below.

A. Requests for Injunctive and Declaratory Relief

Tyson seeks a declaration that the defendants violated his constitutional and federal protected rights and an injunction directing the defendants to cease and desist from making further contact with him or harassing him in violation of his rights. See Compl. at 7. He includes, an "Order to Show Cause for an Preliminary Injunction and a Temporary Restraining Order," as an attachment to the Complaint, which seeks a court order that the defendants be enjoined from various types of conduct in connection with his state criminal case. See id. at 19–20.

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that a federal court, except in cases where an injunction is necessary to prevent immediate and irreparable injury to a defendant, should not enjoin a pending state court criminal proceeding. Id. at 45. The doctrine of federal abstention, as outlined in Younger, "is grounded in principles of comity and federalism and is premised on the belief that a state proceeding provides a sufficient forum for federal constitutional claims." Schlagler v. Phillips, 166 F.3d 439, 442 (2d Cir. 1999). It "is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted).

In Sprint Comm'ns, Inc. v. Jacobs, 571 U.S. 69 (2013), the Supreme Court clarified that courts should abstain under Younger only in three "exceptional circumstances": (1) pending state criminal proceedings; (2) civil enforcement proceedings that are "akin to criminal prosecutions;" and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." See id. at 72. The court may address the applicability of the Younger abstention doctrine sua sponte. See Catlin v. Ambach, 820 F.2d 588, 591 (2d Cir. 1987) (citing Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976) ). The Younger doctrine is as applicable to suits for declaratory relief as it is to those for injunctive relief. See Samuels v. Mackell, 401 U.S. 66, 73 (1971) (holding Younger's policy would "be frustrated as much by a declaratory judgment as it would be by an injunction").

*4 It is clear from the Complaint and the State of Connecticut Judicial Branch website, that Tyson's state criminal proceeding stemming from his arrest on March 10, 2016 is ongoing. See State v. Tyson, Case No. NNH-CR16-0165313-T (Conn. Super. Ct. Nov. 30, 2018). If the court were to grant Tyson's request for a court order directing the defendants to dismiss the criminal charges against Tyson, or were to declare that the defendants had violated Tyson's federal constitutional rights in presiding over and prosecuting Tyson's state criminal case, such Orders would interfere with Tyson's pending state criminal proceeding.

There are two exceptions to the Younger abstention doctrine: bad faith and extraordinary circumstances. See Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 197–198 (2d Cir. 2002). Abstention may be inappropriate if "a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." Id. at 199 (internal quotation marks and citation omitted). This exception focuses on the subjective intent or motivation of the state prosecutor who initiates the proceeding. See id. ("A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception.") (citation omitted).

The Second Circuit has described the extraordinary circumstances necessary to invoke the second exception to

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 76 of 97

abstention under Younger as circumstances that "render the state court incapable of fairly and fully adjudicating the federal issues before it" and "creat[e] an extraordinarily pressing need for immediate federal equitable relief." Id. at 201 (citation omitted). Application of the extraordinary circumstances exception requires "two predicates ... (1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." Id. (citation omitted) (emphasis in original).

Tyson has alleged no facts to suggest that the prosecutor initiated the criminal action against him in bad faith or with "no reasonable expectation of obtaining a favorable outcome." Id. at 199 (internal quotation marks and citation omitted). Nor has Tyson alleged the absence of a remedy available in state court to challenge any alleged constitutional violations associated with his criminal prosecution. Tyson is not precluded from challenging any subsequent conviction or sentence on appeal to the Connecticut Appellate and Supreme Courts, filing a habeas petition in the Connecticut Superior Court, and following that, a habeas petition in federal court. Furthermore, Tyson has not alleged that he will suffer imminent harm if this court does not intervene in the ongoing prosecution. See Davis v. Lansing, 851 F.2d 72, 77 (2d Cir. 1988) (holding the burden of defending criminal prosecution is insufficient, without more, to constitute irreparable harm); Saunders v. Flanagan, 62 F. Supp. 2d 629, 635 (D. Conn. 1999) ("That the plaintiff will be forced to defend against a charge of murder in state court does not constitute the extraordinary circumstances resulting in irreparable harm warranting this court to refuse to apply the doctrine of Younger abstention, and no other specific basis of 'extraordinary circumstances' is asserted.").

