**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOSHUA MALAVE-SYKES,

Plaintiff,

-v- 3:23-CV-1215 (AJB/ML)

OFFICER E. RIEGEL,

Defendant.

**Hon. Anthony Brindisi, U.S. District Judge:**

**DECISION and ORDER**

## I. INTRODUCTION

On September 28, 2023, *pro se* plaintiff Joshua Malave-Sykes ("plaintiff") filed this 42 U.S.C. § 1983 action alleging that Mayor Linda Jackson of the Village of Endicott, New York ("Mayor Jackson"), the Village of Endicott Police Department ("Endicott PD"), Endicott PD Officer Ethan Riegel ("Officer Riegel"), and his former domestic partner Jessica A. Hinkle ("Hinkle"), violated his civil rights by having him arrested for an alleged domestic assault. Dkt. No. 1.

Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"), Dkt. No. 2, sought an order to show cause for a temporary restraining order and preliminary injunction, Dkt. No. 1, and requested leave to participate in the Court's electronic filing system, Dkt. No. 9. The matter was initially assigned to U.S. District Judge Mae A. D'Agostino, who referred the complaint and the pending motions to U.S. Magistrate Judge Miroslav Lovric for appropriate action, including an initial review of the pleading. *See* Dkt. No. 6.

On October 17, 2023, Judge Lovric granted plaintiff's IFP Application, denied his request for leave to participate in electronic case filing, and advised by Report & Recommendation

("R&R") that his request for an order to show cause be denied and that his complaint be dismissed with leave to replead. Dkt. No. 10. Plaintiff lodged objections to the R&R, Dkt. No. 12, sought permission to submit evidence, Dkt. No. 14, and moved to dismiss Mayor Jackson as a defendant, Dkt. No. 17.

On January 2, 2024, Judge D'Agostino adopted Judge Lovric's R&R and conditionally dismissed plaintiff's complaint. Dkt. No. 20. In so doing, Judge D'Agostino gave plaintiff thirty days' leave in which to file an amended complaint in accordance with the instructions set forth in the R&R. *Id*. At that time, Judge D'Agostino also granted plaintiff's request to submit evidence but denied as moot his request to dismiss Mayor Jackson, since she had already been dismissed from the action as a result of Judge D'Agostino's adoption of the R&R. *Id*.

Thereafter, plaintiff moved to amend his complaint, Dkt. No. 22, which Judge Lovric denied as moot in light of Judge D'Agostino's conditional dismissal order permitting amendment, Dkt. No. 23. Plaintiff blew the thirty-day deadline for amendment that Judge D'Agostino had initially given him, but Judge Lovric *sua sponte* extended that time period for another fourteen days in light of the possible confusion arising from plaintiff's filing of a procedurally unnecessary motion to amend (since he been given leave to do so by Judge D'Agostino). *See* Dkt. No. 24.

On April 10, 2024, plaintiff filed an amended complaint that asserted a panoply of 42 U.S.C. § 1983 claims against the Endicott PD and Officer Riegel arising from his arrest on a state-court criminal charge that was allegedly instigated by Hinkle, his former domestic partner. Dkt. No. 25. Plaintiff also moved to attach exhibits to his amended pleading, Dkt. No. 26, and for leave to amend for that purpose, Dkt. No. 27. Judge Lovric granted plaintiff's requests to amend but cautioned plaintiff that future filings must come in a single, unified form. Dkt. No. 28.

On July 12, 2024, Judge Lovric conducted an initial review of plaintiff's amended complaint and advised by R&R that the pleading be dismissed without leave to further replead. Dkt. No. 29. After plaintiff lodged roughly 100 pages of objections, Dkt. Nos. 30, 31, Judge D'Agostino adopted in part and rejected in part the R&R. Dkt. No. 34.

In so doing, Judge D'Agostino dismissed the Endicott PD as a defendant but did not weigh in on the plausibility of any of plaintiff's § 1983 claims against Officer Riegel. Dkt. No. 34. Instead, Judge D'Agostino merely concluded that the abstention doctrine set out by the Supreme Court in *Younger v. Harris*, 410 U.S. 37 (1971), which counsels against federal-court interference in ongoing state-court proceedings, did not necessarily bar plaintiff's various § 1983 claims against Officer Riegel. *See id*.

Thus, Judge D'Agostino appears to have left intact plaintiff's § 1983 individual-capacity claims for damages against Officer Riegel for: (1) First Amendment retaliation; (2) Fourth Amendment false arrest; (3) Fourth Amendment coercion; (4) Fourth Amendment malicious prosecution; (5) Eighth Amendment cruel and unusual punishment "for failure to obtain medical assistance"; (6) Eighth Amendment "deliberate indifference"; (7) Fourteenth Amendment procedural due process; and (8) Fourteenth Amendment substantive due process.[1] Dkt. No. 29 at 3–4.

Officer Riegel answered the amended complaint, Dkt. No. 41, the matter was reassigned to this Court for all further proceedings, Dkt. No. 37, and the parties conducted a period of fact discovery under Judge Lovric's supervision. Thereafter, Officer Riegel moved for summary judgment. Dkt. No. 67. Plaintiff opposed, Dkt. No. 71, and moved for relief from judgment, Dkt. No. 73. Officer Riegel has replied. Dkt. No. 77.

[1] Judge D'Agostino's Order on the second R&R does not enumerate plaintiff's surviving § 1983 claims. The Court has referred to Judge Lovric's R&R for that purpose. The claims have been reordered by constitutional amendment for the sake of analysis.

The motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

The following facts are taken from Officer Riegel's statement of material facts, Dkt. No. 67-16 ("Def.'s Facts"), and, for reasons discussed *infra*, will be deemed admitted for the purpose of assessing the motion for summary judgment.[2]

On September 22, 2023, at around 8:15 p.m., Officer Riegel and another officer with the Endicott PD responded to a domestic dispute between plaintiff and Hinkle, who were living together at an apartment in Endicott, New York. Def.'s Facts ¶¶ 1–5. Hinkle answered the door. *Id.* ¶ 7. She was crying. *Id.* ¶ 8. She was alone in the apartment. Ex. D to Reigel Decl., Dkt. No. 67-13.

When Officer Riegel asked her what happened, Hinkle explained that plaintiff "physically attacked" and "choked" her and showed the officers a visible red mark on the right side of her neck. Def.'s Facts ¶¶ 9–12. She led Officer Riegel into the apartment and pointed to a location in the bedroom where she claimed the assaulted had happened. *Id.* ¶¶ 12–13. Although Hinkle conceded that she had scratched plaintiff's "face," she explained that "I was trying to him off me." *Id.* ¶ 15. Hinkle stated: "I want him arrested for this." *Id.* ¶¶ 14–17.

Officer Riegel and another officer went outside. Ex. D to Riegel Decl. They spoke with a neighbor, who identified plaintiff by his name, physical description, and clothing. *Id.*; *see also* Def.'s Facts ¶¶ 20–22. Officer Riegel went back inside to talk to Hinkle, who offered some additional details—including that plaintiff works for a company called "GDI Services" and that he had left the apartment to head back to his job—and explained to the officers that plaintiff "came here

[2] Defendant has filed body camera footage from the September 22, 2023 incident. Exs. D & E to Riegel Decl., Dkt. No. 67-13, 67-14. The Court's approach to this evidence will be discussed *infra*, too.

screaming at me because I wouldn't get off the laptop I had" and stated that he "doesn't want me talking to anybody." *Id.* ¶¶ 23–24; *see also* Ex. D to Riegel Decl.

Hinkle agreed to let emergency medical services attend to her while she continued to explain to the officers that plaintiff had attacked her: "He choked me and I have red spots on my hands and arms," "After he got off me, I jumped up, I grabbed my phone and I ran in the bathroom and locked the door," and "This is not the first time he's done it, but this is the first time he's left marks." Def.'s Facts ¶¶ 27–30. Hinkle characterized her relationship with plaintiff as an abusive one. Ex. D to Riegel Decl.

At approximately 8:23 p.m., plaintiff spoke to the responding officers and to Hinkle using a security camera installed in the apartment. Def.'s Facts ¶¶ 32. Unbeknownst to the officers, plaintiff had used the camera to eavesdrop on their exchange with Hinkle. *Id.* ¶¶ 5–6, 18–19. At this point in the story, plaintiff, speaking through the camera, stated to the officers that he had scratch marks on his face. *Id.* ¶ 35. Officer Riegel asked Hinkle about this claim, and she explained: "He was on top of me so I scratched his face to try to get him off of me." *Id.* ¶¶ 36–37.

Plaintiff, still speaking through the camera, identified himself and claimed that: "She legit drew blood. She scratched my face." Def.'s Facts ¶¶ 39–40. Officer Riegel managed to get plaintiff to identify himself through the camera's audio interface. Ex. D to Riegel Decl. After that, Officer Riegel explained to Hinkle that she could press charges against plaintiff but cautioned her that plaintiff could press charges against her, too. *Id.*; Def.' Facts ¶ 41. Officer Riegel asked Hinkle if the choking hindered her breathing and she answered in the affirmative. *Id.* ¶ 43.

Officer Riegel asked both parties (with plaintiff still participating remotely by camera) if they wanted to press charges, and in response Hinkle and plaintiff continued to offer their own explanations for their behavior. Ex. D to Riegel Decl.; Def.'s Facts ¶¶ 45–48. When plaintiff tried

to claim that Hinkle had grabbed him first, Officer Riegel explained that it did not matter because state law imposed obligations on both parties to retreat from an encounter. *See id*.

Hinkle continued to report to Officer Riegel, to other officers who arrived on the scene, and to emergency medical services that plaintiff had attacked her and choked her and obstructed her ability to breathe. Ex. D to Riegel Decl.; Def.'s Facts ¶¶ 52–55, 57–61, 64–67. Officer Riegel took photographs of plaintiff's injuries. Ex. D to Riegel Decl. Eventually, Hinkle agreed to come outside to speak with the officers. *Id*. Hinkle soon decided that she would press charges. *Id*.

Officer Riegel took down Hinkle's written statement—which included a request for an order of protection against plaintiff—and then read it back to her to ensure that it was consistent with her claims. Ex. D to Riegel Decl.; Def.'s Facts ¶ 68. Hinkle agreed and signed the supporting deposition. Def.'s Facts ¶ 69. Thereafter, Officer Riegel informed plaintiff, who was now speaking to them through a cellular telephone (the record leaves it unclear how this happened), that a warrant would be issued for his arrest if he did not turn himself in to the Endicott PD. Ex. D to Riegel Decl.; Def.'s Facts ¶¶ 70, 76. First responders transported Hinkle to the hospital in an ambulance. Ex. D to Riegel Decl.