**\*5** Because there are no facts alleged to plausibly suggest that either of the narrow exceptions to the Younger abstention doctrine have been met, the court abstains from exercising jurisdiction over the requests for injunctive and declaratory relief seeking intervention in Tyson's ongoing state criminal case. The court therefore dismisses those requests. See 28 U.S.C. § 1915A(b)(1).

### B. Request for Money Damages

Tyson seeks $ 1,000,000 in punitive damages from each defendant as well as damages for harassment, mental anguish, anxiety and annoyance, nominal damages and exemplary

damages. See Compl. at 6. The court declines to stay this action pending resolution of the state criminal proceeding because Tyson's claims for damages lack arguable legal merit.

### 1. Judge Clifford

Judges are immune from suit, not just from the ultimate assessment of damages. See Mireles v. Waco, 502 U.S. 9, 11 (1991). This immunity applies even to claims that a judge acted in bad faith, erroneously, maliciously or "in excess of his authority." Id. at 13. "[O]nce a court determines that an official was functioning in a core judicial or prosecutorial capacity, absolute immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." DiBlasio v. Novello, 344 F.3d 292, 297 (2d Cir. 2003) (citations and internal quotation marks omitted). There are two situations in which judicial immunity may be overcome. A judge is not immune from suit for actions taken outside his judicial capacity or for actions that are judicial in nature but taken in the absence of all jurisdiction. See Mireles, 502 U.S. at 11 (citations omitted).

Tyson alleges that, at times during the pendency of his state criminal case, Judge Clifford has instructed Attorney Doyle not to speak during a pretrial hearing, has either declined to rule on his motions or ruled against him on matters and motions, has disregarded his Acceptance/Negotiable Instrument/Grievance document, has misapplied statutes, and has refused to provide or disclose discovery/exculpatory material to him. See Compl. at 5, 17–18. Tyson complains that, at one point, Judge Clifford permitted him to proceed pro se, but would not rule on his motions. See id. at 22. Tyson suggests that more recently, Judge Clifford has attempted to appoint counsel for him, even though he did not ask for counsel. See id. Tyson claims that the attorney Judge Clifford attempted to appoint for him had threatened Tyson in the past. See id.

Appointing counsel for a party and determining whether to rule on motions, ruling on motions, including motions related to the disclosure of information or evidence, issuing orders regarding documents that have been filed in a case, directing speakers during proceedings, and interpreting and applying statutes constitute judicial acts within the jurisdiction of a state court judge. See Sadler v. Supreme Court of Connecticut,

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 77 of 97

167 F. App'x 257, 259 (2d Cir. 2006) ("Superior Court Judge White is immune from liability under 📁 § 1983 for damages and injunctive relief. Judge White performed a judicial action within his jurisdiction when he determined that Sadler's counsel ... should not be replaced.") (citation omitted); Ashmore v. Prus, No. 13-CV-2796 (JG), 2013 WL 3149458, at *3 (E.D.N.Y. June 19, 2013) ("Making evidentiary rulings is a paradigmatic judicial function."); Book v. Tobin, No. 3:04CV442 (JBA), 2005 WL 1981803, at *2 (D. Conn. Aug. 16, 2005) ("Quintessential judicial acts include presiding over trial proceedings, making evidentiary rulings, issuing jury instructions, and deciding motions, and remain protected by judicial immunity even if the decisions are erroneous, untimely, and in excess of the judge's authority."). There are no allegations that Judge Clifford engaged in actions that were not judicial in nature or were taken in the absence of all jurisdiction. Thus, Judge Clifford is absolutely immune from suit to the extent that Tyson seeks money damages, and those claims against Judge Clifford are dismissed. See 28 U.S.C. § 1915A(b)(2).

### 2. Attorney Doyle

**\*6** Tyson alleges that Attorney Doyle is the State's Attorney prosecuting his criminal case in the Connecticut Superior Court for the Judicial District of New Haven. See Compl. at 3, 5. Tyson asserts that Attorney Doyle did not speak during a pretrial hearing, did not respond to motions that he filed in the case, ignored his Acceptance/Negotiable Instrument/Grievance document, misapplied statutes, and refused to disclose discovery/exculpatory material to him. See id. at 5 ¶ 2, 17–18. Tyson contends that, by failing to respond to his motions, Attorney Doyle has consented to the relief sought in those motions, including a motion to dismiss the charges against him. See id. at 20.