Later that night, at about 9:49 p.m., plaintiff presented himself to Endicott PD. Ex. E to Riegel Decl., Dkt. No. 67-14; Def.'s Facts ¶ 77. Officer Riegel escorted him inside the police station for processing. Ex. E to Riegel Decl. Officer Riegel seated plaintiff on a bench and secured him with one handcuff. Def.'s Facts ¶ 78. He read plaintiff his *Miranda* rights and explained to him that he was being charged because Hinkle had accused him of being the primary aggressor during the incident. *Id*. ¶¶ 81–82.

Plaintiff repeatedly offered his own version of events and explained why his conduct should have been justified under the circumstances. *See, e.g.*, Ex. E to Riegel Decl. ("I got my ass

kicked by a girl, you see this?"). Other officers were present in the station during this period of time. *Id*. At plaintiff's request, Officer Riegel and another officer permitted plaintiff to use the bathroom. *Id*. The bodycam footage shows a visible scratch or abrasion under plaintiff's left eye. *Id*. But plaintiff did not request medical attention at this time or inform Officer Riegel or anyone else that he was in pain. *Id.*; Def.'s Facts ¶¶ 84–85.

The booking process took just over an hour. Ex. E to Riegel Decl. Shortly after 11:00 p.m., Officer Riegel escorted plaintiff to a patrol car, loosened his handcuffs a bit, and then transported plaintiff to the Broome County Correctional Facility. *Id.*; Def.'s Facts ¶¶ 86–89. He helped plaintiff exit the cruiser and handed him off to the custody of county officials. Ex. E to Riegel Decl. Plaintiff was soon released from custody. Def.'s Facts ¶¶ 86–89. He did not seek medical treatment after his release. *Id*.

Plaintiff claims he was arrested on December 8, 2023, for violating a state-court order of protection issued against him in favor of Hinkle. Def.'s Facts ¶¶ 96, 99. According to Officer Riegel, however, he never spoke with Hinkle after the events of September 22, and he did not coerce, suggest, or discuss anything about a protective order with Hinkle after that date. *Id*. ¶¶ 100–101, 103. Officer Riegel does not know who allegedly re-arrested plaintiff on December 8, *id*. ¶ 105, and there is no record of any re-arrest of plaintiff in Endicott PD's records, *id*. ¶ 106.

## III. LEGAL STANDARD

The entry of summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is considered "genuine" when "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id*. In conducting this analysis, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Id*. at 255. Even so, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## IV. DISCUSSION

### A. Threshold Matters

As is often the case with summary judgment, there are a few threshold matters to address before reaching the merits of plaintiff's § 1983 claims.

#### 1. Plaintiff's Pro Se Status

First, plaintiff is *pro se*. That means he is not represented by an attorney in this litigation. Therefore, his pleadings, motions, and filings must be held to less stringent standards than those that might be drafted by a lawyer. *See Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). As the Second Circuit has explained, *pro se* filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest claims they suggest. *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013). "This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

#### 2. Plaintiff's Failure to Meaningfully Oppose Summary Judgment

Second, *pro se* or not, plaintiff failed to meaningfully oppose Officer Riegel's motion for summary judgment. Although plaintiff filed a response in opposition that is labeled correctly, Dkt. No. 71, this 106-page filing is full of conclusory assertions of misconduct, accusations about events that occurred in connection with other state-court proceedings, statements about Officer Riegel's

alleged personal conduct in unrelated matters, and paragraphs of law about the general solicitude owed to unrepresented parties.[3] *See id.*

Although plaintiff has also filed an "affidavit in opposition" and "exhibits" as part of this correctly labeled response in opposition, neither that affidavit nor his exhibits delve into the material facts relevant to the claims in this case. Instead, these filings accuse Officer Riegel's counsel of acting in bad faith and claim that Judge Lovric has acted unfairly. *See, e.g.*, Dkt. No. 71 at 9–13. This "affidavit" goes on to assert that Judge D'Agostino's opinion permitting the case to proceed to *discovery* means that the case should also now proceed to *trial*, and that Officer Riegel's counsel has employed "every unscrupulous trick and gimmick" to prevent that result. *Id*. at 14.

These conclusory accusations of misconduct against the opposing lawyer and the presiding magistrate judge do not warrant any relief and do not merit any further discussion. However, one issue raised in plaintiff's response papers does warrant careful analysis—plaintiff asserts that Officer Riegel's counsel failed to furnish him with the requisite notice about the consequences of summary judgment that is required by governing circuit precedent. Dkt. No. 71 at 19.

In the summary judgment context, *pro se* litigants benefit from a special procedural safeguard: the district court is obligated to ensure that a *pro se* litigant has "actual notice, provided in an accessible manner, of the consequences of [his] failure to comply with the requirements of Rule 56." *Irby v. N.Y. City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001). Either the district court or the movant can supply this so-called *Irby* notice. *See, e.g.*, *M.B. v. Reish*, 119 F.3d 230, 232 (2d Cir. 1997).

[3] Plaintiff's opposition filing appears to include a duplicate copy of his motion for "relief from judgment," which accuses Judge Lovric and defendant's counsel of misconduct. *Compare* Dkt. No. 71, *with* Dkt. No. 73. Plaintiff's motion also challenges the validity of Judge Lovric's decision to seal certain exhibits. *See* Dkt. No. 73. The Court has reviewed the motion and concludes that it does not provide any basis for relief. Accordingly, plaintiff's motion will be denied.