A prosecutor is protected by absolute immunity from a 📁 section 1983 action "for virtually all acts, regardless of motivation, associated with his function as an advocate." 📁 Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994). In 📁 Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court held that a state prosecutor was absolutely immune from a civil suit to recover damages under 📁 section 1983 because the prosecutor's conduct "in initiating a prosecution and presenting the State's case" were "intimately associated with the judicial phase of the criminal process." 📁 Id. at 430–

31. If a prosecutor acts in an investigative rather than an adversarial capacity, he or she is not entitled to absolute immunity. See 📁 Kalina v. Fletcher, 522 U.S. 118, 125–27 (1997) (holding that prosecutor was not protected by absolute immunity because she was acting as an investigator when she signed a sworn affidavit attesting to the facts supporting an arrest warrant).

Tyson's allegations against Attorney Doyle pertain to his role in prosecuting the criminal case against Tyson. Decisions involving whether to respond to a motion, to argue a matter in a pretrial hearing, or to disclose evidence to a defendant are all part of the preparation of a case for trial. See Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) ("It is by now well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution' 'is immune from a civil suit for damages under 📁 § 1983.' ") (quoting 📁 Imbler, 424 U.S. at 410, 431); 📁 Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1998) ("A prosecutor enjoys absolute immunity for acts taken in initiating a prosecution and in presenting the State's case, whether at a trial, a preliminary hearing, or a bail hearing.")(internal citations and quotation marks omitted); 📁 Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (explaining that prosecutors are "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged") (citation omitted). Thus, Attorney Doyle is immune from this suit.

### ORDERS

The court enters the following Orders:

**(1)** To the extent that Tyson challenges, based on a "sovereign citizen" theory, the jurisdiction of the State of Connecticut to prosecute him for a criminal offense, or the authority of any defendant to be involved in his prosecution, the court concludes that the claim lacks an arguable legal basis and is **DISMISSED**. See 28 U.S.C. § 1915A(b)(1). The claims against Judge Clifford and Attorney Doyle in their individual capacities for money damages are **DISMISSED** on the ground that they are entitled to absolute immunity. See 28 U.S.C. § 1915A(b)(2). The court concludes that it must abstain from exercising jurisdiction over the requests for injunctive and declaratory relief seeking the court's

**Tyson v. Clifford, Not Reported in Fed. Supp. (2018)**

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 78 of 97

intervention in Tyson's ongoing state criminal case and **DISMISSES** those requests. <u>See</u> 28 U.S.C. § 1915A(b)(1).

**\*7 (2)** The Clerk is directed to enter judgment for the defendants and close this case. Any appeal from the Ruling dismissing the Complaint would not be taken in good faith. <u>See</u> 🚩 28 U.S.C. § 1915(a)(3).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 6727538

## Footnotes

1    The State of Connecticut Department of Correction's website indicates, however, that Tyson is currently serving a nine-year sentence, imposed on January 25, 2017, for a violation of probation. Information regarding Tyson's current confinement may be found on the State of Connecticut Department of Correction's website under Inmate Search using his CT DOC Inmate Number 253494. <u>See</u> http://portal.ct.gov/DOC.

2    Information regarding this case may be found on the State of Connecticut's Judicial Branch website at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Pending Case – Search by Defendant – using plaintiff's last name and first initial of his first name - Tyson, D. (Last visited on December 19, 2018). The court notes that Tyson has filed another federal lawsuit against the victim of the alleged offenses for which he was arrested on March 10, 2016, as well as the police officers who arrested him. <u>See</u> <u>Tyson v. Doe, et al.</u>, Case No. 3:17cv731(JCH). The court has stayed that action pending resolution of Tyson's state criminal case. <u>See</u> <u>id.</u> (Ruling on Mot. to Intervene or Stay Discovery, Doc. No. 133).

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1965631
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Timothy ROBINSON, Petitioner,
v.
Michael SPOSATO, Sheriff of
Nassau County, Respondent.

No. CV–11–0191 (SJF).
|
May 29, 2012.

**Attorneys and Law Firms**

Timothy Robinson, East Meadow, NY, pro se.

Paul M. Tarr, Office Of The Attorney General, New York, NY, Jason Richards, Mineola, NY, for Respondent.