This notice must be "provided in an accessible manner," *Irby*, 262 F.3d at 414, must include a "short and plain statement in ordinary English" that explains "the nature and consequences of summary judgment," *McPherson v. Coombe*, 174 F.3d 276, 281 (2d Cir. 1999), and must advise the *pro se* litigant to "set forth all available evidence demonstrating a genuine dispute over material facts," *Sawyer v. Am. Fed. Of Gov't Emps.*, 180 F.3d 31, 35 (2d Cir. 1999) (citation omitted).

As noted *supra*, plaintiff claims that he did not benefit from this procedural safeguard because the opposing counsel did not send it to him. Dkt. No. 71 at 19. Failure to provide this notice is reversible error unless the record makes it obvious that the *pro se* litigant "has demonstrated a clear understanding of the nature and consequences of a summary judgment motion." *Jova v. Smith*, 582 F.3d 410, 414 (2d Cir. 2009) (per curiam).

Upon review, this argument can be safely rejected. First, Officer Riegel's counsel's certificate of service asserts that she included a "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion" as part of her motion papers.[4] Dkt. No. 67. And elsewhere, plaintiff concedes that he received this filing from opposing counsel in the mail on May 9, 2026. Dkt. No. 71 at 18.

Second, even assuming that perhaps this notice was not included in the service packet mailed by opposing counsel, the Clerk of the Court *separately* mailed plaintiff a copy of this district's standard *Irby* notice, along with a letter that emphasized the opposition deadline and cautioned plaintiff that the failure to timely respond might result in this case being dismissed. Dkt. No. 68. This notice has not bounced back to the Court and plaintiff has not claimed that he did not receive it.

---

[4] It does not look like defendant's counsel included a copy of her own *Irby* notice as part of her CM/ECF filing with the Court. *See* Dkt. No. 67. The Court notes that it is better practice to do so to avoid claims like this one.

In short, plaintiff received the benefit of the special procedural safeguard to which *pro se* litigants are entitled when it comes to summary judgment.

**3. Defendant's Statement of Material Facts**

Third, as noted *supra*, despite receiving the benefit of this special procedural safeguard, and even accounting for his *pro se* status, plaintiff failed to respond to Officer Riegel's summary judgment motion with any relevant factual matter or legal arguments about the issues in dispute.

The general rule in this situation is that a non-movant's failure to appropriately respond to a motion for summary judgment does not relieve the movant of their ordinary burden of production, *i.e.*, of showing that the undisputed material facts warrant judgment as a matter of law. *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Nor does it relieve a reviewing court of its obligation to faithfully apply the summary judgment standard. *Id.*

In other words, a non-movant's failure to oppose summary judgment (or failure to meaningfully oppose summary judgment with any relevant facts or legal arguments) does not permit a court to grant the motion based on some notion of "consent" or "default" attributable to the non-movant. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

After all, the rules governing summary judgment are challenging and *pro se* litigants often struggle to craft a compliant submission. So the reviewing court typically takes a function-over-form approach to what it has received in any given case. Sometimes this means looking at the underlying record (at least what has been made available, since parties do not typically file a complete record of discovery on the docket) to determine if any fact disputes exist for trial. *See, e.g.*, *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding district court "may in its discretion opt to conduct an assiduous review of the record"), *abrogated on other grounds by Gross v. FBI Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Even so, Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (collecting cases).[5] Instead, the reviewing court will typically focus its attention on the *pro se* litigant's incomplete or partial submissions and conduct a careful review of what has been offered to try to determine whether a trial might be warranted on any of the claims. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("In the case of a *pro se*, the district court should examine every claim or defense with a view to determining whether summary judgment is legally or factually appropriate.").

Of course, the "special solicitude" extended to *pro se* litigants does not mean that every procedural requirement governing summary judgment must get thrown out the window. The Second Circuit has made clear that a *pro se* litigant is not exempt from procedural rules. *See, e.g.*, *Edwards v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995). And this includes the procedural rules governing an opposition to summary judgment. *See, e.g.*, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).

Where, as here, the non-movant fails to submit an opposition to the movant's statement of material facts (or an affidavit or other submission placing relevant facts in dispute), the reviewing court may deem admitted the properly supported facts in the movant's statement of material facts for the purpose of assessing the motion for summary judgment. N.D.N.Y. L.R. 56.1(b).

---

[5] A verified complaint should be treated as an affidavit for summary judgment purposes. *See, e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Plaintiff's amended complaint is not verified (in fact, it does not even appear to have been signed). Dkt. No. 25. Plaintiff also submitted an "affidavit in support of amended complaint." Dkt. No. 25-1. Upon review, the non-conclusory factual assertions in these documents are insufficient to place any of the material facts in genuine dispute. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, *i.e.*, whether it concerns facts that can affect the outcome under the applicable substantive law.").

Courts in this circuit routinely apply this rule to cases involving a *pro se* litigant, especially one who fails to oppose or respond to the movant's statement of material facts. *See, e.g.*, *DeJesus v. Malloy*, 531 F. Supp. 3d 650, 658 (W.D.N.Y. 2021); *Martin v. Town of Simsbury*, 505 F. Supp. 3d 116, 125 (D. Conn. 2020); *Barnes v. Malavi*, 412 F. Supp. 3d 140, 142 n.3 (E.D.N.Y. 2019); *Ogalo v. N.Y. State Thruway Auth.*, 972 F. Supp. 2d 301, 305 (N.D.N.Y. 2013). Accordingly, the properly supported material facts in Officer Riegel's Local Rule 56.1(a) Statement, Dkt. No. 67-16, will be deemed admitted for the purpose of assessing the motion for summary judgment.