**OPINION & ORDER**

FEUERSTEIN, District Judge.

**\*1** On January 7, 2011, petitioner Timothy Robinson ("Petitioner") filed a petition in this Court seeking a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254 challenging his pretrial detention at the Nassau County Correctional Center ("NCCC") following his arrest on September 30, 2010 on larceny charges. The Nassau County District Attorney's Office ("Respondent"), on behalf of Michael Sposato, Sheriff of Nassau County, now moves to dismiss the petition. Petitioner has not opposed the motion. For the reasons set forth herein, respondent's motion is granted and the proceeding is dismissed.

**I. BACKGROUND**

In his petition, petitioner alleges that on August 31, 2010, he was arrested when he reported to his parole officer [1] "for a 155.3(1) that aparently [sic] happend [sic] on the 28th day of May 2010." [2] (Pet. at 1). According to petitioner, he was arraigned the following morning. (*Id.*) Petitioner further alleges that on September 9, 2010, he was released on his own recognizance pursuant to New York Criminal Procedure Law

Section 180 .80 "because no witnesses showed up, and the [prosecutor] had no solid sufficient evidence." (Pet. at 1–2).

Plaintiff alleges that on September 30, 2010, he was rearrested by his parole officer based upon the August 31, 2010 arrest. According to plaintiff, following that arrest, he was held in custody for over ninety (90) days in violation of New York Penal Law Section 190.80 and his due process rights under the Fourteenth Amendment to the United States Constitution. [3] (Pet. at 2).

On January 7, 2011, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254, alleging, *inter alia,* that his pretrial detention in excess of ninety (90) days violated his Fourteenth Amendment due process rights. Respondent now moves to dismiss the petition on the basis that petitioner has failed to exhaust available remedies in state court and that this Court must abstain from interfering in pending state court criminal proceedings. Petitioner has not opposed, or otherwise responded to, respondent's motion.

**II. DISCUSSION**

**A. Exhaustion**

Although petitioner seeks relief under both Sections 2241 and 2254 of Title 28 of the United States Code, relief is only available to him under Section 2241. Section 2254(a), provides, in relevant part, that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody *pursuant to the judgment of a State court* only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (Emphasis added). Since petitioner, a pretrial detainee at the time he commenced this proceeding, was not "in custody pursuant to the judgment of a State court" at the time he filed his petition, he cannot seek habeas corpus relief under Section 2254. *See, e.g. Crawford v.* New York, No. 08–CV–1287, 2009 WL 396308, at \* 1 (N.D.N.Y. Jan. 17, 2009) ("[S]ection 2254 would not apply to individuals held in pretrial custody because their custody would not result from a 'judgment' as required by that statute \* \* \*.")

**\*2** Section 2241(c)(3) allows any prisoner to seek a writ of habeas corpus if [h]e is in custody in violation of the Constitution or laws or treaties of the United States."

Thus, "section 2241 applies to all individuals held in state custody while § 2254 applies only to those whose custody results from a final judgment." *Crawford,* 2009 WL 396308, at * 1. Accordingly, Section 2241 is available to state pre-trial detainees challenging their custody as being in violation of the Constitution or federal law. *See, e.g. Marte v. Berkman,* No. 11 Civ. 6082, 2011 WL 4946708, at * 5 (S.D.N.Y. Oct.18, 2011), *aff'd on other grounds sub nom Marte v. Vance,* No. 11–4486–cv, 2012 WL 1632606 (2d Cir. May 10, 2012); *Yellowbear v. Wyoming Attorney General,* 525 F.3d 921, 924 (10th Cir.2008) ("Section 2241 is a vehicle for challenging pretrial detention * * *.")