**4. The Video Evidence**

Fourth, as noted *supra*, Officer Riegel filed his body camera footage from this incident. In *Scott v. Harris*, the Supreme Court made clear that video evidence can and should be considered in determining whether genuine material issues of fact exist. 550 U.S. 372 (2007). As the Fifth Circuit has explained, *Scott* "empowers a district court to disregard testimony that is at odds with video evidence." *Orr v. Copeland*, 844 F.3d 484, 491 (5th Cir. 2016).

Officer Riegel relied on this footage, in part, to support certain assertions in his statement of material facts. The Court has reviewed the footage to confirm that this evidence does, in fact, support those assertions of material fact. *See, e.g.*, *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 394 (S.D.N.Y. 2015) (collecting cases explaining courts should disregard factual assertions lacking record support).

Notably, this is the unusual case in which the video footage being offered by the movant captures virtually all of the salient events with high-quality audio and video. Exs. D & E to Riegel Decl. Thus, ever mindful of the need to "resist the temptation to uncritically assume that video evidence inherently possesses a unique kind of 'reliable factual conclusiveness," *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 481 (N.D.N.Y. 2017), the Court has reviewed the body camera

footage and, to the extent that this evidence depicts relevant events, has considered whether it tends to establish any genuine disputes over the material facts that might be sufficient to warrant a trial.

**B. The Merits**

That leaves the merits. Plaintiff's claims are brought under 42 U.S.C. § 1983. "Section 1983 creates a cause of action based on personal liability and predicated upon fault." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1230 (1997). A § 1983 claim holds an individual personally liable for the role his or her acts or omissions played in violating someone's constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Accordingly, "[t]o establish a Section 1983 violation, a plaintiff must plead (and later prove) that each defendant was personally involved in the alleged constitutional violation." *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023).

Judge Lovric found that broadly construed, plaintiff's amended complaint alleges § 1983 individual-capacity claims for damages against defendant Officer Riegel for: (1) First Amendment retaliation; (2) Fourth Amendment false arrest; (3) Fourth Amendment coercion; (4) Fourth Amendment malicious prosecution; (5) Eighth Amendment cruel and unusual punishment "for failure to obtain medical assistance"; (6) Eighth Amendment "deliberate indifference"; (7) Fourteenth Amendment procedural due process; and (8) Fourteenth Amendment substantive due process. Dkt. No. 29 at 3–4.

**1. First Amendment**

Judge Lovric found that broadly construed, plaintiff's amended complaint alleges that Officer Riegel violated his First Amendment rights when he retaliated against him by coercing Hinkle into filing additional state-court criminal charges against him. Dkt. No. 29 at 3.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "To survive a motion for summary judgment in the context of First Amendment retaliation, including retaliatory prosecution, a plaintiff must proffer evidence to show that (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Alberty v. Hunter*, 144 F.4th 408, 419 (2d Cir. 2025) (cleaned up).[6]

Measured against this general legal standard, Officer Riegel is entitled to summary judgment on plaintiff's § 1983 First Amendment retaliation claim. Notably, this § 1983 claim is not premised on any conduct attributable to Officer Riegel in connection with plaintiff's arrest on September 22, 2023. Instead, as Officer Riegel points out in his motion papers, plaintiff claims that he was *re-arrested* by Endicott PD on December 8, 2023, for allegedly violating a state-court order of protection that had been issued against him. *See, e.g.*, Def.'s Facts ¶¶ 96, 99.

Even viewed in the light most favorable to plaintiff, the non-movant, no reasonable factfinder could conclude that Officer Riegel violated plaintiff's rights under this body of law. Among other things, the admitted facts establish that Officer Riegel never spoke with Hinkle after the events of September 22. Def.'s Facts ¶ 100. Nor did Officer Riegel coerce, suggest, or discuss anything about a protective order with Hinkle after that date. *Id.* ¶ 101.

The admitted facts also establish that Officer Riegel did not re-arrest plaintiff on December 8, 2023, either. Def.'s Facts ¶¶ 103–05. Indeed, plaintiff testified at his deposition in this case

[6] Probable cause will defeat a claim of retaliatory arrest and prosecution. *Alberty*, 144 F.4th at 419 (collecting cases). In the context of a retaliatory arrest, there is an exception to this rule if the plaintiff can produce "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019). This is a "slim" exception, *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024), which is inapplicable here.

that he was unaware of the identity of the law enforcement official who allegedly re-arrested him on December 8. Ex. F to Calhoun Decl., Dkt. No. 67-7 at 65:16–65:25. And although plaintiff testified that this unknown law enforcement official was employed by Endicott PD, *id*., there is no record of plaintiff's re-arrest in the Endicott PD's records. Def.'s Facts ¶ 106. Accordingly, Officer Riegel is entitled to summary judgment on this § 1983 claim.

**2. Fourth Amendment**

Judge Lovric found that broadly construed, plaintiff's amended complaint alleges that Officer Riegel violated his Fourth Amendment rights when he: (a) falsely arrested him on September 22, 2023; (b) coerced Hinkle into filing a criminal complaint against him; and (c) maliciously prosecuted plaintiff on the domestic assault charges. Dkt. No. 29 at 3.

Among other things, the Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend IV. Reasonableness in the Fourth Amendment context is "generally assessed by carefully weighing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *County of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017) (cleaned up).