Although not a statutory requirement, Section 2241 has been interpreted as requiring a petitioner to exhaust available state court or administrative remedies prior to seeking any relief thereunder in federal court. *See Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 632–34 (2d Cir.2001); *see also United States ex rel. Scranton v. State of New York,* 532 F.2d 292, 294 (2d Cir.1976) ("While 28 U.S.C., Section 2241 does not by its own terms require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief, decisional law has superimposed such a requirement in order to accommodate principles of federalism."); *Allen v. Maribal,* No. 11–CV–2638, 2011 WL 3162675, at * 1 (E.D.N.Y. July 25, 2011) (accord). A petitioner who has not exhausted available state court or administrative remedies may only seek a writ of habeas corpus under Section 2241 if: (1) he establishes cause for his failure to exhaust and prejudice as a result of the alleged violation of federal law, *see id.,* or (2) he demonstrates that the failure to consider his claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). With respect to state prisoners seeking federal habeas corpus relief, the exhaustion requirement and "cause and prejudice" standard balance the interest "in guarding against convictions that violate fundamental fairness" against the "equally weighty principles of federalism, comity, and finality." *Carmona,* 243 F.3d at 633 (quotations and citation omitted).

Since petitioner has not alleged that he sought any relief from his pretrial detention in state court prior to commencing this proceeding, he has not exhausted available state court remedies. *See, e.g. Allen,* 2011 WL 3162675, at * 2 ("Because the state proceedings are pending before the trial court, petitioner's claims have yet to be presented to the highest state court, and petitioner therefore has not exhausted his available state remedies."); *cf. Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 490, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (finding that the petitioner had exhausted available state remedies with respect to his speedy trial defense, notwithstanding the fact that he had not yet gone to trial in the state court criminal proceeding, since he had made repeated demands for trial to the state courts, thereby "offering those courts an opportunity to consider on the merits his constitutional claim of the * * * denial of a speedy trial.") Nor has petitioner asserted any cause for his failure to exhaust his state court remedies, any prejudice resulting to him from the alleged violation of his due process rights or that this Court's failure to consider his claims will result in a fundamental miscarriage of justice, particularly in light of his subsequent conviction upon his plea of guilty to the charge of petit larceny. Accordingly, the petition is denied and the proceeding is dismissed in its entirety for petitioner's failure to exhaust available state court remedies.

**B. Abstention**

**\*3** Even if petitioner could show cause for his failure to exhaust and prejudice resulting to him from the alleged violation of federal law, the petition is denied pursuant to *Younger v. Harris,* 401 U.S. 37, 54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny.

Pursuant to the Supreme Court's decision in *Younger,* absent unusual circumstances, a federal court must abstain from intervening in ongoing state criminal proceedings when adequate state relief is available. 401 U.S. at 54, 91 S.Ct. 746, 27 L.Ed.2d 669; *see also Davis v. Lansing,* 851 F.2d 72, 76 (2d Cir.1988) ("[I]nterference in pending [state court criminal] proceedings is inappropriate unless state law clearly bars the interposition of ... federal constitutional claims." (quotations, alterations and citations omitted)); *York v. Ward,* 538 F.Supp. 315, 317 (E.D.N.Y.1982) ("[F]ederal court interference with state court proceedings has long been discouraged by public policy that is reflected quite plainly in * * * judicial pronouncements.") "No more is required to invoke *Younger* abstention than the *opportunity* to present federal claims in the state proceeding." *Davis,* 851 F.2d at 76 (emphasis in original) (quoting *Juidice v. Vail,* 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977)).

"*Younger* abstention is appropriate when: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Hansel v. Town Court for Town of Springfield, N.Y.,* 56 F.3d 391, 393 (2d Cir.1995). "So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities [in state court], it cannot be said that state court review of constitutional claims is inadequate for *Younger* purposes." *Id.* at 394. As with the exhaustion principle, the interests of federalism and comity also stand behind the *Younger* abstention policy. *See Davis,* 851 F.2d at 76.

"Although [*Younger* ] dealt with a federal injunction of a pending state criminal prosecution and was based upon a proper respect for state functions, that is, comity, the same policy and legal considerations have been applied to federal habeas corpus relief from a state criminal trial." *York,* 538 F.Supp. at 317 (citing, *inter alia, U.S. ex rel. Scranton,* 532 F.2d 292). Section 2241 "cannot be used to 'permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court.' " *Allen,* 2011 WL 3162675, at * 1 (quoting *Braden,* 410 U.S. at 493, 93 S.Ct. 1123, 35 L.Ed.2d 443). Accordingly, courts should refrain from derailing "a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court." *Allen,* 2011 WL 3162675, at * 1.