**a. False Arrest**

A § 1983 false arrest claim is grounded in the Fourth Amendment right of an individual to be free from unreasonable seizures. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A § 1983 false arrest claim is substantially the same as a claim for false arrest under state law. *Davis v. Rodriguez*, 363 F.3d 424, 433 (2d Cir. 2004). "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement,

and (4) the confinement was not otherwise privileged." *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (cleaned up).

In the context of an arrest, a confinement is "otherwise privileged" if it is based on "probable cause." *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). In other words, "probable cause to arrest is a complete defense to a false arrest claim." *Kee v. City of N.Y.*, 12 F.4th 150, 158 (2d Cir. 2021) (cleaned up). "Officers have probable cause when they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Ashley v. City of N.Y.*, 992 F.3d 128, 136 (2d Cir. 2021) (cleaned up).

Officer Riegel is entitled to summary judgment on plaintiff's § 1983 false arrest claim because the admitted facts conclusively establish that Officer Riegel had probable cause to arrest plaintiff for second-degree strangulation.[7] Under New York law, "[a] person is guilty of strangulation in the second degree when he or she commits the crime of criminal obstruction of breathing or blood circulation . . . and thereby causes stupor, loss of consciousness, for any period of time, or any other physical injury or impairment." N.Y. Penal Law § 121.12. "A person is guilty of criminal obstruction of breathing or blood circulation when, with intent to impede the normal breathing or circulation of the blood of another person, he or she: (a) applies pressure on the throat or neck of such person; or (b) blocks the nose or mouth of such person. N.Y. Penal Law § 121.11.

On September 22, 2023, emergency services dispatched Endicott PD to respond to Hinkle's claim that she had been choked. Ex. A to Riegel Decl., Dkt. No. 67-10. Officer Riegel arrived and spoke to Hinkle, who reported to him that plaintiff "physically attacked" and "choked" her

[7] To the extent that this claim might be understood as arising out of plaintiff's alleged re-arrest on December 8, 2023, the admitted facts establish that Officer Riegel was not "personally involved" in those events and therefore any § 1983 claim against him related to that date would be subject to dismissal.

and showed the officers a visible red mark on the right side of her neck. Def.'s Facts ¶¶ 9–12. Although Hinkle conceded that she had scratched plaintiff's "face," she explained that "I was trying to him off me." *Id.* ¶ 15. Hinkle stated: "I want him arrested for this." *Id.* ¶¶ 14–17.

Thereafter, Officer Riegel asked Hinkle if the choking hindered her breathing and she answered in the affirmative. Def.'s Facts ¶ 43. Hinkle continued to report to Officer Riegel, to other officers who arrived on the scene, and to emergency medical services that plaintiff had attacked her and choked her and obstructed her ability to breathe. Ex. D to Riegel Decl.; Def.'s Facts ¶¶ 52–55, 57–61, 64–67. Officer Riegel took photographs of plaintiff's injuries. Ex. D to Riegel Decl. Officer Riegel took down Hinkle's written statement and Hinkle signed the supporting deposition. Def.'s Facts ¶¶ 68–69. As relevant here, Hinkle's supporting deposition averred that plaintiff "tackled me to the floor, I yelled at him to get off of me, and then he choked me with both hands to the point I couldn't breathe." Ex. B to Riegel Decl., Dkt. No. 67-11 at 4.

Even viewed in the light most favorable to plaintiff, the non-movant, these facts conclusively establish that Officer Riegel had probable cause to believe that plaintiff had committed second-degree strangulation under the totality of the circumstances. The fact that plaintiff acknowledged this conduct but offered his own explanation or justification does not create a fact dispute on probable cause that might warrant a trial on this claim. *See, e.g.*, *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("[W]e have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee."). Accordingly, Officer Riegel is entitled to summary judgment on this § 1983 claim.

**b. Coercion**

Judge Lovric found that broadly construed, plaintiff's amended complaint alleges that Officer Riegel violated his Fourth Amendment rights when he coerced Hinkle into filing a criminal

complaint against him for allegedly violating the state-court order of protection that was later issued in her favor. Dkt. No. 29 at 3.

The Court is not entirely certain about how to analyze this claim. It would probably fit under a "malicious prosecution" rubric, which is discussed *infra*. But some courts have treated "coerced" testimony from a victim as amounting to a claim for the denial of the right to a fair trial, *see, e.g.*, *Bailey v. City of N.Y.*, 79 F. Supp. 3d 424, 455 (E.D.N.Y. 2015), which would be grounded in the due process clause of the Fourteenth Amendment rather than the Fourth Amendment's protection against unreasonable searches and seizures, *see, e.g.*, *Frost v. N.Y. City Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020).

Regardless of whether this is a Fourth Amendment claim or a Fourteenth Amendment claim, Officer Riegel is entitled to summary judgment on it. As Judge Lovric explained, this claim arises out of plaintiff's alleged re-arrest on December 8, 2023. But as noted *supra*, the admitted facts establish that Officer Riegel did *not* have any personal involvement in plaintiff's re-arrest on December 8. Def.' Facts ¶¶ 103–05.

Indeed, plaintiff testified at his deposition that he was unaware of the identity of the law enforcement official who allegedly re-arrested him on December 8. Ex. F to Calhoun Decl., Dkt. No. 67-7 at 65:16–65:25. And although plaintiff testified that this unknown law enforcement official was employed by Endicott PD, *id.*, there is no record of plaintiff's re-arrest in the Endicott PD's records. Def.'s Facts ¶ 106. Further, the admitted facts establish that Officer Riegel never spoke with Hinkle again after the events of September 22. *Id.* ¶ 100. Nor did Officer Riegel coerce, suggest, or discuss anything about a protective order with Hinkle after that date. *Id.* ¶ 101.