At the time he commenced this proceeding, the criminal proceeding against petitioner was still pending in state court and there is ample opportunity for review of petitioner's constitutional claim in state court, i.e., by way of direct appeal from, or other collateral attack of, his judgment of conviction in state court. Moreover, "[t]here is no question that the ongoing prosecution [of petitioner] implicates important state interests: *Younger* itself settled the importance of the state's interest in criminal proceedings." *Davis,* 851 F.2d at 76; *see also Hansel,* 56 F.3d at 393 ("[I]t is axiomatic that a state's interest in the administration of criminal justice within its borders is an important one.") Since petitioner has not demonstrated any "extraordinary" or "unusual" circumstances that would militate against *Younger* abstention, *see Davis,* 851 F.2d at 76, respondent's motion is granted, the petition is denied and the proceeding is dismissed in its entirety without prejudice.

## III. CONCLUSION

**\*4** Respondent's motion to dismiss is granted, the petition is denied and the proceeding is dismissed in its entirety without prejudice. Since petitioner has failed to make a substantial showing of a denial of a constitutional right, *see, e.g. Finkelstein v. Spitzer,* 455 F.3d 131, 133 (2d Cir.2006) (denying a certificate of appealability because petitioner was no longer in custody in connection with his challenged convictions at the time he filed his habeas corpus petition), a certificate of appealability will not issue. 28 U.S.C. § 2253; *see also Miller–El v. Cockrell* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Luciadore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000); *Kellogg v. Strack,* 269 F.3d 100, 102 (2d Cir.2001). Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See,* 28 U.S.C. § 2253. The Clerk of the Court is directed to close this case.

SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 1965631

## Footnotes

1    According to respondent, petitioner was on parole for convictions of attempted burglary in the second degree in violation of New York Penal Law Sections 110.00 and 140.25 and attempted criminal possession of a forged instrument in violation of New York Penal Law Sections 110.00 and 170.25.

2    There is no Section 155.3 of the New York Penal Law. However, a Superior Court Information charged petitioner with one (1) count of grand larceny in the fourth degree in violation of ⚑New York Penal Law § 155.30(1), a class E felony, and one (1) count of petit larceny in violation of New York Penal Law § 155.25, a class A misdemeanor. On March 22, 2011, the prosecutor dismissed the charge of grand larceny in the fourth degree and petitioner pled guilty in the Supreme Court of the State of New York, County of Nassau to one (1) count of petit larceny in violation of New York Penal Law § 155.25, punishable by a maximum sentence of imprisonment of one (1) year. During his plea allocution: (1) petitioner testified that on May 28, 2010, he purchased items at a store in Glen Head, New York using a Visa card belonging to an account that he knew had been closed, (P. at 15); (2) petitioner waived his right to appeal his conviction, (P. at 11); and (3) the trial court agreed to sentence petitioner to a term of imprisonment of eleven (11) months in the NCCC, to run concurrently with the sentence imposed upon petitioner for his conviction of a violation of probation, (P. at 13).

3    According to respondent, petitioner was ultimately sentenced, upon his plea of guilty to the charge of petit larceny in violation of New York Penal Law § 155.25, on June 2, 2011. Respondent further contends that petitioner has completed the term of imprisonment imposed pursuant to the June 2, 2011 sentence, although he remains in custody pursuant to the sentence imposed for his conviction of a violation of probation.

---

**End of Document**        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   4

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 83 of 97

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 84 of 97

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

 **\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); Schoolfield v. Dep't of Correction, 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); Vargas v. Keane, 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), aff'd, 86 F.3d 1273 (2d Cir.), cert. denied, 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 85 of 97

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 🚩42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 86 of 97

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette, 867 F.2d 146, 149 (1989)*). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 87 of 97

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect within the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 88 of 97

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P., Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

*1 In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 90 of 97

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 91 of 97

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against

them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 92 of 97

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

**\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party.

🚩 *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

**\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 93 of 97

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a).

Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue
Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 94 of 97

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

transfer this case to another district. The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

 *7 Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F. 2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil*

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 95 of 97

v. Doty (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation are denied.

Case 3:23-cv-01215-MAD-ML   Document 10   Filed 10/17/23   Page 96 of 97

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1    Names in the caption are spelled to reflect plaintiff's complaint.

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

Case 3:23-cv-01215-MAD-ML    Document 10    Filed 10/17/23    Page 97 of 97

affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under ⚑ 28 U.S.C. § 1332.

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.