In sum, even viewed in the light most favorable to plaintiff, the non-movant, no reasonable fact-finder could conclude that Officer Riegel violated plaintiff's civil rights by "coercing" Hinkle

to engage in any conduct vis-à-vis the state-court order of protection. Simply put, there is no basis in the record from which to conclude Officer Riegel was "personally involved" in this alleged conduct. Accordingly, Officer Riegel is entitled to summary judgment on this § 1983 claim.

**c. Malicious Prosecution**

A § 1983 malicious prosecution claim is grounded in the Fourth Amendment right of an individual to be free from unreasonable seizures. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562 (2024). A § 1983 malicious prosecution claim requires a plaintiff to "establish the elements of a malicious prosecution claim under the relevant state law," *Chapdelaine v. Desjardin*, 180 F.4th 454, 465 (2d Cir. 2026), and "a violation of his rights under the Fourth Amendment," *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019).

Thus, to prevail on a § 1983 malicious prosecution claim, a plaintiff must show: (1) the initiation or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of that criminal proceeding in the plaintiff's favor; (3) a lack of probable cause for commencing the criminal proceeding; (4) that actual malice motivated the defendant's actions; and (5) "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Alexander*, 132 F.4th at 158 (cleaned up).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." *Stansbury v. Wertman*, 721 F.3d 84, 94–95 (2d Cir. 2013) (cleaned up). Notably, however, "probable cause to prosecute should not be conflated with probable cause to arrest." *Kee*, 12 F.4th at 166. First, in the malicious prosecution context, "probable cause must support *each* charge." *Alexander*, 132 F.4th at 158 (emphasis in original). Second, "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury*, 721 F.3d at 95. "Probable cause, in the context of malicious prosecution, has [ ] been

described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Carruthers v. Colton*, 153 F.4th 169, 181 (2d Cir. 2025) (cleaned up).

Even accounting for the heightened standard for probable cause in this context, Officer Riegel is entitled to summary judgment on plaintiff's § 1983 malicious prosecution claim because the admitted facts conclusively establish that Officer Riegel had probable cause to believe that plaintiff was guilty of second-degree strangulation.

On September 22, 2023, emergency services dispatched Endicott PD to respond to Hinkle's claim that she had been choked. Ex. A to Riegel Decl., Dkt. No. 67-10. Officer Riegel arrived and spoke to Hinkle, who told him that plaintiff "physically attacked" and "choked" her and showed the officers a visible red mark on the right side of her neck. Def.'s Facts ¶¶ 9–12. Although Hinkle conceded that she had scratched plaintiff's "face," she explained that "I was trying to him off me." *Id.* ¶ 15. Hinkle stated: "I want him arrested for this." *Id.* ¶¶ 14–17.

Thereafter, Officer Riegel asked Hinkle if the choking hindered her breathing and she answered in the affirmative. Def.'s Facts ¶ 43. Hinkle continued to report to Officer Riegel, to other officers who arrived on the scene, and to emergency medical services that plaintiff had attacked her and choked her and obstructed her ability to breathe. Ex. D to Riegel Decl.; Def.'s Facts ¶¶ 52–55, 57–61, 64–67. Officer Riegel took photographs of plaintiff's injuries. Ex. D to Riegel Decl. Officer Riegel took down Hinkle's written statement and Hinkle signed the supporting deposition. Def.'s Facts ¶¶ 68–69. As relevant here, Hinkle's supporting deposition averred that plaintiff "tackled me to the floor, I yelled at him to get off of me, and then he choked me with both hands to the point I couldn't breathe." Ex. B to Riegel Decl., Dkt. No. 67-11 at 4.

Even viewed in the light most favorable to plaintiff, the non-movant, these facts conclusively establish that Officer Riegel had probable cause to arrest and prosecute plaintiff for second-

degree strangulation. *See, e.g.*, *McPhatter v. City of N.Y.*, 823 F. Supp. 3d 227, 236 (E.D.N.Y. 2026) ("Probable cause to arrest generally translates into probable cause to prosecute unless some intervening event between arrest and arraignment causes probable cause to dissipate." (cleaned up)). Notably, the admitted facts establish that after arresting and processing plaintiff for this charge on September 22, 2023, Officer Riegel did not have any further involvement with plaintiff or with Hinkle. Def.'s Facts ¶¶ 100–106. Accordingly, Officer Riegel is entitled to summary judgment on this § 1983 claim.

**3. Eighth Amendment**

Judge Lovric found that broadly construed, plaintiff's amended complaint alleges that Officer Riegel violated his Eighth Amendment rights when he subjected him to: (a) cruel and unusual punishment "for failure to obtain medical assistance"; and (b) "deliberate indifference." Dkt. No. 29 at 4. As Officer Riegel points out, plaintiff was a pre-trial detainee at the time of the relevant events. Accordingly, these § 1983 claims must be analyzed under the Fourteenth Amendment's more plaintiff-protective standard. *See, e.g.*, *Lara-Grimaldi v. County of Putnam*, 132 F.4th 614, 631 (2d Cir. 2025).

To establish a § 1983 Fourteenth Amendment claim based on the alleged denial of medical care, the plaintiff must show that: (1) he had a "serious medical need"; and (2) the defendant "acted with deliberate indifference." *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019). First, the plaintiff must show that the conditions, either alone or in combination, posed an unreasonable risk of serious damage to his health, which includes his "physical and mental soundness." *See, e.g.*, *Darnell v. Pineiro*, 849 F.3d 17, 31 (2d Cir. 2017) (cleaned up). Second, the plaintiff must show that the defendant knew, or should have known, that failure to provide the medical treatment would pose a substantial risk to the detainee's health. *Charles*, 925 F.3d at 87 (emphases omitted).

Measured against this general legal standard, and even after accounting for the more plaintiff-friendly standard that applies in the context of pre-trial detention, Officer Riegel is entitled to summary judgment on plaintiff's § 1983 claims "for failure to obtain medical assistance" and "deliberate indifference." First off, although plaintiff reported through the security camera that Hinkle had scratched his face and "legit drew blood," Def.'s Facts ¶¶ 39–40, plaintiff was participating remotely—he did not ask for medical attention at this point in the story, his physical condition was not visible to Officer Riegel, and, in any event, he was not in Officer Riegel's custody at that time.

Later, when plaintiff presented himself to Endicott PD for processing and entered Officer Riegel's custody, the bodycam footage does show a visible scratch or abrasion under plaintiff's left eye. Ex. E to Riegel Decl. However, plaintiff did not request any medical attention or inform Officer Riegel or anyone else that he was in pain. *See id.*; Def.'s Facts ¶¶ 84–85. To the contrary, a review of the bodycam footage shows that plaintiff was cooperative with Officer Riegel, answered his questions, and engaged in a dialogue with him about both the events of the evening and his relationship with Hinkle. Ex. E to Riegel Decl. Thereafter, plaintiff was transferred to county custody and released. He did not seek medical treatment afterward. Def.'s Facts ¶ 90.

Although there may be cases in which a pre-trial detainee's condition is obvious enough to create a dispute over whether different or more immediate action was warranted, *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 397 (S.D.N.Y. 2020), or where a delay in care alone might be enough to establish a jury question on this kind of claim, *Sims v. City of N.Y.*, 788 F. App'x 62, 64 (2d Cir. 2019) (summary order), there is no indication that Officer Riegel "recklessly failed to act with reasonable care to mitigate the risk that the condition posed," *Darnell*, 849 F.3d at 35, or that plaintiff "suffer[ed] serious adverse health consequences" because Officer Riegel

failed to take action, *Charles*, 925 F.3d at 89. Accordingly, Officer Riegel is entitled to summary judgment on these § 1983 claims.

**4. Fourteenth Amendment**

Judge Lovric found that broadly construed, plaintiff's amended complaint alleges that Officer Riegel violated his Fourteenth Amendment rights when he took action against him in violation of: (a) procedural due process; and (b) substantive due process. *See* Dkt. No. 29 at 4.

The Fourteenth Amendment's Due Process Clause protects procedural and substantive rights. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government."). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Substantive due process rights are meant to protect persons against the government's "exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Upon review, any due process claim based on this fact pattern must be dismissed. Broadly construed, plaintiff's § 1983 claims involve a seizure of his person when he was arrested and processed by Officer Riegel based on his investigation into Hinkle's claim that plaintiff had assaulted her and obstructed her ability to breathe. Section 1983 claims based on this alleged conduct implicate the Fourth Amendment's protections rather than any generalized notion of due process.

First, to the extent that Judge Lovric might have read a § 1983 substantive due process claim into these facts, any such claim would be subject to dismissal because it is duplicative of plaintiff's more specific constitutional claims. *See, e.g.*, *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality) (noting that where, as here, "a particular Amendment provides an explicit textual

source of constitutional protection against a particular sort of government behavior," the specific Amendment, rather than a generalized notion of due process, governs the analysis); *Collins v. Putt*, 979 F.3d 128, 136 (2d Cir. 2020) (concluding same). Second, to the extent that plaintiff has attempted to assert a § 1983 procedural due process claim, there is no indication plaintiff suffered a deprivation of any protected interest that is *both* distinguishable from his First, Fourth, and Fourteenth Amendment claims *and* something for which Officer Riegel (the only remaining defendant) might be held personally responsible. Accordingly, Officer Riegel is entitled to summary judgment on these § 1983 claims.

## V. CONCLUSION

"A lot of the work district courts do is to filter what turn out to be meritless cases through an array of protective procedures to make sure that the rare meritorious case does not slip through with no remedy . . . ." *Jones v. Yazzo*, 481 F. Supp. 3d 109, 114 (E.D.N.Y. 2020). Plaintiff has enjoyed the benefit of these protective procedures and his claims have been found wanting. Even viewed in the light most favorable to the non-movant, and even accounting for his *pro se* status, the available record would not permit a rational fact-finder to return a verdict in plaintiff's favor on any of his § 1983 claims.

Therefore, it is

ORDERED that

1. Defendant's motion for summary judgment (Dkt. No. 67) is GRANTED;
2. Plaintiff's motion for relief from judgment (Dkt. No. 73) is DENIED; and
3. Plaintiff's amended complaint (Dkt. No. 25) is DISMISSED with prejudice.

The Clerk of the Court is directed to terminate the pending motions, enter a judgment accordingly, and close the file.

**IT IS SO ORDERED.**

Dated: August 17, 2026
Utica, New York.

Anthony J. Brindisi
U.S. District Judge